**Michael Miske's Position:** Mr. Miske has no objection to declaring this case complex, under 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(ii), but in light of the complexity of the case, the fact that he is charged with death eligible offenses, the voluminous nature of the discovery that is expected to be produced on a rolling basis, and the difficulty of conducting necessary investigation and of consulting with Mr. Miske, investigators, and experts in the midst of a global pandemic, he cannot guarantee to the Court that he will be ready for trial in one year.

Under the Federal Death Penalty Statute, 18 U.S.C. § 3591 et. seq, and the Department of Justice's regulations, U.S.A.M. §§ 9 - 10.050 & 9 - 10.120, defense are allowed to submit information that mitigates against pursuing a death sentence to the local United States Attorney's Office (USAO) and, if necessary, the Capital Case Committee which convenes at the Department of Justice's offices in Washington, D.C.

While mitigation is often thought by the layman to simply include facts about a defendant's background, the reality is that an investigation into mitigating evidence must also involve any facts or circumstances of the allegations that may undermine the government's case for guilt or for death. The Eighth Amendment provides that mitigation includes any "aspects of the defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978).

Counsel must therefore investigate a wide range of evidence, essentially anything that "would be 'mitigating' in the sense that . . . [it]might serve 'as a basis for a sentence less than death.'" *Skipper v. South Carolina*, 476 U.S. 1, 4-590 (1986) (quoting Lockett, 438 U.S. at 604). Mitigation evidence surrounding the "circumstances of the offense" is found in evidence undermining the capital charges, both respective to a defendant's guilt and also to a defendant's relative culpability in cases, such as this, where numerous individuals are alleged to be responsible for the crimes that have been charged. In addition, counsel has a constitutional obligation to "conduct a[n] independent investigation of the State's case in aggravation." *Andrus v. Texas,* 140 S. Ct. 1875, 1884 (2020).

A district court's authority to allow the defense a reasonable opportunity for resolution of whether the government will seek the death penalty is recognized in the United States Courts Criminal Justice Act Policies, specifically Chapter 6, § 670: *Scheduling of Federal Death Penalty Case Authorization to Control Costs* (February 6, 2019 rev.). That Policy recognizes that:

> (d) The schedule should allow reasonable time for counsel for the parties to discharge their respective duties with respect to the question of whether the death penalty should be sought, with due regard to:
> • the factual complexity of the case;
> • the status of any continuing investigation of the crimes and related criminal conduct;

- the anticipated or actual progress of discovery;
- the potential for successful plea negotiations; and
- any other relevant factors.

In federal cases with at least one capital charge, courts regularly allow ample time for defense preparation of mitigation submissions and often continue trial during the pendency of the Capital Case Review Process. See e.g., *United States v. Abad*, 514 F.3d 271, 274 (2d Cir. 2008) (finding continuance appropriate in part because time was "needed for the Capital Case Unit to decide whether to seek the death penalty against [defendants], including time for the defendants to make mitigation submissions to the Department of Justice"); *United States v. Murillo*, 288 F.3d 1126, 1132 (9th Cir. 2002) ("[T]he continuance was proper to complete the death penalty evaluation process and to allow for additional preparation time, given the complexity of the case.") (citing *United States v. Lam*, 251 F.3d 852, 856 (9th Cir. 2001)); see also *United States v. Chavez,* No. 5:15-cr-00285-LHK-1, Doc. 736 (N.D. Ca. June 19. 2019)(" The Court GRANT[S] Defendant Chavez's scheduling order regarding the authorization presentation to the U.S. Attorneys' Office and set[s] the authorization presentation deadline for [eight months after the assemblage and funding of a new defense team]."); *United States v. Ward*, No. 2:08-CR-00283-KJD, 2014 WL 1297336, at *4 (D. Nev. Mar. 28, 2014) (noting that "two years of this case were spent in 'intensive death penalty mitigation investigation,'" which the court considered "a valid reason" for delay); *United*

*States v. Jackson*, No. 02 CR 756 (LMM), 2005 WL 323715, at *1 (S.D.N.Y. Feb. 10, 2005) (finding that delay of proceedings during the Capital Case Review Process "enabled the unpressured compilation and submission of mitigating information (including the submission of additional material on behalf of [the defendant] at the request of the government) and consideration of such material by the United States Attorney and the Attorney General and their respective committees"); *United States v. McKay,* No. CR 03-1167-PHX-DGC, 2006 WL 343232, at *3 (D. Ariz. Feb. 15, 2006) ("[T]he Justice Department's review of the file [to determine whether to pursue the death penalty] necessarily occasioned a delay in the proceedings.").

>   As one court explained:
>
>   The ends of justice require that prosecutors make wise and well-informed decisions on whether to seek the death penalty to guarantee that this ultimate punishment is used only when most appropriate. The Defendants, for obvious reasons, have the utmost interest in making sure that the United States does not make a hasty decision whether they will seek to have them put to death. . . . The public has a similar interest in protecting against the unwarranted use of capital punishment in its name. The gravity of this decision cautions against a process built for speed rather than for justice.

*United States v. Dominguez-Maqueda*, No. CR 06-86 JB, 2006 WL 1308266, at *5 (D.N.M. 2006).

In this case, Mr. Miske is still in the process of assembling and securing budgeting for his defense team. See, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAIʻI CRIMINAL JUSTICE ACT PLAN at 22 ("All

capital cases, unless staffed only by the Federal Public Defender's office, must be budgeted. As early as practicable after appointment, counsel or the Court should refer the case to a Ninth Circuit CJA Case Managing Attorney."); JUDICIAL COUNCIL OF THE NINTH CIRCUIT: CRIMINAL JUSTICE ACT POLICIES AND PROCEDURES (JANUARY 10, 2020 Revision) at 21 ("Payments in excess of the statutory maximum [of $ 7500] must be approved by the Chief Judge of the Ninth Circuit or the Chief Judge's delegate.") Once that process is complete, the team will diligently *begin* the lengthy process of reviewing voluminous discovery, investigating Mr. Miske's background and the government's case for guilt and for death, consulting with Mr. Miske, investigators, and experts, and preparing a detailed written mitigation presentation for both the local United States Attorney and the Department of Justice's Capital Case Review Committee. The government has indicated that "[s]hould Miske wish to make such a submission, the government will confer with Miske's counsel to determine a reasonable period of time for its preparation", and that "[i]n the government's experience, a period of three months or more is typically reasonable." (Doc. 31 at 6.) Mr. Miske welcomes the opportunity to confer with the government on this issue and anticipates that a major issue in the discussion will be the effect of the pandemic on the ability of both the defense and the prosecution to perform its obligations in this complex case. See e.g., *United States v. Chavez*, No. 5:15-cr-00285-LHK-1, Doc. 848 (N.D.

Ca. June 9. 2019)(on joint application of the parties, vacating a capital case scheduling order in its entirety and continuing the July 9, 2021 trial date to May 2, 2022; in the joint status report to the court, "the defense set forth some of the difficulties stemming from the COVID-19 pandemic, which have prevented the defense from meeting with their clients, witnesses, and experts" and '[t]he government has faced similar difficulties that have significantly hampered its ability to provide additional materials requested by the defense, to prepare for the scheduled disclosures and motions, and prepare for trial.")