THOMAS M. OTAKE    #7622
THOMAS M. OTAKE AAL, ALC
841 Bishop Street, Suite 2201
Honolulu, Hawai`i  96813
Telephone: (808) 523-3325
E-mail:  thomas@otakelaw.com

LYNN E. PANAGAKOS        #7696
841 Bishop Street, Suite 2201
Honolulu, Hawai`i  96813
Telephone: (808) 542-9943
E-mail:  lynnpanagakos@yahoo.com

MICHAEL N. BURT
LAW OFFICE OF MICHAEL BURT
1000 Brannan Street, Suite 400
San Francisco, California  94103-4888
Telephone: (415) 522-1508
Email: mb@michaelburtlaw.com

Attorneys for Defendant
MICHAEL J. MISKE, JR.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. MISKE, JR.,　　　(01)<br><br>　　　　　　Defendant. | CR. NO. 19-00099-DKW-KJM<br><br>DEFENDANT MICHAEL MISKE'S REPLY TO UNITED STATES' RESPONSE TO MOTION FOR AN ORDER PROHIBITING THE BUREAU OF PRISONS FROM TAKING ACTIONS THAT INTERFERE WITH DEFENDANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN A CAPITAL CASE, AND FOR AFFIRMATIVE RELIEF; EXHIBITS "14" – "17"; CERTIFICATE OF SERVICE |

**DEFENDANT MICHAEL MISKE'S REPLY TO UNITED STATES' RESPONSE TO MOTION FOR AN ORDER PROHIBITING THE BUREAU OF PRISONS FROM TAKING ACTIONS THAT INTERFERE WITH DEFENDANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN A CAPITAL CASE, AND FOR AFFIRMATIVE RELIEF**

Defendant Michael J. Miske, Jr. respectfully submits his reply to the United States' Response that was filed on December 28, 2020 (hereinafter the "Response"). Counsel for Mr. Miske participated in a conference call with the Warden, agency counsel, and prosecutors on December 22, 2020 to discuss the issues raised in Mr. Miske's Motion. Six days later, the Government filed its Response as well as a Declaration of AnnElizabeth Card, PhD, Associate Warden of FDC Honolulu (hereinafter the "Declaration"). In the Response, the Government states that the Declaration incorporates "its factual responses to the Motion's allegations, summarizes the results of the parties' meet and confer, and explains to the Court how the FDC is addressing the issues Miske has raised." This Reply addresses some of the issues raised in the Declaration.

A.  **FDC Honolulu's Response to the Covid-19 Pandemic**

As stated in the Motion, Mr. Miske does not dispute that FDC Honolulu has had to make changes to its policies and procedures in response to the Covid-19 pandemic. On the contrary, FDC Honolulu has an obligation to do everything it can to ensure the safety of its inmates as well as its staff, and nothing in Mr. Miske's Motion challenged the procedures that the institution has made regarding trying to keep everyone safe and healthy. In fact, the Motion specifically stated

that it agreed with and did not challenge the precautions that FDC Honolulu implemented in its general population visitation room.

B.    **Comments Referenced in a News Article Dated August 27, 2020**

Paragraphs 8-9 of the Declaration reference a newspaper article from the Honolulu Star Advertiser dated August 27, 2020 (attached as Exhibit "14") and alleges that defense counsel made comments to the Court and the media that were "misleading and partly false." It is not clear why this issue was included in the Declaration since it does not pertain to any of the issues raised in Mr. Miske's Motion and was not discussed in the December 22nd conference call among the parties.

In fact, these issues have already been clarified with FDC Honolulu BOP attorney Timothy Rodrigues. On August 28, 2020, Mr. Rodrigues sent an email to all three of Mr. Miske's defense counsel raising similar concerns about misleading or false statements to the Court. Later that same day, attorney Otake responded to Mr. Rodrigues' email, clarifying that none of the defense team had made any comments to the media about this matter and noting that Ms. Panagakos' statement, as reported in the article, was taken out of context (Exhibit "15"). Mr. Otake explained that the statements made in Court by Ms. Panagakos "had to do with not being informed as to why Mr. Miske was being held in the SHU beyond the quarantine time" and that their complaints to the Court about being denied visits with Mr. Miske had to do with contact visits.

Additionally, Ms. Panagakos also replied to Mr. Rodrigues' email on September 2, 2020, further clarifying that the newspaper report was not accurate and explaining what was actually said in Court since Mr. Rodrigues was not present. Exhibit "16". Mr. Rodrigues responded to Ms. Panagakos' email the next day, saying "Thanks for your message." Exhibit "16". At no point did any of Mr. Miske's counsel make any false or misleading statements to the Court, and no one involved with Mr. Miske's defense made any statement to the press about this matter. As the Court and the Government is well aware, the Defendant has no control over what any media outlet reports.

**C.**     **Defendant's Disciplinary Sanctions**

As noted in Defendant's Motion, Mr. Miske is in the SHU because he allegedly placed unauthorized phone calls. On page 8, footnote 3 of the Motion, Defendant explicitly stated that "It is important to note that the defense is not asking for Mr. Miske to be removed from the SHU. This motion only challenges the unconstitutional and statutorily unauthorized restrictions on his access to counsel." Defendant did not, and does not, challenge FDC Honolulu's disciplinary process. However, regardless of the reason for Mr. Miske's housing in the SHU, the disciplinary sanction for any action cannot include restricting Mr. Miske's access to counsel or his ability to assist in his own defense by reviewing his own discovery.

### D. Defendant's Request for Access to Discovery

Through the Declaration, the Government contends that Mr. Miske has "made zero requests for the SHU law library or its amenities." On the contrary, Mr. Miske has repeatedly requested access to the "law library," which is an empty cell that contains a computer with Lexis Nexis access. Mr. Miske has also requested access to the "discovery room," which is another empty cell that contains a table that inmates can use to spread out their discovery and have more room to work on their case. The process to use the "law library" or "discovery room" requires an inmate to make a written request using a "cop-out" form. The form is given to a guard and is supposed to be returned to the inmate. Mr. Miske has made many requests, both verbally and using these "cop-out" forms. In addition to the forms not being returned to him, as required by FDC Honolulu's policy, his requests made on the "cop-out" forms are typically ignored. He has only been able to recently visit either the "library" or discovery room a handful of times.

### E. "Contact" and "non-contact" Visitation

The Declaration states that the "most disconcerting allegation" in the Motion is "the repeated and false distinction between 'contact' and 'non-contact' visits." The Government continues to argue that the arrangements in the general population visitation room taken as precautions in light of the pandemic make both that and the SHU visitation room "non-contact." As counsel has repeatedly explained, both in its emails included as exhibits to the Motion as well as in the

4

Motion itself, meeting a client in one room with a plexiglass partition is very different from being in two rooms separated by glass and attempting to speak through holes in the glass.  The Courts have acknowledged the difference that "no-contact rooms" make, as discussed in the Motion in *Ching v. Lewis* (895 F.2d 608 (9th Cir. 1990)).

Regardless of what the Government wants to call it, the current restrictions provided in the general population visitation room pass constitutional muster, while the accommodations in the SHU legal visitation rooms do not. Indeed, Mr. Otake's email, mentioned in paragraph 17 of the Response and included as Exhibit "4" in Defendant's Motion, stated that he understood that FDC was trying to make the accommodations better, but that the addition of a table to one side of the glass did not make the SHU visitation room adequate.  The issue that counsel has always argued is that trying to communicate through several holes cut in the glass is not acceptable and is not a constitutionally appropriate disciplinary sanction.

In his Motion, Defendant detailed to the Court the appropriate restrictions put in place by FDC Honolulu in response to the pandemic, and described the plexiglass partition between the parties, explaining that one of the reasons the accommodations in the general population visitation room is acceptable while the SHU visitation room is not is because documents can easily be passed back and forth around the partition.  In paragraph 18 of the Declaration, the Government states that "passing documents around the partition is specifically the kind of close

5

physical contact the FDC is attempting to avoid, but which the SHU non-contact room guarantees."

If this is FDC's position, it is unclear why the plexiglass arrangement in the general population visitation room is acceptable for the entirety of the general population, but the SHU requires more stringent precautions. FDC Honolulu's position has always been that Mr. Miske's placement in the SHU is for disciplinary reasons. If the plexiglass partition in the general population visitation room is acceptable for the vast majority of the inmates being held at FDC Honolulu, Mr. Miske's disciplinary status should not have any impact or bearing that would make the general population visitation room arrangements unacceptable.

**F.     Results of the December 22, 2020 Conference Call**

Of most concern to the Defendant are the final six paragraphs of the Declaration. Paragraph 19 of the Declaration states that "[t]he parties appear to have reached a consensus" during their December 22, 2020 conference call and that "[t]he language in paragraphs twenty to twenty-four has been cleared with defense counsel prior to its incorporation into this declaration." On the contrary, defense counsel has made several objections to the contents of paragraphs 20-24, both verbally during the parties' December 22nd conference call, and in writing in response to an email from Timothy Rodrigues.

On December 23, 2020, Mr. Rodrigues sent an email to defense counsel with the language of paragraphs 20-24 included and asked counsel to "reply with any

6

comments or concerns." Exhibit "17". Mr. Rodrigues' email went on to say that the language would be included in the Declaration and would be filed with the Government's response on December 31, 2020. Attorney Burt replied on Friday, December 25, 2020 and stated three objections the defense had that were also voiced during the conference call. Exhibit "17". The three Assistant U.S. Attorneys who represent the Government in this case were copied on the email. Despite Mr. Burt's objections to the language, the Government never replied to Mr. Burt's email and the language was included almost verbatim, stating to the Court that those paragraphs had been "cleared with defense counsel" when the Government filed its Response on December 28, 2020.

The language in paragraphs 20-24 of the Declaration ignores or misstates the defense's position on the following matters:

1. Paragraph 20 implies that defense counsel agreed that Mr. Miske would have a 90-minute limit on his access to a computer once he leaves the SHU and is moved to general population. However, counsel specifically objected to this limitation during the conference call as well as Mr. Burt's December 25, 2020 email, which states "we do not agree that 90 minutes per day is sufficient time for discovery access." Exhibit "17". The Defendant continues to request the Court to order FDC Honolulu to allow Mr. Miske greater access to BOP computers so that he can effectively assist in his own defense by reviewing his discovery, as is constitutionally and statutorily required based on the arguments in the Motion. As noted in the Motion, Courts in other cases have ordered that defendants receive up to 12 hours of daily access.

2. Paragraph 21 states that Mr. Miske will be permitted to continue his one-hour weekly call with his defense team. However, it leaves out any mention of other calls that were specifically requested in the

7

   Motion, reiterated by defense counsel on the conference call, and noted in writing in Mr. Burt's email ("I don't see anything here about allowing Mr. Miske phone calls to me and my investigator 3 times a week." Exhibit "17").  Mr. Miske continues to request the Court to Order FDC Honolulu to allow him to consult confidentially by phone with his learned counsel and his mitigation investigator at all reasonable hours, as required by the Constitution and 18 U.S.C. § 3005.

3.  Paragraph 22 states that the parties agreed to forgo any standing weekly in-person appointments for the defendant.  While this is true, it is also based on the understanding, as stated in paragraph 20 of the Declaration, that Mr. Miske will be transferred out of the SHU and back to general population no later than January 11, 2021.  If Mr. Miske is not removed from the SHU as the Government has assured the Court he will be, then the issue remains.  Defense counsel agrees to schedule any visits in the general population visitation rooms using the standard visitation request procedures and will give a reasonable amount of notice to schedule the visit.

4.  Paragraph 23 states that FDC Honolulu agreed to allow defense counsel to provide a hard drive to Mr. Miske with his discovery on it.  A hard drive has been purchased and is in the process of having the discovery copied onto it.  Once that process is complete, it will be provided to the U.S. Attorney's Office to be given to Mr. Miske.

5.  Paragraph 24 states that defense counsel has agreed to bring all future FDC issues to the U.S. Attorney's Office.  While defense counsel is agreeable to this request, the Declaration is the first time this has been mentioned.  This is not standard procedure in any other criminal case that counsel is aware of and has not been mentioned to counsel before.  In all of the correspondence with Mr. Rodrigues prior to the filing of Mr. Miske's Motion, counsel was never asked to correspond with the U.S. Attorney's Office.  Additionally, counsel continued to try to work things out with Mr. Rodrigues until he specifically instructed them not to ("I'll be sure to not actively reach out to you and Lynn on this matter and I ask that you do the same." Exhibit "4" of Defendant's Motion).  Notwithstanding any of this, defense counsel will bring future matters to the attention of the U.S. Attorney's Office.

6.  The Declaration does not mention Defendant's request for access to word processing capabilities in his Motion.  During the December 22, 2020 conference call, defense counsel was informed that there is not a BOP computer that has that capability and so it could not be provided.  In his December 25, 2020 reply to Mr. Rodrigues' email, Mr. Burt noted "there is no mention of allowing him access to word processing capability.  I realize it is your position that you cannot provide such capability but I think you should so inform the court." Exhibit "17".  As argued in Section D of the Motion, Mr. Miske must have access to word processing capability to facilitate his review and analysis of the massive quantity of discovery.

## CONCLUSION

While progress was made by the parties during the December 22, 2020 conference call, there are substantial concerns that remain regarding the Defendant's constitutional and statutory rights to his counsel and his discovery.  Defendant reiterates his request for an Order directing FDC Honolulu to allow adequate access to counsel and his discovery in compliance with the Constitution and 18 U.S.C. § 3005, as further detailed in his Motion filed December 16, 2020.

DATED:  Honolulu, Hawai`i, January 4, 2021.

        /s/ *Michael N. Burt*
        THOMAS M. OTAKE
        LYNN E. PANAGAKOS
        MICHAEL N. BURT
         Attorneys for Defendant
         MICHAEL J. MISKE, JR. (01)