THOMAS M. OTAKE          7622
THOMAS M. OTAKE AAL, ALC
841 Bishop Street, Suite 2201
Honolulu, Hawai`i  96813
Telephone: (808) 523-3325
E-mail:  thomas@otakelaw.com

LYNN E. PANAGAKOS          7696
841 Bishop Street, Suite 2201
Honolulu, Hawai`i  96813
Telephone: (808) 542-9943
E-mail:  lynnpanagakos@yahoo.com

Attorneys for Defendant
MICHAEL J. MISKE, JR.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL J. MISKE, JR.,          (01)<br><br>Defendant. | CR. NO. 19-00099 DKW KJM<br><br>DEFENDANT MICHAEL J. MISKE, JR.'S REPLY TO GOVERNMENT'S OPPOSITION TO FIRST MOTION TO COMPEL DISCOVERY; EXHIBITS "1"-"12"; CERTIFICATE OF SERVICE |

**DEFENDANT MICHAEL J. MISKE, JR.'S**
**REPLY TO GOVERNMENT'S OPPOSITION TO**
**MISKE'S FIRST MOTION TO COMPEL DISCOVERY**

# <u>TABLE OF CONTENTS</u>

**Page**

I.    Government's Productions in Response to Miske's First Motion to Compel Demonstrate that Miske's Motion is Meritorious ........................1

II.   Government's Failure to Explain, or to Acknowledge Prejudice Resulting from, Government's Inexcusable Delay .........................................3

III.  Government's Productions in Response to Miske's First Motion are Incomplete and Defective....................................................5

IV.  Government's Continued Refusal to Produce Clearly Discoverable Items ..............................................................8

      A.     Government's Baseless Refusal to Produce GPS Device Extraction or to Lift Redactions from Associated Ex Parte Submission...............9

             1.    GPS Device Extraction ..............................................9

             2.    Government's Ex Parte Supplemental Brief in Hawaii Partners Litigation ....................................13

      B.     Government's Baseless Refusal to Produce Count 15 Wiretap Applications and Orders....................................................17

      C.     Text Messages Between Homeland Security Investigations Special Agent Terrence Chu and Government Witness "S.M."......................19

      D.     Government's Misplaced Reliance on United States v. Fort, 472 F.3d 1106 (9th Cir. 2007).........................................................22

V.    Government's Use of Intentionally Concealed Brady Information While Miske's First Motion Was Pending................................24

VI.  Conclusion ........................................................................26

## <u>TABLE OF AUTHORITIES</u>

**<u>Case Law</u>**                                                                                               **Page**

*Brady v. Maryland,*
 373 U.S. 83 (1963)................................................................*passim*

*United States v. Acosta*,
 357 F. Supp. 2d 1228 (D. Nev. 2004) ............................................9

*United States v. Bagley,*
 473 U.S. 667 (1985)....................................................................22

*United States v. Fort,*
 472 F.3d 1106 (9th Cir. 2007) ..............................................22, 23

*United States v. Ganias,*
 824 F.3d 199 (2d Cir. 2016) .........................................................12

*United States v. Price*,
 566 F.3d 900 (9th Cir. 2009) ........................................................8

*United States v. Sudikoff,*
 36 F. Supp. 2d 1196 (C.D. CA 1999)............................................9

**<u>Statutes</u>**                                                                                               **Page**

18 U.S.C. § 2516(2) ...............................................................................19

18 U.S.C. § 2518(8)(b)...........................................................................19

18 U.S.C. § 2518(9) ...............................................................................18

Table of Authorities Continued

**Local Rules**                                                    **Page**

Rule 5(f) ........................................................................................1, 4, 18

Rule 7.2 .................................................................................................3

Rule 16.1 ........................................................................................1, 18

Rule 16.1(a) ...........................................................................................4

Rule 16.1(a)(4) .....................................................................................14

Rule 16.1(h) ..........................................................................................22

1
**Federal Rules of Criminal Procedure**                             **Page**

Rule 16 ..........................................................................................*passim*

Rule 16(a) ............................................................................................16

Rule 16(a)(2) ...................................................................................22, 23

Rule 16(a)(1)(E)(i) ................................................. 10, 13, 15, 17, 18, 20

Rule 16(a)(1)(E)(ii) ..............................................................................10

Defendant Miske, by counsel, filed a First Motion to Compel Discovery (ECF No. 450, "First Motion" or "First Motion to Compel"), which was necessitated by the Government's non-responsiveness to Miske's numerous requests for clearly discoverable data which the Government had inexplicably failed to produce (ECF Nos. 450-3, 450-9 - 450-12), despite being under two Court Orders to do so. CrimLR 16.1 Standing Order; General Order Regarding Rule 5(f).

The Government has responded to Miske's First Motion by: (1) producing an enormous amount of Fed.R.Crim.P. 16 and *Brady v. Maryland*, 373 U.S. 83 (1963), information -- approximately 20 times the discovery the Government had produced in the 17 months prior to filing Miske's First Motion; and (2) filing an opposition (ECF N0. 541), where the Government continues to refuse to produce additional clearly discoverable data. The Government's post-motion productions, and its opposition, demonstrate that Miske's First Motion must be granted.

## I.   Government's Productions in Response to Miske's First Motion to Compel Demonstrate that Miske's Motion is Meritorious

In response to Miske's First Motion, the Government: (1) produced: (a) approximately 40 TBs of digital data and 1,000,000 files seized from Miske's residences, and the businesses named in Count One; (b) Miske account data seized from wireless carriers from 2015 – 2019; (c) approximately 46,000 pages of records from accounting firms which employed key cooperating Government witness Tricia Castro; (d) records produced by Nordic Construction; and (2) removed some

redactions which were concealing clearly discoverable Rule 16 and *Brady* information through its redactions.[1]

The Government's refusal to produce this discovery in the 17 months which preceded Miske's First Motion, and its non-responsiveness to Miske's pre-motion discovery requests, demonstrate that: (1) these productions were in fact compelled by Miske's First Motion; and (2) prior to Miske's First Motion, the Government was in fact withholding an enormous amount of Rule 16 and *Brady* information.[2] Moreover, despite elsewhere acknowledging its duty to produce Rule 16 and exculpatory information immediately (ECF NO. 517-1, p.3-4, p.9), the Government's Opposition: (1) offers no explanation for its inexcusably late productions; and (2) ignores the prejudice Miske has suffered as a result of the Government's inexcusable delay. Further, as explained in Section III, below, the

---

[1]   The above-referenced items were produced via multiple productions from 1/10/2022 through 4/28/2022 (Government transmittal letters attached hereto as Exhibits (EX) 1- 12). The Government's representation that "most of" the evidence seized from Miske's residences and the businesses named in Court One was produced on 1/10/22 (ECF No. 541, p.11) is incorrect. The Government produced less than 1 TB of such evidence on 1/10. Thereafter, the Government produced approximately an additional 40 TBs of evidence seized from these locations (1/24/2022: 2.63 TBs; 1/27/2022: BS 337283-464, BS 348702-11, BS 337047-58, BS 337159-424, BS 348438-975; 2/8/2022: 36 TBs; 3/29/2022: 11.7 GBs; 4/8/22: "results copies" of devices allegedly produced on 1/24/2022 or 2/8/2022).

[2]   Concurrently with Miske's First Motion, the Government also produced approximately 40 TBs of pole cam images. This production was not compelled by Miske's First Motion. However, there is still no excuse for the Government's 17-month delay in producing this clearly discoverable data. When this pole cam data is taken into account, the amount of discovery produced concurrently with and in response to Miske's First Motion is approximately 40 times the amount of discovery produced in the 17 months which preceded Miske's First Motion.

Government's post-motion productions are incomplete and defective. Therefore, contrary to the Government's contentions, its productions do not constitute grounds to deny Miske's motion. Instead, they demonstrate that Miske's First Motion is meritorious.[3]

## II.      Government's Failure to Explain, or to Acknowledge Prejudice Resulting from, Government's Inexcusable Delay

The Government has not offered one single explanation for its 18-21 month delay in producing: (1) evidence which was seized from Miske's residences and the businesses named in Count One on the day of his arrest; or (2) Miske account data seized from wireless carriers. Likewise, the Government has not offered one single explanation for its intentional concealment of the identities of material exculpatory witnesses for 18-21 months, through its redactions. The Government also offers no explanation for its non-responsiveness to Miske's pre-motion requests for this clearly discoverable data.

Moreover, the Government nowhere acknowledges the prejudice Miske has suffered from the Government's 18-21 month delay in producing this unquestionably discoverable data, including: (1) his inability to make use of this data in pretrial investigation for the past 21 months; and (2) the fact that the Miske

---

[3]      The Government contends that since Miske did not update or supplement his First Motion to challenge the Government's post-motion productions, he should be barred from doing so in this reply.  ECF No. 541, p.1, 10-11. This contention is nonsensical.  The Government's opposition relies on its post-motion productions. ECF No. 541, p.1, 11-16.  Miske has every right to reply. Local Rule 7.2.

defense team has had to devote hundreds of person-hours, if not more, to: (a) obtaining discovery the Government is already under a constitutional obligation and two Court Orders (CrimLR 16.1(a) Standing Order; General Order Regarding Rule 5(f)) to produce; and (b) trying to organize and comprehend produced discovery under circumstances which continue to be akin to playing 52-card pick-up with 10,000 decks of cards all mixed together, with half of the cards blacked out and a good chunk of the cards missing (ECF 450-2, p.1).

In addition, Miske has now been flooded with an enormous amount of forensic images of computers, cellphones, flash drives, and other electronic devices, all of which are so clearly discoverable they should have been produced long ago. Experts and forensic tools are necessary in order to render this data accessible and comprehensible. This is time consuming and costly, which exacerbates the prejudice resulting from the Government's inexcusable delay. As of this writing, experts are diligently working to render the data accessible and comprehensible. However, as it currently stands, Miske has not yet been able to begin any substantive review of these devices -- including his own cell phone, computer and email accounts -- because the data is still in the process of being extracted and converted into accessible and comprehensible formats.

Especially troubling is the fact that Miske has already been deprived of his liberty for 22 months. He will never get this back. In addition, trial is now one-year

away, due to the Government's inexcusably late productions of enormous amounts of core Rule 16 and *Brady* information. The fact that this case has been declared complex should not be license for the Government to unduly lengthen Mr. Miske's pre-trial deprivation of his liberty, or to destroy his speedy trial rights. However, this is what has occurred as a result of the Government's dilatory discovery practices. At minimum, the Government should be held accountable for its inexcusable delay.

## III. Government's Productions in Response to Miske's First Motion are Incomplete and Defective

Miske's review of the Government's post-motion productions is underway. However, due to the sheer volume of material (EX 1-12), as well as the expertise and forensic tools necessary to access the forensic images and extractions of the electronic devices, there is still a long way to go.

Even at this juncture, two things are clear: (1) at least some of the Government's productions are incomplete; and (2) even with its new productions, the Government still has not remedied the organizational defects identified in Miske's First Motion.

The Government still has not produced a thumb drive and cassette seized from Miske's Kuuna residence upon his arrest. ECF No. 541, p.12.

The Government's Opposition, ECF No. 541, p.12, states that complete forensic extractions for devices seized from Miske's residences were produced on January 24, 2022. However, no devices seized from the Kumukahi residence were

included in this production (EX 3). Moreover, the search warrant inventories and collected item logs produced elsewhere in discovery indicate that a total of 37 electronic and digital storage devices were seized from the locations included in the January 24, 2022 production, whereas only 26 such items are actually included in this production.[4]

Similarly, the Government's Opposition, ECF 541, p.13, states that on January 18, 2022, the Government produced the Miske account data seized from wireless carriers. However, whereas Miske's First Motion reported that Miske identified 18 search warrants issued to wireless carriers for Miske account data scattered throughout the Government's discovery (ECF No. 450-2, p.14), it is clear that the Government's January 18, 2022 production (EX __) does not contain 18 search warrant returns. For example, one phone number which was the subject of two search warrants is missing from the January 18, 2022 production in its entirety. Two other phone numbers listed in the January 18, 2022 transmittal were also each the subject of two search warrants; however, the data produced appears to consist of one search warrant return for each of these phone numbers, not two. In addition, Miske's First Motion explained that for limited data that had been produced prior to

---

[4]   For example: (1) the Kuuna search warrant inventory identifies 6 seized iPhones, whereas only 4 iPhones are included on the 1/24/2022 hard-drive; and (2) the search warrant inventories for Kuuna and Lumahai identify a total of 8 seized iPads, whereas only 7 iPads are included on the 1/24/22 hard-drive.

the filing of the First Motion, only "results copies," as opposed to complete forensic extractions, had been produced. ECF No. 450-2, p.14-18. Based on the descriptions in the January 18, 2022 transmittal, it appears that at least some of these productions are once again "results copies" (EX 2). In addition, after locating and making arrangements for the expert assistance and forensic tools necessary to access the January 18 production, it has been determined that no data on the blu ray identified at item 4 of the transmittal (1B3) is accessible, and that the DVD+Rs described at items 5 and 7 of the transmittal (1B444 and 1B447) are empty (EX 2).

The Government's Opposition describes its January 10, 2022 (EX 1), January 27, 2022 (EX 4), and April 8, 2022 (EX 10) productions as including "results copies" of devices, the complete forensic extractions of which were produced on January 24, 2022 (EX 3) and February 8, 2022 (EX 7). However, there is insufficient information to correlate these "results copies" with their "complete forensic extractions." For example, by correlating the Government's April 8, 2022 transmittal with an FBI 302 report produced 10 months and 75,000 pages earlier, on June 7, 2021 at BS 274295, Miske is able to determine that the items identified in the April 8, 2022 transmittal at BS 349907, 349908, and 349909 consist of extraction information from devices which were seized from Kuuna. However, BS 349907 and BS 349909 cannot be identified on the January 24, 2022 hard-drive, either because these complete forensic extractions were not included in the production or because the Government's failure

to provide sufficient identifying information renders the correlation impossible.[5] The remaining "results" copies which the Government's Opposition represents are included in the January 10 and 27 and April 8 productions are even less identifiable.

Miske respectfully requests that the Court order the Government to produce complete search warrant returns, and to do so in a comprehensible manner.

## IV.    Government's Continued Refusal to Produce Clearly Discoverable Items

In its Opposition, as in all of its discovery pleadings, the Government construes its *Brady* obligation from the perspective of what constitutes reversible error on appeal, rather than from the perspective of its pre-trial duty to disclose. The Government nowhere acknowledges the numerous district court cases which have emphasized this distinction, or the Ninth Circuit cases which have cited these district court cases with approval, all of which have been cited in Miske's Motions to Compel. ECF Nos. 450-2, p.2-3, 471-1, p.9-10. *E.g., United States v. Price*, 566 F.3d 900, 913, n.14 (9th Cir. 2009):

> For the benefit of trial prosecutors who must regularly decide what material to turn over, we note favorably the thoughtful analysis set forth by two district courts in this circuit:

---

[5]    The April 8, 2022 transmittal and the FBI 302 report of the Kuuna search identify seized items by reference to "1B" numbers, whereas the January 24, 2022 production identifies items by reference to "QHN" numbers. Sometimes, the "1B" numbers and "QHN" numbers are the same (e.g., 1B509 = QHN509); sometimes they are not (e.g., 1B557 = QHN103). The January 24, 2022 production does not include a "QHN518" or "QHN491" or any other information that would enable Miske to correlate these April 8 "results copies" with other QHN numbers included on the January 24 hard-drive.

> [T]he 'materiality' standard usually associated with *Brady* . . . should not be applied to pretrial discovery of exculpatory materials . . . . [Rather,] the proper test for pretrial disclosure of exculpatory evidence should be an evaluation of whether the evidence is favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses. . . . [I]f doubt exists, it should be resolved in favor of the defendant and full disclosure made. . . .

*United States v. Acosta*, 357 F. Supp. 2d 1228, 1239-40 (D. Nev. 2004). . . (citing *United States v. Sudikoff,* 36 F. Supp. 2d 1196 (C.D. CA 1999).

As explained in Miske's First Motion, due to the enormity of the discovery the Government has refused to produce, it is not possible to present all issues in a single motion. ECF No. 450-2, p.3-4, n.1. This continues to be the case. In its Opposition, the Government continues to refuse to produce clearly discoverable items.  Examples are set forth below.

### A.    Government's Baseless Refusal to Produce GPS Device Extraction or to Lift Redactions from Associated *Ex Parte* Submission

#### 1.    GPS Device Extraction

In August 2017, the Government executed a Search Warrant on the boat referenced in Count 6. Mag. No. 17-00909-RLP. The Government seized, *inter alia*, a GPS device. The Government has explained that: "the Coast Guard made forensic copies of the entirety of the two SD Cards that were in the GPS device, and also downloaded—that is, "extracted"—all of the information that was saved on the GPS

device itself."[6]

The Government has produced data from the 2 SD cards, but it has not produced the data it extracted from the GPS itself ("GPS device extraction"). Miske's First Motion to Compel requests production of the GPS device extraction (ECF No. 450-2, p.22).  In its Opposition, the Government unjustifiably continues to refuse to produce it (ECF No. 541, p.13-14).

In February 2019, the Government admitted that the GPS device extraction contains "highly pertinent" evidence on which the Government expects to rely "at any Murder trial against Miske. . . ." (*quoting* Government's *Ex Parte* Supplemental Brief, p.2, 6, submitted in Civil No. 18-00080 (*see supra*, n.6), hereinafter "*Hawaii Partners* litigation"). In its Opposition to Miske's First Motion, the Government affirms its continued intent to use the GPS device extraction data at trial. ECF No. 541, p.25.[7] Thus, the Government's own statements demonstrate that it has a duty to disclose the GPS device extraction under Fed.R.Crim.P. 16(a)(1)(E)(i),(ii).  In

---

[6]   The above-quoted statement is contained in an *Ex Parte* Supplemental Brief, which the Government submitted to United States District Judge Leslie E. Kobayashi in February 2019, in litigation arising from the above-referenced Search Warrant. *In the Matter of the Search of: Boston Whaler 370 Outrage "Painkiller," HA 9849 H, Hull Identification Number (HIN) BWCE 1942D414 Moored in Kewalo Basin Harbor, Honolulu, Hawai`i*, Civ. No. 18-00080-LEK-RLP.

[7]   The Government's Opposition makes specific reference it its intent to use GPS data from *after* the July 30, 2016 disappearance and alleged murder of Johnathan Fraser. ECF No. 541, p.25. The Government's *Ex Parte* Supplemental Brief, p.3-10, explains that the GPS device extraction is the sole source of the GPS data from *after* the alleged offense.

addition, despite the Government's inculpatory spin on this evidence, the Government's factual description of the evidence in its ex *parte* submission demonstrates it also has exculpatory value.

The Government contends that Miske's request for the GPS device extraction should be denied because the Government produced data from the 2 SD cards and a Coast Guard investigative service (CGIS) report, and because it returned the GPS to Delia Fabro-Miske in May 2018. ECF No. 541, p.13-14. This Government contention is frivolous.

The SD Card data is completely separate from the GPS device extraction data, and it is from a much earlier time period. The CGIS report also is no substitute for the GPS device extraction. This report describes analysis conducted on the GPS device and SD Cards and attaches three .pdf images based on extracted data, at least one of which is based on SD Card data. This is no substitute for an actual extraction of the data seized from the GPS device itself, which includes what the Government has described as the GPS device's "highly pertinent" "'Userdata' folder's metadata" (quoting Government's *Ex Parte* Supplemental Brief, p.2, 4), which is not even capable of being captured in a .pdf image.

The Government is well aware that one or two .pdf images from the GPS device extraction and a CGIS report which describes analysis is no substitute for the GPS device extraction itself. *See* Government's Supplemental Brief Regarding

Electronic Data, filed in the *Hawaii Partners* litigation on November 9, 2018, where the Government argued that all seized data and complete forensic copies needed to be preserved, "so that the evidence is available for Movant or any other interested individual to conduct an independent forensic examination." Civ. No. 18-00080, ECF No. 39, p.4 (*citing U.S. v. Ganias*, 824 F.3d 199, 215-216 (2d Cir. 2016) (*en banc*)). Given this prior statement, the Government's current contention that it is not required to produce the GPS device extraction is disingenuous.

Additionally, the fact that the Government returned the GPS to Ms. Fabro-Miske in May 2018 has nothing whatsoever to do with the Government's Rule 16 and *Brady* duties to Mr. Miske in this case, which includes the duty to disclose the Government's complete 2017 GPS device extraction.

The Government claims that "[t]o the extent Miske now wishes to conduct further analysis of that GPS device, he is of course free to coordinate with counsel for Ms. Fabro-Miske." ECF No. 541, p.14. However, the issue is not whether the GPS device is available now, in 2022, for "further analysis." The issue is the Government's Rule 16 and *Brady* duties to produce the complete data it extracted from the GPS device in 2017.[8]

Notably, the Government's Opposition never makes direct reference to the

---

[8]   There is no reason to assume that Ms. Fabro-Miske still is in possession of the GPS, or that it would still contain the data the Government extracted in 2017.

GPS device extraction, its undeniable discoverability, or the Government's refusal to produce it (ECF No. 541, p.13-14). This is just one of countless examples of the Government willfully closing its eyes to its Rule 16 and *Brady* obligations.

       2.    Government's Ex Parte Supplemental Brief in *Hawaii Partners* Litigation

Miske's First Motion to Compel requests that the Government produce an unredacted copy of its February 2019 *Ex Parte* Supplemental Brief in the *Hawaii Partners* litigation, pursuant to Fed.R.Crim.P. 16(a)(1)(E)(i) and *Brady.* ECF No. 450-2, p.23-27. The Government's Opposition offers no justification for its three pages of redactions, but it nonetheless refuses to produce an unredacted copy. ECF No. 541, p.24-31.

Given the role of the Government's *Ex Parte* Supplemental Brief in the *Hawaii Partners* litigation, the entire brief is material to preparing the defense. In this litigation, Hawaii Partners sought the return of the SD Cards and all seized data outside the June 14, 2016 – August 30, 2016 time period specified in Search Warrant Mag. No. 17-00909. The Government's Opposition acknowledges that its *Ex Parte* Supplemental Brief was submitted in response to the Court having "ordered the government to provide further explanations as to certain details" related to the Government's forensic analysis of the GPS data. ECF No. 541, p.26. Specifically, the Government submitted this brief: (1) pursuant to a Court Order, directing the Government to explain why its forensic examination of the SD Cards had taken so

long, and to identify whether there were any reasons why review and segregation of data relevant to the Search Warrant's time frame was not possible (Civ. No. 18-00080, ECF NO. 41, p.17-18); (2) in direct response to the Court's conclusion that the Government's conduct had "amount[ed] to a callous disregard of Movant's constitutional rights" (ECF No. 450-2, p.23 (quoting Civ. No. 18-00080, ECF No. 41, p.14)); and (3) at a time when the Court was considering whether to order the return of the SD Cards, and the post-offense GPS device extraction data (*see* Civ. No. 18-00080, ECF No. 41, p.18, rejecting Magistrate Judge's Findings and Recommendation but reserving ruling on Hawaii Partners' Motion for Return of Property pending submission of Court-Ordered supplemental briefs). Following the Government's submission of its *Ex Parte* Supplemental Brief, Judge Kobayashi ceased her consideration of these issues. Thereafter, the Government retained possession of the SD Cards and the GPS device extraction data which post-dates the alleged offense, all of which the Government intends to introduce in its case-in-chief.

Given the role of the Government's *Ex Parte* Supplemental Brief in the *Hawaii Partners* litigation, Miske analogized it to a search warrant application, and cited CrimLR 16.1(a)(4) as additional support for his request that the Government lift its redactions. ECF No. 450-2, p.25. The Government's Opposition disagrees with Miske's search warrant application analogy, and then claims that "it follows that his demand" that the Government lift the redactions should be rejected. ECF

No. 541, p.30. The Government's argument is flawed. Regardless of the applicability, or not, of Miske's search warrant analogy, the redactions are still concealing information which the Government has a duty to disclose under Rule 16(a)(1)(E)(i) and *Brady*. *See* ECF No. 450-2, p.25-27.

In its attempt to minimize the significance of its *Ex Parte* Supplemental Brief, the Government mis-states the record in the *Hawaii Partners* litigation. The Government incorrectly claims that Judge Kobayashi's Order which resulted in the Government's submission of its *Ex Parte* Supplemental Brief was "mistaken" and "not well founded." ECF No. 541, p.26. To the contrary, Judge Kobayashi's Order (Civ. No. 18-00080, ECF No. 41) is well supported with citations to the record, including citations to the Government's "Supplemental Brief Regarding Electronic Data" (Civ. No. 18-00080, ECF No. 39).

The Government claims that the fact that its *Ex Parte* Supplemental Brief was never filed on the docket sheet means that it was not material to the litigation. ECF No. 541, p.28. The Government is wrong. The brief was submitted pursuant to a Court Order that the Government provide specific information in litigation seeking the return of the SD Cards and post-offense GPS data, at a time when the Court was giving serious consideration to granting the motion, after finding that the Government's conduct had amounted to a callous disregard of Hawaii Partners constitutional rights. Moreover, when Judge Kobyashi decided to receive the

15

Government's ex parte submission, she stated that "*after review,*" (emphasis added) she would "determine whether the submission should remain sealed in its entirety, or whether the submission should be produced to Movant and/or filed in whole or partially redacted." Civ. No. 18-00080, ECF No. 47. Thus, Judge Kobayashi clearly stated her intent to review the Government's *Ex Parte* Supplemental Brief. After her review, she ceased consideration of the issue whether to order the return of the SD Cards or the GPS device extraction post-offense data. Under these circumstances, the fact that the Government's *ex parte* submission was never filed on the docket sheet does not render it immaterial to preparing Miske's defense.

The Government also claims that Civil Beat's inability to get the Government's *Ex Parte* Supplemental Brief from the Court is somehow relevant to the Government's Rule 16(a) and *Brady* duties to disclose it to Miske. ECF No. 541, p.28. It is not. Judge Kobayashi simply stated that since the Government's *ex parte* submission was not "filed," there was nothing to unseal, and it was not part of the Court's consideration when it granted Civil Beat's motion to unseal the filed documents. Misc. No. 20-00343, ECF No. 9. This is entirely irrelevant to the Government's Rule 16 and *Brady* obligations to disclose information to Miske.

The Government further claims that even if Judge Kobayashi had relied on the Government's *ex parte* submission, it still would not be discoverable, because there was no need to discuss the reliability of sources of information in detail. ECF

No. 541, p.30. The fact remains, however, that in its *Ex Parte* Supplemental Brief, p.10, the Government did make specific reference to information from cooperating Government witness Wayne Miller (identified in *ex parte* submission as "CW 5"), on which the Government relied in its Mag. No. 17-00909 Search Warrant affidavit. The fact also remains that at the time of the Government's February 2019 *Ex Parte* Supplemental Brief, the Government was aware that Miller had made false statements and omissions in the interviews which formed the basis for the Miller information on which the Government relied in its August 2017 Mag. No. 17-00909 Search Warrant affidavit, and that there were additional significant developments following this affidavit which further materially undermined Miller's credibility. ECF No. 450-2, p.25-27. The two pages of the *Ex Parte* Supplemental Brief which follow the Government's reliance on Miller are redacted. These redacted pages either disclose this new information, or they do not. Either way, it constitutes Rule 16(a)(1)(E)(i) and *Brady* information. ECF No. 450-2, p.25-27. The Government's Opposition wholly ignores this portion of Miske's motion. *Compare* ECF 450-2, p.25-27, *with* ECF No. 541, p.24-31.

## B.   Government's Baseless Refusal to Produce Count 15 Wiretap Applications and Orders

Count 15 charges Miske with conspiring to possess with intent to distribute 5 kilograms or more of cocaine. The cocaine which forms the basis for this conspiracy charge was seized from a vehicle which was searched during a traffic stop in

California. The Government concedes that this traffic stop and cocaine seizure were "the result of state wiretaps." ECF No. 541, p.18.

As explained in Miske's First Motion, p.28, the wiretap orders which were in effect at the time of the traffic stop were Extension Orders which were derived from intercepts from earlier orders. The Government has not produced the controlling Extension Orders or the applications in support thereof. The Government has produced three earlier orders from which the Extension Orders were derived, but not the supporting applications.

Miske's First Motion requests production of all applications, as well as the Extension Orders, pursuant to 18 U.S.C. § 2518(9), Fed.R.Crim.P. 16(a)(1)(E)(i) and *Brady*.[9] The Government's opposition wholly ignores its duties under 18 U.S.C. § 2518(9),[10] and all other provisions of that chapter, which apply to state wiretap

---

[9] Miske respectfully submits that where, as here, a charge is based on evidence obtained pursuant to a wiretap, the relevant wiretap orders and applications are material to preparing the defense under Rule 16. In light of the Government's clear duty to disclose these documents under 18 U.S.C. § 2518(9), Miske's First Motion does not elaborate on the discoverability of these documents under Rule 16 and *Brady*. Indeed, he should not need to, in light of CrimLR 16.1's Standing Order and the Court's General Order Regarding Rule 5(f). As explained in Miske's First Motion, due to the enormity of the discovery the Government refused to produce, it was not possible to raise all issues in a single motion. ECF No. 450-2, p.3-4, n.1. Miske's First Motion requests the Count 15 wiretap orders and applications, because they fall within a category of illustrative examples cited in Miske's First Motion. The extent of unproduced Rule 16 and *Brady* information concerning Count 15 goes far beyond the undeniably discoverable wiretap applications and orders specifically identified in Miske's First Motion, and will be addressed in a separate motion.

[10] Evidence derived from the above-referenced wiretaps has already been disclosed in motions to detain Miske and Buntenbah, and in the Government's Opposition to Miske's First Motion.

orders. 18 U.S.C. § 2516(2).

The Government denies that it is in possession of the requested items, and contends that Miske "offers no argument for how we would establish that these state materials are in the government's possession, custody, or control." ECF No. 541, p.20. This Government contention ignores the plain language of the three orders it has produced, all of which require that such orders and the supporting applications be "kept in the custody of the Drug Enforcement Administration of the Los Angeles Field Division. . ." (e.g., BS 258861, 258873, 258884). And, 18 U.S.C. § 2518(8)(b) requires the DEA to maintain such custody for 10 years. Thus, these Orders constitute direct evidence that the Federal Government is required by law to be in possession of at least three of the applications requested in Miske's First Motion. Moreover, since DEA Special Agent Theodore Russell continued to be the lead case agent in this investigation during the time period of the Extension Orders, and since the communications which were intercepted pursuant to these Extension Orders were monitored by SA Russell and a team of monitors under SA Russell's supervision, there is every reason to believe the Extension Orders contain the same requirement.

C.   **Text Messages Between Homeland Security Investigations Special Agent Terrence Chu and Government Witness "S.M."**

Miske's First Motion requested that the Government remove redactions and produce a complete copy of text messages between HSI Special Agent Terrence Chu

19

and "Redacted Text Message Witness," on the grounds that the redactions and missing attachments were concealing clearly discoverable information the Government is under Rule 16(a)(1)(E)(i) and *Brady* duties to disclose. ECF No. 450-2, p.39-40 and nn. 29, 30, p.42-43.

On April 28, 2022, the Government produced another copy of the content of text messages between SA Chu and "Redacted Text Message Witness," now known to be "S.M." This new production consists of photographs of screenshots of text messages.

Importantly, each version of the text messages that the Government has produced contains Rule 16 and *Brady* information which the other version does not. Moreover, some Rule 16 and *Brady* information is concealed from both versions. For example, in the redacted version identified in Miske's First Motion, SA Chu tells S.M. that he is "pursuing some leads generated by [redacted]. He's cleaned up looks good and has sent me down some productive roads. I'm meeting with the FBI later this PM to discuss some of the leads." S.M. replies as follows: "YES!! I'm super happy to hear he's doing better and is back on the wagon." This portion of the text messages between SA Chu and S.M is missing from the version produced on April 28, 2022 in its entirety. The identity of this redacted witness who provided productive leads is clearly material to preparing Miske's defense. And, the

Government's reliance on a witness who at times is not "cleaned up" constitutes *Brady* information.

Notably, in addition to each version of the text messages being incomplete, neither version is produced in an acceptable form. Screenshots of text messages and a typewritten printout of content with missing attachments are unacceptable. Miske respectfuly requests a complete forensic extraction of all communications between SA Chu and S.M., and all additional Rule 16 and *Brady* information contained in SA Chu's cellular telephone.[11]

Of particular concern, the Government's post-motion productions disclose that SA Chu is no longer employed with HSI, and that his employment ceased sometime in 2019. However, the Government's April 28, 2022 production reveals that at least as of December 2021, SA Chu was continuing to use this same cellular telephone to communicate with a Government witness, as a private citizen. So, SA Chu either continued to possess Government property containing Rule 16 and *Brady* information after his departure from HSI, or, he engaged in communications with witnesses which constitute Rule 16 and *Brady* information on a personal cell phone in his capacity as a Government official. Either way, this phone must be returned to

---

[11] Notably, the Government is already under a specific Court Order (ECF No. 502) to produce all *Brady* information contained in the text messages between SA Chu and Ashlin Akau, Ashlin Akau's father, and redacted-guessed-to-be HSI SOI-13, all of which is discussed in Miske's Second Motion to Compel. ECF No. 471-1. However, instead of complying with that Order, the Government filed its frivolous Motion for Clarification (ECF No. 539).

the Government if it has not been already, and all Rule 16 and *Brady* information

contained therein must be preserved and produced.

**D.   Government's Misplaced Reliance on *United States v. Fort*, 472 F.3d 1106 (9th Cir. 2007)**

The Government continues to rely on *Fort* as support for its intentional

concealment of *Brady* information it contends falls within its proposed overbroad

impeachment exception. The Government's Opposition claims that Judge Watson's

Order Denying the Government's Appeal of Miske's Second Motion to Compel

endorses the Government's view of *Fort.* It does not. Judge Watson's Order

expressly recognized that *Fort* did not involve or dilute the Government's *Brady*

obligations, and that impeachment evidence as well as exculpatory evidence falls

within the *Brady* rule. ECF NO. 534, p.5, n.6 (*quoting United States v. Bagley,* 473

U.S. 667, 676 (1985)). As more fully explained at ECF No. 529, p.3-6, *Fort* in no

way supports the proposition that where, as here, the Government produces

inculpatory portions of witness interview reports, Rule 16(a)(2) shields *Brady*

information in those same reports from disclosure until a later time. *See also* ECF

No. 479, p.7-8.[12]

Relying on *Fort,* the Government refuses to produce, *inter alia*, an HPD

---

[12]   Judge Watson's Order further noted that the sole authority the Government cited in support of its claimed entitlement to conceal impeachment evidence until shortly before trial was CrimLR 16.1(h), and secondarily "district practices," neither of which support the Government's claim that a late deadline for impeachment evidence is required.  ECF No. 534, p.4 and n.5.

Report related to alleged embezzlement by a former KTPC employee who is now a Government witness. The Government claims that Miske does no more than "speculate about the possibility" of dishonesty and bias (*compare* ECF No. 450-2, p.54-55, *with* ECF No. 541, p.38). Miske is not speculating. The unredacted portion of the HPD report makes clear that this is an embezzlement complaint. Embezzlement is a crime involving dishonesty. And, the fact that KTPC made these allegations against this witness constitutes evidence that this witness has grounds to be biased against Miske. Moreover, as clearly explained in Miske's First Motion, the Government's redactions are not limited to the body of the HPD report. The Government has also redacted KTPC business records and the written statement of the KTPC employee who made the complaint on behalf of KTPC. These documents are clearly outside the scope of Rule 16(a)(2) and *Fort*.

Likewise, Miske's First Motion requests that the Government remove redactions from documents related to the van allegedly involved in Counts 2-6. ECF No. 450-2, p.51. The Government claims that the documents Miske requests are limited to "law enforcement reports," and therefore Miske is not entitled to this discovery. ECF No. 541, p.35. However, Miske's request is not limited to law enforcement reports. Miske has also requested that the Government remove redactions from a motor vehicle registration, notices of transfer, and a craigslist ad. These documents are clearly outside the scope of Rule 16(a)(2) and *Fort*. And given

the government's allegations about the van, these documents are clearly material to preparing Miske's defense under Rule 16.

Miske's First Motion identifies *Brady* information which the Government is concealing through redactions in reports of interviews of HSI SOI-13, SOI-14 and SOI-15. One such redaction conceals information SOI-13 reported concerning a motive for others, unrelated to Miske, to have set Fraser up.  ECF NO. 450-2, p.40. The Government continues to refuse to lift this redaction, despite it being clearly exculpatory. The Government's opposition makes no mention of this redaction.

As to the other HSI SOI-13 redactions, the Government claims they are not concealing *Brady* information because her information implicates Miske. However, HSI SOI-13's information does constitute *Brady* information because it is inconsistent with the facts alleged by the Government. ECF 450-2, p.50. In addition, the Government's claim (ECF NO. 541, p.35) that Miske makes only passing reference to HSI SOI-14 in a footnote ignores ECF No. 450-2, p.41, where Miske objects to the redactions where HSI SOI-14 reported that he/she believed that redacted and redacted had something to do with Fraser's disappearance.

The Government's Opposition also ignores the exculpatory redactions Miske identified at ECF No. 450-2, p.42-48. However, the Government still has not lifted any redactions from these reports.

## V.      Government's Use of Intentionally Concealed *Brady* Information While Miske's First Motion Was Pending

Miske's First Motion objects to the Government's intentional concealment of the identities of material exculpatory witnesses through its redactions. By its redactions in SA Chu's text messages with S.M., the Government intentionally concealed the identity of a witness who reportedly "knows 100% that [A.W.] set [Johnathan Fraser] up! He was told to give information to police but is scared of [A.W.] and her father. ECF No. 450-2, p.40.[13]

While Miske's First Motion was pending, and while the Government was continuing to intentionally conceal the identity of this witness through its redactions, the Government made what appears to be its initial contact with this witness. Thus, the Government used its intentional concealment of exculpatory evidence to gain an unfair advantage in this litigation by being the first party to contact this witness while continuing to conceal his identity from Miske.

The Government also contacted numerous additional exculpatory witnesses while Miske's First Motion was pending, and while the Government was continuing to intentionally conceal these witnesses' identities through its redactions in clearly exculpatory documents. ECF No. 541, p.31. As to one such witness, who reported seeing Johnathan Fraser alive long after the Government contends he was murdered, the Government continues to deny its *Brady* obligation to cease concealing her

---

[13] The Government's claim (ECF No. 541, p.5,16) that the above-quoted text message does not point to a suspect other than Miske strains credulity.

identity, now based on information the Government obtained by contacting this exculpatory witness while Miske's First Motion was pending, and while the Government was continuing to intentionally conceal her identity from Miske. ECF No. 541, p.31.[14]

Thus, in addition to prejudicing Miske through its inexcusable delay, the Government has further prejudiced Miske by making affirmative use of exculpatory information to Miske's detriment while intentionally concealing this exculpatory information from Miske.

## VI.   **Conclusion**

For the foregoing reasons, Miske respectfully requests that his First Motion to Compel be granted.

DATED:  Honolulu, Hawai`i, May 6, 2022.

/ s / *Lynn E. Panagakos*

THOMAS M. OTAKE
LYNN E. PANAGAKOS
 Attorneys for Defendant
 MICHAEL J. MISKE, JR. (01)

---

[14]   The Government claims that since this witness is "not comfortable with her information being shared with Miske's counsel[,]" there is no reason to compel the Government to disclose it. The reason is simple: the Government has a *Brady* obligation to disclose the identity of all witnesses who reported seeing Fraser alive after the Government contends he was murdered.