IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 19-00099 DKW-KJM |
| | ) | |
| Plaintiff, | ) | ORDER:  (1) GRANTING IN PART |
| | ) | AND DENYING IN PART |
| vs. | ) | DEFENDANT MICHAEL J. MISKE, |
| | ) | JR.'S FIRST MOTION TO |
| MICHAEL J. MISKE, JR., aka "Bro," | ) | COMPEL; AND (2) SETTING |
| et al., | ) | DISCOVERY DEADLINES |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER:  (1) GRANTING IN PART AND DENYING IN
PART DEFENDANT MICHAEL J. MISKE, JR.'S FIRST
MOTION TO COMPEL; AND (2) SETTING DISCOVERY DEADLINES

INTRODUCTION

The parties are before the Court on Defendant Michael J. Miske Jr.'s

("Miske") First Motion to Compel Discovery ("Motion").  ECF No. 450.  The

Government filed a Memorandum in Opposition to the Motion on April 22, 2022

("Opposition").  ECF No. 541.  Miske filed a Reply Memorandum on May 6, 2022

("Reply").  ECF No. 557.  Defendant John B. Stancil ("Stancil") filed a joinder to

the Motion on May 9, 2022.  ECF No. 560.  Defendant Dae Han Moon ("Moon")

filed a joinder to the Motion on May 12, 2022.  ECF No. 567.  Defendant Preston

M. Kimoto ("Kimoto") file a joinder to the Motion on March 18, 2022.  ECF No.

513.  Defendant Jarrin K. Young ("Young") filed a joinder to the Motion on March

14, 2022.  ECF No. 498.  Defendant Delia Fabro-Miske ("Fabro-Miske") filed a joinder to the Motion on March 12, 2022.  ECF No. 497.  Defendant Jason K. Yokoyama ("Yokoyama") filed a joinder to the Motion on March 11, 2022.  ECF 491.

The Court held a hearing on the Motion on May 13, 2022.  Mark Inciong, Esq., and Micah Smith, Esq., appeared on behalf of the Government.  Thomas Otake, Esq., and Lynn Panagakos, Esq., appeared on behalf of Miske.  Thomas Otake, Esq., also made a special appearance for Stancil, inasmuch as Stancil's attorney, Walter Rodby, Esq., was in a state court trial on another matter.  Lars Isaacson, Esq., made an appearance for Moon.  Cynthia Kagiwada, Esq., made an appearance for Kimoto.  Dana Ishibashi, Esq., made an appearance for Young.  John Schum, Esq., made an appearance for Fabro-Miske.  William Harrison, Esq., made an appearance for Yokoyama.

After carefully reviewing the Motion, Opposition, Reply, and relevant legal authority, and hearing the argument of counsel at the May 13, 2022 hearing, the Court GRANTS IN PART AND DENIES IN PART the Motion as follows.

DISCUSSION

The Motion has two central arguments.  First, Miske argues that the Government has failed to produce voluminous critical discovery and exculpatory information.  Second, Miske argues that the Government, through "excessive and unjustified redactions," has concealed other critical discovery and exculpatory

2

information.  Miske argues that these significant discovery defects are constitutional in nature, compromising his Fifth Amendment right to due process and his Sixth Amendment rights to a jury trial, to cross-examine Government witnesses, to compel the appearance of witnesses, and to effective assistance of counsel.  Motion at 1–2.[1]  In light of these alleged constitutional discovery violations, Miske seeks a Court order directing the Government to:  (1) produce all discovery requested or identified as missing in the Motion (as set out more fully below); (2) produce all discovery Miske has previously requested, as set forth in the supporting Declaration of Lynn Panagakos ("Panagakos Decl."); (3) remove all redactions which are concealing discoverable and/or exculpatory information, including, but not limited to, redactions which are concealing information which is disclosed elsewhere in the discovery and the redactions identified in:  (a) the Motion; (b) Panagakos Decl.; and (c) "additional objectionable redactions as identified in future motions."  *Id*. at 55–56.

The Motion provides the following specific examples of discovery which has either not been produced, or which has been produced with such heavy redactions that Miske can neither understand nor organize it for his defense.

---

[1]  The Court cites to the hardcopy page number of the Motion and responses thereto.

I.      Search Warrants and Seized Evidence

        A.      Evidence Seized from Residences and Businesses on the Day of
                Miske's Arrest

The Government arrested Miske on July 15, 2020.  On the same day, the

Government executed search warrants on:  (i) a residence located at 1226 Kuuna

Street, occupied by Miske; (ii) a residence located at 6 Lumahai Street, owned by

Miske; (iii) a residence located at 559 Kumukahi Street, owned by Miske;

(iv) 940B Queen Street, the business address for Kamaʻaina Termite and Pest

Control, Inc. ("KTPC"), allegedly owned and controlled by Miske; and (v) 98-747

Kuahao Place, #D, the principal office location of Oahu Termite and Pest Control,

reportedly solely owned by Miske.  Miske asserts that, notwithstanding the

massive inventories of items seized with these warrants (attached as Exhibits 1–5

to the Motion), he has only received a "microscopic fraction" of the discovery

seized from these locations.  *Id*. at 8.  Miske asserts that all of these items are

clearly discoverable Rule 16 material.  *Id.* at 9.

        In response, the Government asserts that after the Motion was filed, it

produced nearly all referenced physical discovery on January 10, 2022, January 27,

2022, and March 29, 2022.  Opposition at 11–12.  The Government does not

otherwise object to this request.  *Id.*  The Government also intends to produce "as

expeditiously as possible" a thumb drive and cassette recording obtained from

1226 Kuuna Street.  *Id.* at 12.  As with every other recent production in this case,

the Government offers no explanation for its delay.  In his Reply, Miske maintains that the Government has still not produced all discoverable items recovered from these seizures.  Reply at 5–8.  The Motion is GRANTED as to this request.

The Government also asserts that it produced "results copies" of electronic devices seized from these locations on January 10, 2022, January 27, 2022, and April 8, 2022.  Opposition at 12.  The Government adds that it produced "complete forensic extractions" from these devices on January 24, 2022, and February 8, 2022.  *Id.*  Again, the Government provides no explanation for not producing this material earlier.  Miske asserts that he cannot correlate the "results copies" with the "complete forensic extractions."  Reply at 7.  It is unclear on this record why this is the case.  The Court DIRECTS the parties to meet and confer[2] on Miske's difficulty with correlating results copies with complete forensic extractions.

B.    Miske's Cellular Telephone Data Seized Post-Arrest

On July 16, 2020, the Government obtained three additional cellular telephones from a cooperating witness, who reported the telephones as belonging to Miske.  Motion at 13.  The Government did not produce these telephones to Miske.  *Id.* at 14.

---

[2] All discovery conferences in this case shall be an actual, good faith conversation (in person, by video, or by telephone) "in a good faith effort to limit the disputed issues and, if possible, eliminate the necessity for a motion . . . ."  LR37.1(a).  "Electronic or letter communications are not a substitute for the conference."  *Id.*

In its Opposition, the Government merely states that it produced complete forensic extractions of these phones on January 24, 2022. Opposition at 13. Again, the Government provides no explanation for its delay. The Motion is GRANTED as to this request.

    C.    Miske's Account Data Seized from Wireless Carriers and Associated Search Warrant Affidavits

Miske has identified 18 search warrants issued to wireless carriers from November 12, 2015, through July 26, 2019, for information associated with accounts allegedly used by Miske, as well as a warrant for a cell-site simulator to identify phones used by Miske, and a warrant for a covert search of Miske's person. Motion at 14–15. Miske asserts that all of the data obtained from these warrants is discoverable, but that it has not all been produced. *Id.* at 15. In particular, Miske argues that for January 15, 2016, and May 31, 2019 warrants to Apple, Inc., and a June 7, 2016 warrant to Yahoo, Inc., the Government has only produced a "results" subset of obtained data rather than all of the obtained data. *Id.* at 16–19. Miske asserts that the Government has only produced redacted affidavits in support of these and other search warrants issued to wireless carriers, a practice not authorized by CrimLR16.1(a)(4). *Id.* at 18–19.

Again, the Government's only response is that it produced this discovery after the Motion was filed, Opposition at 13, or that it "is producing the requested material to Miske." *Id.* at 16. The Government fails to explain why it took 17

6

months and the Motion for the Government to begin fulfilling its discovery

obligations.  The Motion is GRANTED as to this request.

      D.      GPS Data Seized from *Painkiller* and Associated *Ex Parte*
              Submission

On August 9, 2017, the Court issued a warrant to seize and search the

*Boston Whaler 370 Outrage* "*Painkiller*."  As part of that search, the Government

seized the boat's GPS device and two removable SD cards.  Motion at 22.  The

Government has produced data from the two SD cards, which may or may not be

complete.  *Id.*  The Government did not produce data from the GPS device itself.

*Id.*

      The Government responds that it returned the GPS device to co-defendant

Fabro-Miske on or about May 18, 2018, and it directs Miske to coordinate with her

attorney to conduct any further analysis.  Opposition at 13–14.  This argument is

unavailing, though, as the Government has indicated that it intends to use this data

at trial.  *Id*. at 25.  The GPS device extraction is the sole source of GPS data after

the alleged offense.  Reply at 10 n.7.  The Motion is GRANTED as to this request,

pursuant to Fed. R. Crim. P. 16(a)(1)(E)(i), (ii).  In particular, the Government

shall produce the GPS device extraction.

      Miske also seeks an unredacted copy of the Government's *ex parte*

submission in *In the Matter of the Search of:  Boston Whaler 370 Outrage*

*"Painkiller," HA 9849 H, Hull Identification Number (HIN) BWCE 1942D414*

*Moored in Kewalo Basin Harbor, Honolulu, Hawaiʻi*, Civ. No. 18-00080-LEK-RLP.  Motion at 23–24.  The Government has only produced a redacted copy of the *ex parte* submission.  Miske argues that once the indictment in this case was unsealed, any need the Government had to withhold the *ex parte* submission ceased, and that it is discoverable under CrimLR16.1(a)(4) and Fed. R. Crim. P. 16(a)(1)(E)(i).

The Opposition details the litigation that occurred in relation to the *ex parte* submission, Opposition at 24–31, and asserts that Miske's arguments are "completely misleading."  *Id.* at 29.  The Government distinguishes the *ex parte* submission from a search warrant application and urges the Court to reject Miske's request for an unredacted copy of the *ex parte* submission.

Miske responds that the Government's redactions are concealing information discoverable under Rule 16(a)(1)(E)(i) and *Brady v. Maryland*, 373 U.S. 83 (1963).  Reply at 13–15.  The Court agrees.  The Government submitted the *ex parte* submission in response to the court's statement that the Government's conduct had "amount[ed] to a callous disregard of Movant's constitutional rights." *Id*. at 14 (quoting Civ. No. 18-00080, ECF No. 41 at 14).  Whether the *ex parte* submission was ever "filed" or made available to Civil Beat Law Center for the Public Interest is immaterial.  In the Motion, Miske argues at length that the redactions appear to conceal information regarding cooperating witness, Wayne Miller, who the Government knew had made previous false statements relied upon

8

by the Government in a search warrant affidavit.  Motion at 25–27.  Miske asserts

that whether the Government disclosed in the *ex parte* submission what it knew

about Wayne Miller's credibility is "critically exculpatory and must be

unredacted."  *Id.* at 26.  That is, if the Government disclosed this information, the

*ex parte* submission is exculpatory and must be produced.  *Id.* at 26–27.

Conversely, if the Government failed to disclose this information in the redacted

portions of the *ex parte* submission, Miske argues that is also exculpatory

inasmuch as it would show the prosecution was "less than fully candid or less than

fully informed."  *Id.* at 27.  The Opposition does not address this argument.  The

Motion is GRANTED as to this request.

II.    Title III Orders, Applications, and Supporting Affidavits

Miske argues that, pursuant to 18 U.S.C. § 2518(9), the Government is

required to disclose the orders and accompanying applications for wiretaps prior to

disclosing the contents of any intercepted communications or any evidence derived

therefrom in any court proceeding.  *Id*. at 27–28.  Miske also asserts that such

wiretap orders and applications are also material to preparing the defense under

Fed. R. Crim. P. 16(a)(1)(E)(i).  *Id.* at 28.  Lastly, Miske asserts that the wiretap

applications and orders are exculpatory where relevant to impeach the affiant, a

source of information on which the affiant relied, or the reliability or integrity of

the Government's investigation.  *Id.*  Miske asserts that the Government has:

(i) failed to produce multiple wiretap applications, affidavits, and orders; and

9

(ii) improperly redacted discoverable information for the wiretap applications, affidavits, and orders it has produced.  *Id.* at 28–29.

The Government does not dispute Miske's argument as to Title III orders, applications, and affidavits handled by the U.S. Attorney's Office for the District of Hawaii.  Opposition at 15–16.  The Government's sole response is that it "is producing the requested materials to Miske."  *Id.* at 16.  The Government offers no explanation for its delay.  *Id.*  The Motion is GRANTED as to this request.

The Government does, however, dispute whether Miske is entitled to wiretap orders, applications, and affidavits from an investigation that was conducted in California.  Motion at 28; Opposition at 17–21.  The Government maintains that the materials—which stem from 2014 California state wiretap interceptions—are not in the Hawaii prosecution team's "possession."  Opposition at 18.  The Government represents that it has produced all of the materials it requested and received from that investigation.  *Id.* at 19.  Miske maintains that the Government has already used evidence obtained from the California wiretaps in this case and is in violations of its duties under 18 U.S.C. § 2518(9).  Reply at 18. In response to the Government's claim that it does not have possession of these materials, Miske asserts that the language of the orders and 18 U.S.C. § 2518(8) require the Drug Enforcement Agency ("DEA") to maintain custody of these materials for ten years, and that as such, the material is within the Government's "possession, custody, or control."  Fed. R. Crim. P. 16(a)(1)(E).  *Id.* at 19.  The

Court GRANTS the Motion as to this request to the extent the DEA has any of the responsive documents and directs the Government to obtain these materials from the DEA personnel in California for production to Miske.

III.    Witness Responses to Subpoenas Duces Tecum

Miske requests all documents and data produced by witnesses to the Government pursuant to Rule 16.  In particular, Miske disagrees with the Government's claim that the businesses named in the indictment performed shoddy work, defrauded customers, were fronts for criminal activity, and were part of a RICO enterprise.  Motion at 30.  Miske claims that the Government has failed to produce voluminous documents it received from key witnesses pursuant to a Grand Jury subpoena.  *Id*. at 31.  Miske sets forth three examples in his Motion.

A.    Nordic PCL Construction

KTPC was a subcontractor to Nordic PCL Construction ("Nordic") for a fumigation job at the Keola La'i Condominium ("Keola La'i").  Following this job, the Environmental Protection Agency filed an administrative complaint against KTPC alleging that KTPC failed to:  (1) remove all open food containers left by residents in 28 of the 352 units prior to fumigation; and (2) open all washer/dryer and cabinet doors prior to fumigation.  KTPC paid a $17,000 civil administrative penalty to settle the matter (without admitting liability).  The Government contends that KPTC defrauded Nordic and Keola La'i by listing an ineligible principle responsible managing employee on the project.  The Government received a

banker's box of documents and a flash drive with data, but failed to produce this information to Miske, which Miske claims is material to his defense.

The Government does not oppose this request, arguing only that in response to the Motion that it made productions on January 10 and 27, 2022.  Opposition at 14.  The Government does not explain its delay.  *Id.*  The Motion is GRANTED as to this request.

B.    AATS, LLC

From 2009 to 2016, CPA Tricia Castro ("Castro") was employed as an accounting manager with AATS, LLC, a CPA firm ("AATS").  During this time, Castro and AATS were the CPAs for Miske, KTPC, and other businesses and individuals named in the indictment.  On March 24, 2015, AATS provided the Government with three DVDs of emails.  The Government failed to produce these emails to Miske, which Miske asserts are exculpatory and material to his defense.

The Government does not oppose this request, arguing only that in response to the Motion it made a further production on February 3, 2022.  *Id*.  The Government does not explain why it is only now producing these documents.  *Id.*  The Motion is GRANTED as to this request.

C.    Egami & Ichikawa, CPAs, Inc.

From 2016 through 2018, Castro was a partner at Egami & Ichikawa, CPAs, Inc. ("E&I").  During this time, Castro and E&I were the CPAs for Miske, KTPC, and other businesses and individuals named in the indictment.  E&I has produced

over 88,000 pages of documents to the Government, but the Government failed to produce approximately 17,000 pages of this production to Miske.  Motion at 35–36.

The Government opposes this request, asserting that the withheld materials "relate to a different individual under investigation who has not yet been charged." Opposition at 14.  Given the Government's representation that this information is not discoverable, the Court DENIES the Motion as to this request.

IV.    FBI 302s and Other Law Enforcement Agencies' Reports

Miske argues that most of the FBI 302s and other law enforcement agencies' reports of witness interviews are heavily redacted, to the point that they are barely comprehensible or not comprehensible at all.  Motion at 36.  Miske has asked the Government to remove its redactions from the reports of interviews of certain key witnesses and other reports, but the Government has refused.  *Id.* at 37.  Miske offers the following specific examples in his Motion:

A.    Post-July 30, 2016 Fraser Sightings

Miske argues that at least five different witnesses have reported seeing Jonathan Fraser since his alleged July 30, 2016 kidnapping and murder.  *Id.* at 37–38.  Miske argues that all redacted information must be provided pursuant to Rule 16 and *Brady*.  *Id.* at 38.

The Government asserts that, since the Motion was filed, it has produced unredacted copies of all of the requested reports except one, concerning a witness

who would not give permission to have her name and address released.  Opposition at 31.  The Government represents that, if necessary, it will assist with serving this person with a trial subpoena.  *Id.*  The Court agrees that the Government has provided Miske with "notice of the essential facts which would enable him to call the witness and thus take advantage of any exculpatory testimony that [s]he might furnish," *U.S. v. Dupuy*, 760 F.2d 1492, 1502 (9th Cir. 1985), and DENIES the Motion as to this request.

B.   Evidence Which Points Toward Others, Unrelated to Miske, Having Murdered Fraser, for Reasons Unrelated to Miske

The Motion cites to numerous examples of allegedly exculpatory evidence which the Government is concealing through redactions and incomplete discovery. Motion at 39–48.  The evidence includes, for example, information from witnesses who claim knowledge that individuals other than Miske murdered Fraser and who identified a motive for them doing so.  *Id.*  These witness' identities are redacted such that, according to Miske, the Government is concealing information which is both material to Miske's defense and exculpatory.  Miske asserts that "[t]here are literally thousands more" examples beyond those that he detailed in the Motion. *Id.* at 48.

The Opposition does not dispute Miske's nine pages of argument and examples.  Opposition at 16.  Instead, the Government asserts in a single sentence that it produced unredacted messages on January 27, 2022, and a related interview

14

report on March 4, 2022.  *Id.*  The Government provides no explanation for its conduct.  The Motion is GRANTED as to this request.

C.     Evidence That Is Inconsistent with Government's Current Version of the Facts

Miske argues that the Government's theory as to "how, where, and by whom Fraser allegedly was abducted and murdered has changed over time."  Motion at 48.  As one example, Miske explains that from December 2016 through February 2017, the Government represented to the court in sworn applications for search warrants that Jacob Smith and a co-defendant (who is not presently charged with murder) killed Jonathan Fraser at a Kalihi residence.  Miske identifies a concealed witness interview report with heavy redactions that indicates this witness reported that Smith and two others "kidnapped Fraser, and that Smith went crazy and wound up killing [Fraser]").  *Id.* at 49–50.  Miske maintains that through August 14, 2018 (when Smith was arrested), the Government never abandoned its theory that Smith was criminally responsible for Fraser's death.  *Id.* at 49.  Now that Smith has pleaded guilty, without admitting any facts regarding the alleged abduction and murder scheme, Miske argues that evidence that Smith in fact abducted and murdered Fraser is exculpatory and discoverable.  *Id.*  The Motion alleges that the Government is concealing the identity of witnesses who purport to have information inculpating Smith and therefore exculpating Miske.  *Id.* at 49–50

15

Miske also asserts that the Government is concealing *Brady* information through redactions in reports of interviews of Homeland Security Investigation ("HSI") SOI-13, SOI-14, and SOI-15.  Motion at 49–51.  Miske asserts that the Government is concealing the names of these individuals who apparently believe and/or reported that other individuals, unrelated to Miske, set Fraser up.  *Id.* at 39–40.  SOI-13 identified a potential motive for others, unrelated to Miske, to have set Fraser up.  *Id.* at 40.  SOI-14 reported that s/he "believed that redacted and redacted had something to do with Fraser's disappearance[,]" and explained the basis for this belief.  *Id.* at 41.  Miske does not provide detail regarding SOI-15, but argues that the names of each of these individuals are exculpatory and material to his defense.  *Id.* at 41–42.

The Government asserts that the documents Miske seeks concern a proffering defendant and HSI confidential sources.  Opposition at 32.  As to the proffering defendant, the Government indicates that the proffering defendant represented that he had a conversation in state prison with James Borling-Salas in which Borling-Salas confided that he (Borling-Salas), Jake Smith and Jarrin Young went to Johnathan Fraser's house "to kidnap the boy and scare him but Smith went crazy and wound up killing the boy."  *Id.* at 32–33.  The Government states that, since the Motion was filed, it has "produced to Miske a copy of this report of interview that discloses the name of the proffering defendant and the proffering defendant's appointed counsel."  *Id.* at 33.  The Government adds that this

proffering defendant "*also* provided information relating to various other individuals and matters under investigation that are not part of the case against Miske." *Id.* at 33–34.  The Court agrees that the Government has satisfied its discovery obligations concerning this proffering defendant and DENIES the Motion in this respect.

As to the HSI confidential sources identified in the HSI reports as SOI-13, SOI-14, and SOI-15, the Governments asserts that it has adequately disclosed the substance of the reports at issue, and that Miske is not entitled to anything further under *Brady* or *U.S. v. Fort*, 472 F.3d 1106 (9th Cir. 2007).  Opposition at 34–35.  The Government asserts that SOI-13 is not a percipient witness, but one who merely reported information to the Government that SOI-13 claims to have heard from someone else (whose name the Government has disclosed).  *Id.*  Therefore, the Government maintains that "Miske has no need for the identity of SOI-13." *Id*. at 35.  The Government also argues that Miske's "passing mention" of redactions concerning SOI-14 and SOI-15 fail to make the required showing under *Brady* or *Fort*.  *Id.*

The Government does not dispute that SOI-13, SOI-14, and SOI-15 are confidential sources who have reported information that other individuals, unrelated to Miske, are responsible for Fraser's disappearance.  Instead, the Government argues that Miske falls short of proving that this information is exculpatory under *Brady*.  Opposition at 35.  Even if this is true—which the Court

17

finds it is not—this is not the answer to *Brady*.  The burden is on the Government to produce all required discovery, not on the defendant to identify the Government's omissions and be forced to seek court intervention.  "The prosecutor's oath of office, not the command of a federal court, should [compel] the government to produce any favorable evidence . . . ."  *U.S. v. Cadet*, 727 F.2d 1453, 1467 (9th Cir. 1984).

Nevertheless, the Court finds that Miske's analysis of the information he has received tends to show that the Government is in possession of additional information that would be helpful to Miske's defense—namely, the names of SOI-13, SOI-14, and SOI-15.  "[T]he proper test for pretrial disclosure of exculpatory evidence should be an evaluation of whether the evidence is favorable to the defense, *i.e.*, whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses. . . .  [I]f doubt exists, it should be resolved in favor of the defendant and full disclosure made . . . ."  *U.S. v. Price*, 566 F.3d 900, 913 n.14 (9th Cir. 2009) (quoting *U.S. v. Acosta*, 357 F.Supp.2d 1228, 1239–40 (D. Nev. 2005)).  The Court GRANTS the Motion as to this request.

D.     Van Allegedly Involved in Offense

Miske asserts that the Government has documents in its possession concerning Defendant Lance Bermudez's alleged arson and disposal of the van allegedly used to abduct Fraser on July 30, 2016.  Motion at 51.  Miske does not

18

provide any specificity as to what these documents are, but he asserts that they are material to preparing his defense. *Id.*

In opposition, the Government maintains that Miske seeks unredacted documents that are law enforcement reports beyond the scope of discovery. Opposition at 35–37. The Government explains that it has produced the substance of these FBI 302s and Hawaii Police Department ("HPD") reports, but has properly redacted witness names, home addresses, and other personal identifying information. *Id.* at 36. Miske provides no authority requiring production of this information. Miske, however, maintains that the Government has also redacted a motor vehicle registration, notices of transfer, and a Craigslist ad. Reply at 23. These documents are separate from the government reports. Based upon the record before the Court, the Court DENIES the Motion as to FBI 302s and HPD reports, but GRANTS the motion as to the separate motor vehicle registration, notices of transfer, and Craigslist ad, as those items are discoverable and material to Miske's defense.

E.    Tricia Castro

Miske asserts that the Government has improperly redacted the reports of interviews of a witness Miske claims is obviously Tricia Castro. Motion at 52. Miske argues that these interview reports are material to preparing his defense because they will aid in preparing cross-examination, eliciting testimony, and refreshing witness recollection, and that they are also exculpatory, because they

19

will help to impeach her testimony. *Id.* at 52 (citing *U.S. v. Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016) (defendant has a right to discovery of documents that are "material to preparing the defense" including "aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal"); *U.S. v. Kohring*, 637 F.3d 895, 907 (9th Cir. 2011) (exculpatory facts within FBI 302s are discoverable)).

The Government's Opposition maintains that under Rule 16, Miske has no entitlement at all to these reports and certainly has no entitlement to copies with fewer redactions than the Government has produced. Opposition at 37 (citing *Fort*, 472 F.3d at 1119 (stating that Rule 16(a)(2) exempts reports created by FBI agents from disclosure); Order Denying Appeal of Magistrate Judge Decision, ECF No. 534, at 5 n.6 (recognizing this exemption but noting "[t]hat does not mean, however, that the government can ignore its obligations under *Brady* to provide exculpatory evidence to Defendant")).

To the extent the government reports redact exculpatory facts, the Court GRANTS the Motion and orders that information to be produced unredacted.

F.    KTPC Employee

Lastly, Miske asserts that the Government has wrongfully redacted the name and statement of a KTPC employee contained in HPD records concerning a report KTPC made concerning embezzlement by a terminated employee. Motion at 54.

Miske asserts that this information is exculpatory evidence of a Government witness' criminal conduct and bias such that it must be produced. *Id.* at 55.

In Opposition, the Government maintains its position that these reports of witness interviews are not discoverable under Rule 16. Opposition at 37–38. In his Reply, Miske asserts that the redacted information is discoverable impeachment material because it is clear from the unredacted portions of the report that the complaint is for embezzlement, a crime of dishonesty. Reply at 23. Miske also asserts that the Government has improperly redacted KTPC business records and a written statement of a KTPC employee. *Id.* Based upon the record before the Court, the Court GRANTS the Motion as to exculpatory factual information in the HPD reports. The Court also GRANTS the motion as to the KTPC business records and written statement of a KTPC employee, as those items are discoverable and material to Miske's defense.

V.     The Catch-All Demand

The Motion, in its "RELIEF REQUESTED" section, makes an additional request, not briefed anywhere else, that the Court order the Government to remove all other improper redactions including those identified in the Declaration of Counsel. Motion at 56 (citing to ECF No. 450-3 at ¶ 10). The same section asks the Court to order the Government to remove "additional objectionable redactions as identified in future motions." *Id.* The first request fails to meet Miske's burden on a motion to compel, and the second request—asking the Court to rule in

advance of unknown redactions and objections thereto—is of course improper.

The Motion is DENIED as to these requests.

## VI.    Future Deadlines

At the Motion hearing, the Government proposed that the Court set two discovery deadlines:  (i) a mid-July deadline for production of all CrimLR16.1(a) material; and (ii) a deadline 30–60 days before trial for production of all CrimLR16.1(h) material.  The Court agrees that it is necessary and appropriate to set deadlines and does so as follows:  all CrimLR16.1(a) discovery is due by June 30, 2022; all CrimLR16.1(h) discovery is due January 17, 2023.  These deadlines apply to all discovery due to all defendants.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 26, 2022.



Kenneth J. Mansfield
United States Magistrate Judge

*USA v. Miske, et al.*, 19-cr-00099 DKW-KJM; Order:  (1) Granting in Part and Denying in Part
Defendant Michael J. Miske, Jr.'s First Motion to Compel; and (2) Setting Discovery Deadlines