CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

KENNETH M. SORENSON
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Email:  Ken.Sorenson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 19-00099-01 DKW-KJM |
| | ) | |
| Plaintiff, | ) | UNITED STATES' |
| | ) | SUPPLEMENTAL |
| MICHAEL J. MISKE, JR.,    (01) | ) | MEMORANDUM IN SUPPORT |
| | ) | OF MOTION TO RECONSIDER; |
| Defendant. | ) | DECLARATION OF COUNSEL; |
| _____ | ) | CERTIFICATE OF SERVICE |

**UNITED STATES' SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MOTION TO RECONSIDER**

I.   **INTRODUCTION**

Pursuant to the Court's order, the United States files this supplemental memorandum in support of its motion to reconsider.  *See* Dkt. No. 773.

## II. MR. OTAKE'S REPRESENTATION OF CLIENT 1

As noted in the motion (Dkt. No. 739 at pp. 9-10), Mr. Otake brought to the United States' attention his concerns about Client 1 testifying at Miske's trial. For good reason: Client 1's expected testimony will be substantially related to the charges in Counts 1 and 16 against Miske and other defendants at trial. While the United States' *Giglio* disclosures provided information about potential government witnesses, Mr. Otake was not unaware of the potential conflict: the very day after Miske was arraigned in July 2020, the United States filed a motion for downward departure for Client 1 explaining that Client 1's information had assisted in obtaining an indictment against Miske's co-defendant Hunter Wilson in *United States v. Michael J. Miske et al.*, Criminal Number 19-00099 DKW. The motion for downward departure stated if: "Wilson or any of his other co-conspirators elect to go to trial, the United States may call [Client 1] as a witness." BS 00390890.[1]

---

[1] Mr. Otake represented Client 1 at the same time that he was representing Miske prior to indictment. He sat in a proffer with Client 1 in August 2018. And he personally received a copy of the motion for downward departure, which advised him that Client 1 could be a called as a witness at the Miske trial. As Mr. Otake has the primary obligation under HPRC 1.7 of vetting any ethical conflicts with multiple representations, the United States could reasonably believe he had secured a waiver or otherwise addressed the apparent conflict with his two clients. *See Reading Int'l, Inc. v. Malulani Group, Ltd.*, 814 F.3d 1046, 1053 (9th Cir. 2016) (finding this is "not an occasion where a firm was caught unaware of a newly associated attorney's potential conflicts..."); *see also Cuyler v. Sullivan*, 446 U.S. 335, 346-47 (1980) ("Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of

One of Hunter Wilson's charged co-conspirators is Miske, who is charged in Count 16 (together with Wilson and others) with participating in a conspiracy to distribute and possess with intent to distribute controlled substances in Hawaii. Other participants in that conspiracy were Client 1's co-defendants, J.S. and T.T., both of whom are also expected to testify at the Miske trial. Client 1 directly assisted J.S. and T.T. with further distribution of the drugs they received. Among other things, Client 1 assisted with packaging drugs for distribution and with transporting T.T. to drug deals. For example, Client 1 is expected to testify that J.S. and T.T. arranged to smuggle drugs into a correctional facility housing defendant Dae Han Moon. Miske's counsel are certainly aware of this, as substantial information about Client 1 has been produced in discovery, including search warrant and Title III affidavits describing Client 1's drug trafficking activities.

At today's hearing, Mr. Otake revealed—for the first time—that although he represented both Client 1 and Miske at the same time, he did not obtain waivers from either Client 1 or Miske to ensure his representation of Client 1 and Miske did not create any ethical conflict. He did not obtain waivers despite the fact (i)

---

interest arises during the court of trial. Absent special circumstances, therefore, trial courts *may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist.*") (emphasis added).

Mr. Otake chose to represent Client 1 at a time when he was also representing Miske; (ii) Client 1 proffered information about the activities of Miske associates in August 2018, with Mr. Otake present; (iii) Miske was arraigned on July 16, 2020; and (iv) as noted, the very next day, July 17, 2020, the United States filed a motion for a downward departure, noting that Client 1 had provided assistance in indicting a Miske co-conspirator and may be a witness in the Miske trial.

### III. MR. OTAKE'S REPRESENTATION OF CLIENT 2

In the case of Client 2, Mr. Otake does not dispute the United States did not know he represented Client 2 prior to his January 18, 2023 disclosure to AUSA Sorenson. Mr. Otake and his co-counsel, by contrast, should have been aware that Client 2 was substantially linked to Miske's criminal activities.

The discovery produced to Mr. Otake and co-counsel is replete with information about Client 2. For example, the government produced:

- A report disclosing that after Miske and others assaulted a victim, Client 2 approached the victim and said, "Shit, Mike [MISKE] asked me to come talk to you, he wants to give you $10,000." BS 00002693 (produced August 2020).

- A report disclosing that Miske had purchased five Stevedore union positions and gave one of them to Client 2, in part because Client 2 "does some of MISKE's dirty work." BS 00008353 (produced August 2020).

- A report indicating Client 2 "committed criminal acts on MISKE's behalf, such as violent assaults." BS 00364347 (produced June 30, 2022).

- A separate report disclosing Client 2 "was a fighter" who "collected debts for MISKE." BS 00364342 (produced on June 30, 2022). Miske arranged for Client 2 to be placed in a union job "as a reward for [Client 2's] services." *Id.*

Although the United States only recently learned Mr. Otake represented Client 2, Mr. Otake has known this for years. Yet, when directly asked by the Court at today's hearing, Mr. Otake would not say that his representation of Client 2 was not substantially related to that of Miske. Given the extensive discovery detailing Miske's relationship to Client 2, Mr. Otake should have been able to readily answer that there was no substantial relationship between Client 2's expected testimony against Miske and Mr. Otake's representation of Client 2, *if* that was in fact the case. Instead, when he learned Client 2 would be testifying at trial, Mr. Otake brought his concerns about his representation of Client 2 to the United States' attention, and the United States then properly brought it to the attention of the Court. *See Holloway v. Arkansas*, 435 U.S. 475, 485-86 (1978) (affirming that defense attorneys have the obligation, upon discovering a conflict of interests, to advise the court at once of the problem).

The United States brought this conflict to the Court's attention for two reasons. First, Mr. Otake's representation of Client 2 raises the concerns discussed

above. Second, there is a substantial risk that additional conflicts will emerge as trial preparation continues. This is a racketeering case in which Miske is charged with directing the commission of numerous state and federal crimes, including many crimes that would be investigated first by the state. As Mr. Otake has a substantial criminal practice in state and federal court, it is very possible that individuals he represented could later be identified as connected to the Miske Enterprise. Mr. Otake's advice to Miske reflects his understanding of this dynamic in racketeering cases. *See* Dkt. No. 739 at p.9 (Miske advising Cooperator 2 about the legal advice he received from "TO" that a racketeering case would implicate "your victims and have them testify to assaults, robberies etc"). Neither the United States—nor possibly Mr. Otake—can say for sure how many other defendants who committed state or federal crimes at Miske's direction (and who might become witnesses at trial) were represented by Mr. Otake at the state or federal level.

## IV. CONCLUSION

Here, Mr. Otake's motion to withdraw reflects his effort to ensure the representation of Miske is not impaired by his conflicts, both arising from his percipient knowledge of events (making him either a sworn or unsworn witness) but also from his representation of cooperating witnesses who may testify against Miske at trial. While the obligation to provide conflict-free representation extends to his representation of all clients, including other criminal associates he may have

represented, the primary focus here is how such prior representation affects his present representation of Miske. The United States has disclosed the potential conflicts of which it is aware, but it is Mr. Otake who has the primary responsibility to ensure that additional conflicts in his past and current representations are identified and addressed.

For these additional reasons, the Court should reconsider its order and grant Mr. Otake's motion to withdraw.

DATED: February 8, 2023, at Honolulu, Hawaii.

        CLARE E. CONNORS
        United States Attorney
        District of Hawaii


By */s/ Kenneth M. Sorenson*
    KENNETH M. SORENSON
    Assistant U.S. Attorney