IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. MISKE, JR.,     (1)<br><br>Defendant. | Case No. 19-cr-00099-DKW-KJM-1<br><br>**ORDER DENYING MOTION TO DISQUALIFY DEFENSE COUNSEL** |

The United States of America moves to disqualify two of Defendant Michael J. Miske's three counsel, Lynn Panagakos and Thomas Otake, for two principal reasons: (1) Panagakos and Otake are "percipient" witnesses to the use and submission of two "fraudulent" character letters Miske filed in August 2020 in support of a motion for pretrial release;[1] and (2) Panagakos is a "percipient" witness to Miske allegedly discussing "paperwork" at a law office with persons euphemistically referred to as his "doctors". Miske opposes the motion to disqualify on numerous grounds, including (1) the absence of any conflict between

---

[1] Since the filing of the motion to disqualify, the assigned U.S. Magistrate Judge has terminated Otake's representation of Miske on other grounds. Dkt. No. 789. Although the instant motion with respect to Otake may therefore be moot, given the potential for further litigation with respect to the Magistrate Judge's termination decision and the fact that the arguments in the motion to disqualify with respect to Otake mirror the ones against Panagakos on the matter of the "fraudulent" character letters, the Court's decision herein should be construed as applying equally to Otake.

himself and his counsel, and (2) the absence of any connection between Panagakos and the "doctors" referenced by the government.

Having considered the parties' briefs, supporting evidence, and the arguments of counsel at a February 10, 2023 hearing on the motion to disqualify, the Court DENIES the motion for the following reasons. First, other than speculative possible conflicts that may arise in the future, the government has presented no actual conflict that presently exists between Miske and his counsel with respect to the alleged "fraudulent" character letters. Further, although relying on Hawai'i Rule of Professional Conduct (HRPC) 3.7(a), and despite several opportunities to explain why, the government has failed to identify how either Panagakos or Otake are "necessary" – rather than merely percipient – witnesses within the meaning of the rule. Second, having reviewed the evidence submitted with respect to the alleged meeting between Miske and his "doctors", the Court is not convinced that Panagakos is one of the "doctors" referenced. Therefore, as more fully explained below, the motion to disqualify, Dkt. No. 729, is DENIED.[2]

---

[2] Concurrently with its motion to disqualify, the government filed a motion for leave to file an oversize brief in support of the motion to disqualify. Dkt. No. 730. Although oversized briefs are disfavored, without objection, the Court GRANTS the motion for leave on this occasion only.

## LEGAL STANDARD

In the Ninth Circuit, courts "apply state law in determining matters of disqualification…." *In re Cty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). Here, the state law principally relied upon by the government is HRPC 3.7(a). Rule 3.7(a) provides that:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.

## DISCUSSION

As an initial matter, although afforded additional briefing space to do so, the government fails to provide any guidance on one of the key phrases triggering the application of the principal rule on which it relies. Specifically, the phrase "necessary witness."[3] Based upon the Court's independent research, there is limited, but some, guidance from Hawaiʻi case law. For example, in *State v. Plichta*, 172 P.3d 512 (Haw. 2007), the Hawaiʻi Supreme Court explained that Rule 3.7 is "often applied in the situation where the lawyer is a necessary

---

[3]At the February 10, 2023 hearing, the government provided the less-than-helpful suggestion that "necessary" witnesses are witnesses that it will call at trial. Because that would mean all the government's witnesses would be necessary, and would simultaneously render superfluous the rule's use of the adjective "necessary", the Court disagrees.

impeaching witness, that is, as the means by which another witness' prior inconsistent statement is to be proved…." *Id*. at 532 (alteration and quotation omitted).  In addition, in the context of the American Bar Association's Disciplinary Rule (DR) 5-102(A), which contains similar, albeit not identical, language to Rule 3.7(a) on the matter of a lawyer becoming a witness,[4] the Hawaiʻi Supreme Court has explained that, in determining whether to disqualify a lawyer on this basis, a court should base its determination "on a considered evaluation of all pertinent factors including, inter alia, the significance of the matters to which he might testify, the weight his testimony might have in resolving such matters, and the availability of other witnesses or documentary evidence by which these matters may be independently established."  *Chuck v. St. Paul Fire & Marine Ins. Co.*, 606 P.2d 1320, 1325 (Haw. 1980).

With this as guidance, the government has not come close to establishing that Panagakos or Otake are likely to become necessary witnesses in this case.  In fact, until its rebuttal argument at the February 10, 2023 hearing, the government did not even identify any *specific* reason for how Panagakos or Otake were witnesses *at all*, let alone necessary ones.  Instead, like much of its motion, the

---

[4]The language of DR 5-102(A), if anything, lends itself more to the government's point-of-view in this context.  Specifically, DR 5-102(A) is directed to lawyers who "ought to be a called as a witness", whereas Rule 3.7(a) concerns lawyers likely to become *necessary* witnesses.

government used vague and generalized statements to characterize Panagakos' and Otake's potential testimony. *See* Dkt. No. 729 at 4, 27 (arguing that Panagakos and Otake are "percipient witnesses with distinct and unmatched firsthand knowledge about key events that will be part of the proof at trial"). The government never identifies, however, the "firsthand knowledge" of "key events" Panagakos and Otake may possess. This is simply an insufficient reason, therefore, to disqualify counsel. *See Chuck*, 606 P.2d at 1325 (finding "general and conclusory allegations" "fall far short of the showing necessary to disqualify"). The clarification finally provided by the government during oral argument fares little better. Namely, the government indicated that Panagakos would be called to testify about things such as Miske's "motive" in using the character letters. Even if the Court assumed that Panagakos could testify on such a subject, however, the government fails to explain how it could not establish Miske's alleged motive for using the letters in some other fashion. Notably, in the context of its opposition to a different motion pending before this Court, the government has already indicated that it can provide other testimony or evidence on Miske's alleged motive for the letters. *See* Dkt. No. 769 at 16 ("the filing of the fraudulent character letters in August 2020 was part of an effort to allow Miske to remain out of custody so that he could, *inter alia*, continue operating KTPC, his flagship criminal racket. The

United States anticipates offering testimony from *numerous* witnesses who will confirm that keeping KTPC operating, and the money flowing, was a paramount concern of Miske circa 2018.") (emphasis added). In this light, neither Panagakos nor Otake are *necessary* witnesses in the context of the "fraudulent" character letters.[5] *See Chuck*, 606 P.2d at 1325.

The Court is similarly unpersuaded by the government's contentions that Panagakos and Otake either (1) cannot provide Miske their undivided loyalty, or (2) will act as "unsworn" witnesses at trial. With respect to the former, it too is best described as speculation. *See* Dkt. No. 729 at 22 ("The *mere possibility* that they *might* harbor concerns about their representation counsels against further representation….") (emphasis added). Certainly, neither Panagakos nor Otake have conceded that they harbor any of the speculative concerns the government suggests. *See* Decl. of Thomas Otake at ¶ 12, Dkt. No. 727; Decl. of Lynn Panagakos at ¶ 2, Dkt. No. 745-1. Moreover, none of the cases the government cites in support of the absence of undivided loyalty present anything remotely close to the situation here, given that those cases involve lawyers "accused of crimes" or other potentially incriminating conduct–something that the government,

---

[5] It is, therefore, unnecessary to address whether Miske would suffer a "substantial hardship" if Panagakos and/or Otake were disqualified.

6

in fact, repeatedly concedes is not an issue here. *See id*. As for Panagakos and Otake purportedly acting as unsworn witnesses at trial, it too is based on nothing but general and vague suggestions. For example, the government never adequately explains how Panagakos and Otake will "vouch" for their own credibility, as if it was somehow self-evident. *See* Dkt. No. 729 at 30. The Court is also unconvinced that jurors will "wonder why they are not hearing" from Panagakos or Otake, *see id*. at 6, something that, if necessary, could be ameliorated with appropriate instructions. In short, on this record, the character letters do not provide sufficient reason to disqualify Panagakos or Otake.

This leaves whether Panagakos should be disqualified because she is witness to Miske discussing paperwork with his "doctors" at a law office. Based upon the arguments and evidence (or lack thereof) filed in connection with this matter, the Court is unconvinced that Panagakos is a witness, necessary or otherwise, to any event of import in this regard. First, other than a photograph depicting the entrance to Panagakos' law office, the government cites no evidence that Panagakos is, in fact, one of the "doctors" Miske mentions in his communications. Dkt. No. 729 at 15. Even if "doctors" means lawyers, and lawyers means lawyers housed in the building in the photograph, Panagakos states "numerous other attorneys", including other criminal defense attorneys, rent space at the same

location. Dkt. No. 745 at 5. She also denies that she is, in fact, a "doctor." Panagakos Decl. at ¶ 3. Based on this evidentiary shortfall alone, the Court would not find, even by a preponderance of the evidence, that Panagakos is the witness the government contends. Second, even if Panagakos was one of the "doctors", the advice she allegedly gave Miske−that a member of the alleged "Miske Enterprise" was "flipping" and not to talk to "anybody inside" because calls are recorded−does not create a conflict with Miske, let alone one that should result in Panagakos being disqualified, even if the government is correct in representing that the communication depicts a piece of how Miske allegedly controlled his associates. *See* Dkt. No. 767 at 5 ("The text chat will be introduced as evidence of how Miske operated: he directed the activities of underlings, hired and paid for lawyers to represent them, kept tabs on their status, and warned others if any might cooperate."). On the current record, the Court finds no reason to disqualify Panagakos based upon her alleged status as one of Miske's "doctors".

//

//

//

## **CONCLUSION**

The government's motion to disqualify defense counsel, Dkt. No. 729, is DENIED.

IT IS SO ORDERED.

DATED: February 21, 2023 at Honolulu, Hawaiʻi.



Derrick K. Watson
Chief United States District Judge

---

*United States v. Miske, et al.,* Case No. 19-cr-00099-DKW-1; **ORDER DENYING MOTION TO DISQUALIFY DEFENSE COUNSEL**