LYNN E. PANAGAKOS          7696
841 Bishop Street, Suite 2201
Honolulu, Hawai`i  96813
Telephone: (808) 542-9943
E-mail:  lynnpanagakos@yahoo.com

MICHAEL J. KENNEDY
LAW OFFICES OF MICHAEL JEROME KENNEDY, PLLC
333 Flint Street
Reno, NV 89501
Telephone: (775) 221-7100
Email: michael@mjkennedylaw.com

Attorneys for Defendant
MICHAEL J. MISKE, JR.

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL J. MISKE, JR., et al.,<br><br>Defendants. | CR. NO. 19-00099 DKW KJM<br><br>DEFENDANT MICHAEL J. MISKE, JR.'S APPEAL AND REQUEST TO THE DISTRICT COURT TO RECONSIDER A MATTER DETERMINED BY THE MAGISTRATE JUDGE; CERTIFICATE OF SERVICE |

## DEFENDANT MICHAEL J. MISKE, JR.'S APPEAL AND REQUEST TO THE DISTRICT COURT TO RECONSIDER A MATTER DETERMINED BY THE MAGISTRATE JUDGE

Table of Contents

I.     Introduction ............................................................................................1

II.    Procedural History..................................................................................5

III.   Standard of Review ...............................................................................7

IV.    The Magistrate Judge's Order Erroneously Fails to Balance Miske's Sixth
Amendment Right To Counsel of His Choice Against Any Actual or Potential
Conflict Under Hawai'i Rule of Professional Conduct (HRPC) 1.9(a). .....7

   A.   Applicable Legal Standards ..........................................................7

   B.   Magistrate Judge's Erroneous Rejection of Measures
   Short of Termination ...........................................................................11

   C.   Magistrate Judge's Incorrect Analysis of Former Client Consent Issue ......16

   D.   Magistrate Judge's Erroneous Failure to Consider Irrelevance of Former
   Client 1's Anticipated Testimony, As Well As Mr. Otake's Statements as to Lack
   of Material Adversity or Substantial Relationship .................................17

   E.   Lack of Any Record Support for Magistrate Judge's Conclusion That Matter
   In Which Mr. Otake Represented Former Client 2 Is Substantially Related to
   Miske Matter......................................................................................19

   F.   Magistrate Judge's Erroneous Refusal to Consider Substantial Hardship to
   Miske, Despite Already Finding That Such Substantial Hardship Exists..............21

   G.   Miske's Sixth Amendment Right to Counsel of His Choice is the Most
   Crucial Factor to Balance Here ...........................................................23

V.     Conclusion ..............................................................................................23

Table of Authorities

## Cases

*Hawaii Management Alliance Ass'n v. Meek*,
  155 Fed. Appx. 978 (2005)................................................................................1

*In re Yarn Processing Patent Validity Litigation,*
  530 F.2d 83 (5th Cir. 1976) ..............................................................................3

*Kasza v. Browner,*
  133 F.3d 1159 (9th Cir. 1998)................................................................. 3, 10, 16

*Luis v. United States,*
  578 U.S. 5 (2016) ........................................................................................5, 23

*Otaka, Inc. v. Klein,*
  71 Haw. 376, 791 P.2d 713 (1990) ....................................................................1

*Powell v. Alabama,*
  287 U.S. 45 (1932) ..........................................................................................23

*United States v Baker*,
  256 F.3d 855 (9th Cir 2001) .............................................................................13

*United States v. Agosto,*
  675 F.2d 965 (8th Cir. 1982) ................................................................... passim

*United States v. Armedo-Sarmiento,*
  524 F.2d 591 (2d Cir. 1975) ................................................... 2, 10, 14, 16

*United States v. Carter,*
  2008 U.S. Dist. LEXIS 65882 (N.D. Ind. Aug. 27, 2008)...................... 2, 15, 16

*United States v. Castellano,*
  610 F. Supp. 1137 (S.D.N.Y. 1985) ....................................................... passim

*United States v. Cellini,*
  596 F. Supp. 2d 1194 (N.D. Ill. 2009).................................................... passim

*United States v. Cunningham,*
  672 F.2d 1064 (2d Cir. 1982) .................................................................. passim

*United States v. Garcia,*
  517 F.2d 272 (5th Cir. 1975) ..........................................................................8, 9

*United States v. Gonzalez- Lopez,*
  548 U.S. 140 (2006) ......................................................................................5, 23

*United States v. James,*
  708 F.2d 40 (2d Cir. 1983 ...............................................................................10

*United States v. Koon,*
  34 F.3d 1416 (9th Cir 1994).................................................................. 8, 12, 13

*United States v. Levy,*
  25 F.3d 146 (2d Cir. 1994) ..............................................................................13

*United States v. Martinez*,
   143 F.3d 1266 (9th Cir. 1998) ...........................................................12
*United States v. Phillips*,
   699 F.2d 798 (6th Cir. 1983) ................................................................9
*United States v. Rogers*,
   9 F.3d 1025 (2d Cir. 1993) ...................................................................3
*United States v. Washington*,
   797 F.2d 1461 (9th Cir. 1986) ........................................................9, 13
*Wheat v. United States*,
   486 U.S. 153 (1988) ...........................................................................13

**Statutes**
28 U.S.C. § 636 ...............................................................................1, 7

**Rules**
District of Hawaii Criminal Local Rule 57.3 ...........................................1
Hawaii R. Prof. Conduct 1.9 .................................................... passim
Hawaii R. Prof. Conduct 3.7 .................................................................5

**Constitutional Provisions**
U.S. CONST. amend. XI................................................................. passim

Defendant MICHAEL J. MISKE, JR., by and through undersigned counsel, respectfully appeals and requests that the District Court reconsider the Magistrate Judge's "Order Granting the Government's Motion to Reconsider" (ECF 789, "Order").

## I.    Introduction

This appeal is filed pursuant to 28 U.S.C. § 636(b)(1)(A) and District of Hawai'i Criminal Local Rule 57.3(b), which require reversal where, as here, the Magistrate Judge's Order is clearly erroneous and contrary to law.

The Magistrate Judge's Order terminated Mr. Otake, effective immediately, ECF 789, p.7, reasoning that as a result of his prior representation of former Clients 1 and 2, "Mr. Otake has a conflict of interest[] pursuant to [Hawai'i Rule of Professional Conduct] HRPC 1.9(a) that prohibits him from representing Miske in this matter." ECF 789, p.4.

The fundamental flaw in the Magistrate Judge's Order is that it fails to balance the constitutional right to counsel of choice under the Sixth Amendment to the U.S. Constitution against a rule of professional conduct. See ECF 789, pp. 1-7. If HRPC 1.9 (or prior Canon 4) is applied in a civil case, *see Otaka, Inc. v. Klein*, 71 Haw. 376, 791 P.2d 713 (1990) and *Hawai'i Management Alliance Ass'n v. Meek*, 155 Fed. Appx. 978 (2005), no Sixth Amendment rights are implicated.

1

*See United States v. Armedo-Sarmiento*, 524 F.2d 591, 593 (2d Cir. 1975)

("Because these civil cases do not involve the crucial factor of the criminal

defendant's Sixth Amendment rights, ... they are not controlling in the present

case.").  However, if, as here, HRPC 1.9 is applied in a criminal case, the Sixth

Amendment is implicated and is a "crucial factor." *Id.* Balancing this crucial

factor is required, but it is absent from the Magistrate Judge's Order (ECF 789).

This absence renders the Magistrate Judge's Order clearly erroneous and

contrary to law.

By failing to conduct the required balancing, the Magistrate Judge

erroneously refused to consider whether measures short of Mr. Otake's

termination would resolve the issue.[1]  The measures Mr. Miske presented to the

Magistrate Judge—that Mr. Kennedy and/or Ms. Panagakos will cross examine

former Clients 1 and 2 and that Mr. Otake will not share any confidential

information related to Clients 1 and 2 with Mr. Kennedy and Ms. Panagakos—

are well recognized and well accepted measures to resolve the issue.  The

Magistrate Judge erroneously concluded that since these measures are not

---

[1] *United States v. Agosto*, 675 F.2d 965, 973 (8th Cir. 1982); *Armedo-Sarmiento*, 524 F.3d at 593; *United States v. Castellano*, 619 F. Supp. 1137, 1148 (S.D.N.Y 1985); *United States v. Cellini*, 596 F. Supp. 2d 1194, 1200 (N.D. Ill. 2009); *United States v. Carter,* 2008 U.S. Dist. LEXIS 65882, *16-17 (N.D. Ind. Aug. 27, 2008).

identified as exceptions in HRPC 1.9, they were not an available alternative to termination.  The Magistrate Judge also erroneously ignored the general rule that courts do not disqualify counsel where, as here, the former clients have not moved for disqualification.[2]

The Magistrate Judge further erroneously ignored material relevant information, including Mr. Otake's Declaration in support of his supplemental response to the government's motion to reconsider (ECF 775, ¶¶ 4-23), when concluding that former Client 1's interests and Mr. Miske's interests are materially adverse, and that Mr. Otake's representation of them was in substantially related matters.  The Magistrate Judge's substantial relatedness and material adversity findings with respect to former Client 2 suffer from a dearth of any support whatsoever in the record.

Finally, although the Magistrate Judge has rightfully recognized that Mr. Miske will suffer substantial hardship from Mr. Otake's termination,[3] the

---

[2] *Kasza v. Browner,* 133 F.3d 1159, 1171 (9th Cir. 1998) (*quoting United States v. Rogers*, 9 F.3d 1025, 1031 (2d Cir. 1993); *United States v. Cunningham*, 672 F.2d 1064, 1072 (2d Cir. 1982); *In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 88 (5th Cir. 1976)).

[3] See Partial Transcript of January 18, 2023 hearing on Mr. Otake's motion to withdraw, p.9. In addition, at the February 8, 2023 hearing on the government's motion to reconsider, the Magistrate Judge indicated, after argument, that it was not inclined to reverse its substantial hardship finding.

Magistrate Judge erroneously concluded that such hardship is not relevant to the analysis here. Contrary to the Magistrate Judge's conclusion, this hardship is not only relevant, it is paramount under the circumstances presented here.  In light of the duration of Mr. Otake and Mr. Miske's attorney-client relationship (more than 10 years in state cases now charged as racketeering acts, 5 ½  years in the federal investigation, and 2 ½ years since the unsealing of the First Superseding Indictment), their close working relationship under intense circumstances (including one year while Mr. Miske was facing the potential for the death penalty), Mr. Miske's trust and confidence in Mr. Otake which has developed over the course of their long and close working relationship, the importance of this trust and confidence given the extraordinary complexity and breadth of this case in which Mr. Miske is facing life imprisonment if convicted, and Mr. Otake's extensive knowledge of the facts and evidence as well as his experience and knowledge of jury trials in the District of Hawai'i, Mr. Otake's termination, if affirmed, will "not merely defeat [Mr. Miske's] abstract right to be represented by counsel of choice; it could subject him to real prejudice in this criminal prosecution."[4]   Mr. Miske's termination, if affirmed, will result in hardship

_____

[4] *Cunningham*, 672 F.2d at 1071 (reversing district court's disqualification of defense counsel who had previously represented a government witness under circumstances similar to those presented here, in favor of limiting defense

which is not only substantial but also "possibly irreparable."[5]

Accordingly, the Magistrate Judge's flawed Order erroneously deprives Mr. Miske of his Sixth Amendment right to counsel of choice. Therefore, reversal is required to prevent structural error. *See Luis v. United States*, 578 U.S. 5, 11 (2016); *United States v. Gonzalez- Lopez*, 548 U.S. 140, 148 (2006) (erroneous deprivation of right to counsel of choice constitutes structural error).

## II. Procedural History

On January 13, 2023, Mr. Otake filed a motion to withdraw as counsel for Mr. Miske. ECF 727. Mr. Otake's motion was based solely on the government's representation that it intends to call him as a witness at trial, to ask him about a meeting reportedly described by "Cooperator 1." ECF 743, ¶¶ 1-7. Mr. Otake believed he had an ethical obligation to raise this issue with the Court, which he did by filing his motion to withdraw. *Id.*, ¶ 7. The Magistrate Judge denied Mr. Otake's motion (ECF 735), reasoning that Mr. Otake's withdrawal would work a substantial hardship on Mr. Miske. *See* ECF 789, p.2 (citing HRPC 3.7(a)(3)).

_____

counsel's cross examination of former client to matters which were in the public record).
[5] *Cellini*, 596 F. Supp. 2d at 1199-1200 (denying motion to disqualify in favor of same prophylactic measures proposed by Miske, where disqualification would result in prejudice similar to that which Miske will face of Mr. Otake's termination is affirmed).

On January 24, 2023, the government filed its motion to reconsider. ECF 739.  The government's motion relied on the ground presented in Mr. Otake's motion, and on three additional grounds, including Mr. Otake's prior representation of former Clients 1 and 2.  Mr. Miske opposed the government's motion on the merits (ECF 770) and expressed his willingness to have Mr. Kennedy and/or Ms. Panagakos cross-examine former Clients 1 and 2 without access to any privileged or confidential information from Mr. Otake (ECF 770, p.4), and further argued that it was inappropriate for the government to seek reconsideration of an order denying Mr. Otake's motion to withdraw based upon grounds which were not asserted by Mr. Otake. ECF 770, p.2.

At the February 8, 2023 hearing on the government's motion to reconsider (ECF 773), Mr. Otake confirmed that he would not have filed a motion to reconsider or an appeal of the Magistrate Judge's order denying his motion to withdraw.  Thus, the government's motion to reconsider is, effectively, a motion to disqualify Mr. Otake based on grounds not included in Mr. Otake's motion to withdraw.

On February 9, 2023, following supplemental briefing (ECF 774, 775, 776), the Magistrate Judge issued his "Order Granting The Government's Motion to Reconsider" (ECF 789).  As stated, the fundamental flaw in this Order is its wholesale failure to conduct the balancing the Sixth Amendment requires.

6

### III.   Standard of Review

Under 28 U.S.C. § 636(b)(1)(A), this Court shall reverse where, as here, the Magistrate Judge's Order is clearly erroneous or contrary to law.

In addition, since the government's motion to reconsider sought Mr. Otake's termination on grounds not raised in Mr. Otake's motion to withdraw, it was effectively a motion to disqualify.  Since this Court chose not to delegate the government's motion to disqualify (ECF 729) to the Magistrate Judge, this Court should review the Magistrate Judge's Order granting the government's motion to reconsider *de novo*.

### IV.   The Magistrate Judge's Order Erroneously Fails to Balance Miske's Sixth Amendment Right To Counsel of His Choice Against Any Actual or Potential Conflict Under Hawai'i Rule of Professional Conduct (HRPC) 1.9(a).

A. Applicable Legal Standards

Hawai'i Rule of Professional Conduct 1.9(a) provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation and confirms in writing.

Where, as here, a defendant's Sixth Amendment right to counsel of choice is at stake, HRPC 1.9(a) cannot be applied in a vacuum.  Instead, Rule 1.9 must be balanced against this right of constitutional dimension.  *See, e.g.,*

7

*Cunningham*, 672 at 1071-72; *Agosto*, 675 F.2d at 969; *United States v. Garcia*, 517 F.2d 272, 273 (5th Cir. 1975).

In *Cunningham*, the Second Circuit reversed the district court's disqualification of the defendant's attorney who had previously represented a government witness.  In doing so, the Court set forth the standard for evaluating this issue as follows:

> In determining whether the right of the accused to counsel of his choosing should be honored in a particular case, we must balance the defendant's constitutional right against the need to preserve the highest ethical standards of professional responsibility.

*Cunningham,* 672 F.2d at 1070.

In *United States v. Koon*, 34 F.3d 1416, 1437 (9th Cir 1994), *rev'd on other grounds*, 518 U.S. 81 (1996), , a defendant (Koon) challenged the district court's decision not to disqualify his former attorney's partner from representing his co-defendant (Powell).  The Ninth Circuit followed *Cunningham*, in stating that "the task for the district court was to balance Powell's qualified Sixth Amendment right to the counsel of his choice against the potential for conflict asserted by Koon."

The *Koon* Court's decision to follow Cunningham is in line with the Ninth Circuit's more general recognition that: "In seeking to disqualify a defendant's chosen counsel, the government bears a heavy burden of establishing that concerns about the integrity of the judicial process justify the disqualification.

8

*See United States v. Phillips*, 699 F.2d 798, 801-02 (6th Cir. 1983), *overruled on other grounds*, *United States v. Tosh*, 733 F.2d 422 (6th Cir. 1984)." *United States v. Washington*, 797 F.2d 1461, 1465, 1467 (9th Cir. 1986) (vacating conviction where district court applied wrong legal standard in disqualifying defendant's chosen counsel without evidentiary hearing, and remanding for evidentiary hearing).

In *Washington*, the Ninth Circuit cited *Phillips* with approval. The *Phillips* Court approvingly quoted the *Garcia* Court's articulation of this balancing test, *Garcia*, 517 F.2d at 273, "where the court required 'a cautious and sensitive consideration and balancing of individual constitutional protections, public policy and public interest in the administration of justice, and basic concepts of fundamental fairness' in ruling on a motion to disqualify defense counsel in a criminal case for conflicts of interest." 699 F.2d at 802. Notably, while Mr. Miske's Sixth Amendment right to counsel of choice will be destroyed if Mr. Otake's termination is affirmed, Mr. Otake's continued representation of Mr. Miske would not implicate his former client's Sixth Amendment rights. *Castellano*, 610 F. Supp. at 1148.

The *Castellano* Court's discussion of the *Cunningham* balancing test is instructive, *id.*, at 1147:

A number of factors are relevant to this calculus: the relative intensity of the attorney's representation of the persons involved, [*Cunningham*], at 1070-71; whether any of the lawyer's former clients have joined in the disqualification motion, *id.*, at 1071, 1073; whether those clients have asserted their attorney-client privilege, *id.*, at 1073; *see* [*Armedo-Sarmiento*], 524 F.2d at 593; and whether the current client is willing to limit his right to cross-examine the former client to avoid disclosure of information obtained during his lawyer's prior attorney-client relationship, . . . *Cunningham*, 672 F.2d at 1073-74.

Again following *Cunningham*'s progeny, the Ninth Circuit also recognizes that "[a]s a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." *Kasza*, 133 F.3d at 1171 (quoting and citing cases). The *Cunningham* Court recognized that "[t]he refusal to disqualify in the absence of a motion by the former client is all the more appropriate in the context of a criminal prosecution with its implication of constitutional rights." 672 F.2d at 1071. Where, as here, the former clients have not joined the government's motion to disqualify, "the interest of the government in disqualifying the attorney is normally quite weak." *Castellano*, 610 F. Supp. at 1148 (quoting *United States v. James*, 708 F.2d 40, 46 (2d Cir. 1983)).

In conducting the balancing the Sixth Amendment requires, courts also consider whether measures short of disqualification are sufficient. *See, e.g.*, *Cunningham*, 672 F.2d at 1073 (defendant was willing to have attorney's cross examination of former client limited to matters disclosed in public record); *Armedo-Sarmiento*, 524 F.2d at 593 (reversing order disqualifying counsel with

10

instructions that defendants be afforded opportunity to decide whether to choose to elect to proceed with chosen counsel, understanding that counsel's former clients would be entitled to full protection in preserving confidentiality of their privileged communications and to refrain from answering questions from counsel based on privileged communications); *Agosto*, 675 F.2d at 973 (instructing district court to consider whether means of eliminating potential conflict less burdensome than disqualification existed, including inquiring whether former clients were willing to consent to former counsel's representation of defendant and use of back-up counsel to cross examine former clients and take all necessary steps to alleviate conflict).

Here, the Magistrate Judge erred by its wholesale failure to conduct the balancing that the Sixth Amendment requires, and by its *per se* rejection of measures short of terminating Mr. Otake.

### B. Magistrate Judge's Erroneous Rejection of Measures Short of Termination

In his opposition to the government's motion to reconsider, Mr. Miske made clear that if former Client 1 and/or former Client 2 testify at trial, Mr. Kennedy or Ms. Panagakos would cross examine them, and Mr. Otake would not share any privileged or confidential information concerning his former clients with his co-

counsel.  ECF 770, p.4, 15-16.[6]  At the hearing, the government conceded that if Mr. Otake's prior representation of former Clients 1 and 2 was the sole grounds upon which it was seeking to disqualify Mr. Otake, prophylactic measures short of disqualification might work.

Nevertheless, the Magistrate Judge rejected Mr. Miske's proposed prophylactic measures, reasoning that HRPC 1.9 does not provide for this exception.  ECF 789, p.5.  As explained above and below, the Magistrate Judge's exclusive reliance on HRPC 1.9 was flawed, because it failed to balance Mr. Miske's Sixth Amendment right to counsel of choice.

In *Koon*, 34 F.3d at 1437-38 and n.18, the Ninth Circuit upheld the district court's denial of a motion to disqualify defendant Powell's counsel (Stone), notwithstanding Powell's partner's (Feeley) former representation of defendant Koon.  In balancing Powell's and Koon's respective interests, the district court noted that attorneys Feeley and Stone had implemented screening procedures designed to ensure that Feeley would not impart confidential information to Stone,

---

[6] Even if a conflict or potential conflict exists, "[t]rial courts may allow an attorney to proceed despite a conflict 'if the defendant makes a voluntary, knowing, and intelligent waiver.'" *United States v. Martinez*, 143 F.3d 1266, 1269 (9th Cir. 1998). A trial court should not reject a voluntary, knowing and intelligent waiver of a conflict unless the actual conflict is "so egregious that no rational defendant would knowingly and voluntarily desire the attorney's representation." *Id.* at 1270.

which thereby prevented any actual risk that Koon would be harmed by Stone's representation to of Powell.  Similarly, here, Mr. Otake has not and will not impart any confidential or privileged information he has concerning former Clients 1 and 2 to his co-counsel, Mr. Kennedy and Ms. Panagakos, and Mr. Otake will not cross-examine former Clients 1 and 2. Therefore, here, as in *Koon*, all that has been shown is "little more than the appearance of a conflict."[7]

The Ninth Circuit has "expressed 'grave doubts' as to whether mere appearances would ever be enough to deprive a criminal defendant of the right to counsel of his choice, [*Washington*, 797 F.2d at 1466], and [has] noted that the test formulated in *Wheat* itself directs courts to look for a "serious potential for conflict," rather than the mere appearance of conflict.  *Koon*, 34 F.3d at 1438, n.18 (quoting *Wheat v. United States*, 486 U.S. 153, 164 (1988)).

Courts in numerous cases have recognized that a potential conflict arising

---

[7] In determining whether the right of the accused to counsel of his choosing should be honored in a particular case, a court must balance the defendant's constitutional right to choose against the correlative right that such representation be free from conflicts of interest. The inquiry in the first instance is whether an actual conflict of interest exists, whether a potential conflict of interest exists, or whether no genuine conflict of interest exists at all. *United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994).  "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *United States v Baker*, 256 F.3d 855, 860 (9th Cir 2001) (quoting *Levy*).

from the government's decision to call defense counsel's former clients as

witnesses at counsel's current client's trial can be resolved by the precise measures

Mr. Miske has proposed here. *Armedo-Sarmiento*, 524 F.2d at 593; *Agosto*, 675

F.2d at 973; *Castellano*, 610 F.Supp. at 1148 ("Any former client of Shargel who is

called as a witness will be able to insist that Shargel not use information obtained

through confidential communications, and the court will 'exert every reasonable

effort to prevent inadvertent disclosures of confidential information.'" quoting

*Armedo-Sarmiento*, 524 F.2d at 593).

In *Cellini*, *supra,* the Court denied a government's motion to disqualify

defense counsel based on counsel's prior representation of two government

witnesses.  The Court conducted the balancing the Magistrate Judge failed to do

here, and considered the defendant's constitutional right to choose his own lawyer

and the unusually serious consequences that would flow from disqualifying counsel

who had represented the defendant for years pre-indictment in a complex case.  The

Court reasoned that the prejudice to the defendant that would have flowed from

disqualification was three-fold: (1) loss of a speedier trial than he could have with

the attorneys the government sought to disqualify; (2) loss of a relationship of trust

in his lawyer formed over the long course of the investigation; and (3) loss of his

lawyer's knowledge of the attitude, methods and character of the prosecutors.  596

F. Supp. 2d at 1199.  Mr. Miske will suffer this same three-fold prejudice here, if

Mr. Otake's termination is affirmed.  The *Cellini* Court described this prejudice as "substantial and possibly irreparable."  *Id.*, at 1199-1200.  On the other side the balance, the *Cellini* court recognized that the "prejudice to the prosecutors and to [defense counsel's former client] can be eliminated by the accepted method of having the cross-examination of [former client] conducted by a lawyer who is not from [defense counsel's law firm] and barring [firm] from disclosing any arguably privileged information it had from [former client] to that lawyer."  *Id.*, at 1200.  *See also Carter*, 2008 U.S. Dist. LEXIS 65882, at *16-17 (denying disqualification of defense counsel who concurrently represented cooperating government witness who was expected to testify against defense counsel's client in hopes of receiving Rule 35 motion, over government witness's objection, and instead ordering that defense counsel could not cross examine his government witness client, disclose confidential information to attorney who would conduct cross examination, or be in the courtroom when client testified).

Here, the Magistrate Judge erred in concluding that since HRPC 1.9 does not recognize an exception where defense counsel foregoes cross examination of his former clients and shields counsel conducting cross examination from confidential information, these measures were not a sufficient alternative to Mr. Otake's termination.  The Magistrate Judge's analysis here erroneously elevated HRPC 1.9 above Mr. Miske's Sixth Amendment rights.

C.  <u>Magistrate Judge's Incorrect Analysis of Former Client Consent Issue</u>

The Magistrate Judge concluded that HRPC 1.9 required Mr. Otake's termination because he has not obtained written consent to represent Mr. Miske from former Clients 1 and 2.  This analysis is flawed, because Mr. Otake's failure to obtain consent from former Clients 1 and 2 does not constitute grounds to disqualify him based on a motion filed by someone other than his former clients.  *Kasza*, 133 F.3d at 1171 ("[a]s a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification.") (quoting and citing cases).  "The refusal to disqualify in the absence of a motion by the former client is all the more appropriate in the context of a criminal prosecution with its implication of constitutional rights." *Cunningham*, 672 F.2d at 1072.

Where, as here, the defendant has agreed that co-counsel will cross examine Mr. Otake's former clients, and that Mr. Otake will not divulge confidential information concerning his former clients to his co-counsel, a common next step would be for the court to inquire whether Mr. Otake's former clients would object to this procedure.  *See, e.g.*, *Agosto*, *supra*; *Castellano*, *supra*.  Moreover, even if, after inquiry, Mr. Otake's former clients objected, the prophylactic measures proposed by Mr. Miske would still suffice.  *Armedo-Sarmiento*, 524 F.2d at 592-593; *Castellano*, 610 F.Supp. at 1148; *Carter*, *supra*.

16

D. Magistrate Judge's Erroneous Failure to Consider Irrelevance of
Former Client 1's Anticipated Testimony, As Well As Mr. Otake's
Statements as to Lack of Material Adversity or Substantial
Relationship

Mr. Otake described the lack of a substantial relationship between the matter

in which Mr. Otake represented former Client 1 and the Miske matter, as well as the

lack of any material adversity between their interests, in his Declaration of Counsel,

filed at ECF 775, ¶¶ 4-23.  Mr. Otake confirmed his understanding "that 'Client 1'

did not know Mr. Miske, did not associate with Mr. Miske, and had no direct and

personal information about Mr. Miske."  *Id.*, ¶ 18.  Mr. Otake explained that he

never saw the interests of former Client 1 and Mr. Miske as directly or materially

adverse (*id.*, ¶¶ 15-22), and for 4 ½ years, neither did the government (*id.*, ¶¶ 4-14,

23). In addition to Mr. Otake's Declaration, Mr. Miske also cited information from

the discovery and the public record which is further relevant to show the lack of a

substantial relationship or material adversity between former Client 1 and Mr.

Miske.  ECF 776, p.1-5.

The Magistrate Judge's Order erroneously ignored all of this information, and

instead based its findings solely on its conclusion that there was a "substantial risk

that confidential information Mr. Otake would have normally obtained in his prior

representations of 'Client 1' and 'Client 2' would materially advance Miske's

position in this subsequent matter."  ECF 789, p.4.  This perceived risk is

insufficient to mandate termination, where, as here: (1) well-accepted measures

short of disqualification are available; (2) Mr. Otake has filed a Declaration as to

former Client 1's lack of relevant information or material adversity (ECF 775, ¶¶ 4-

23); (3) the Government failed to act on this issue for 4½ years, including failing to

raise the issue in its motion to disqualify or with Mr. Otake when it was inducing

Mr. Otake to file a motion to withdraw (see ECF 748, at PageID: 5387-88, n.1); and

(4) most, if not all of the information concerning former Client 1 is now either a

matter of public record or has been produced in discovery.  ECF 776, p.5.[8]

Moreover, the Magistrate Judge also failed to consider the fact that even the

Government's proffer of former Client 1's anticipated testimony fails to establish a

nexus to Miske.  According to the government, former Client 1 "is expected to

testify that J.S. and T.T. arranged to smuggle drugs into a correctional facility

housing defendant Dae Han Moon."  ECF 774, p.3.  A similar situation was

presented in *Castellano*, where defense counsel Shargel's former clients were

---

[8]  Although unnecessary given the availability of Mr. Kennedy and/or Ms. Panagakos to cross examine former Client 1, an additional acceptable measure short of termination, which the Magistrate Judge also failed to consider, would be to limit Mr. Otake's cross examination of former Client 1 to matters which are public record or which have been disclosed to all defense counsel in discovery. *See Cunnngham,* 672 F.3d at 1073 (reversing district court order disqualifying attorney Michael Tigar and instructing that district court could limit Tigar's cross examination of former client to matters in the public record).

expected to testify in racketeering acts in which Mastrangelo, the defendant whom

Shargel represented for trial, was not named.  The *Castellano* Court observed:

> Mastrangelo is not named in connection with either of these matters, however, so Shargel's involvement in them may in fact have no adverse effect on his current representation. Assuming that Shargel will be unable to question a particular government witness, because he was a former client, Mastrangelo may regard this limitation as unimportant, since the presence of about twenty other defense attorneys will tend to ensure that no legitimate line of inquiry will be neglected.

610 F. Supp. at 1149.  Such is also the case here.

Finally, based on the current state of the record, it is not even clear that

former Client 1's testimony will be admissible.  It could very well be deemed

needlessly cumulative of the testimony of J.S. and T.T.

E. <u>Lack of Any Record Support for Magistrate Judge's Conclusion That Matter In Which Mr. Otake Represented Former Client 2 Is Substantially Related to Miske Matter</u>

On January 17, 2023, the Government disclosed, for the first time, that former

Client 2 is a government informant.  However, the Government still has not even

provided a proffer of former Client 2's anticipated trial testimony.  Instead, the

government has cited a report of interview of witness M.G., as well as reports of

interviews of another confidential informant whose identity the government has not

disclosed, both of whom reportedly made statements about former Client 2.  *See*

ECF 776, p.6-7.

As it currently stands, the government is in breach of its *Brady/Giglio*

obligations with respect to former Client 2.  No reports of interview of former Client 2 have been produced.  No information concerning any work former Client 2 has done for the government has been produced.  The government has not disclosed former Client 2's agreements with the government, or any information concerning when or why his status changed from a target as identified in a government case initiation report dated March 2, 2018 to a now confidential informant about whom the defense has been provided no information.  This constitutes grounds to bar former Client 2 from testifying at trial, as a sanction for the government's failure to comply with its discovery deadlines, which would then remove any potential conflict.

In any event, other than the government's bald assertion that the matter in which Mr. Otake previously represented former Client 2 "related to the same conduct charged here[,]" ECF 739, p.19; ECF 789, p.2, there is nothing in the record to support the Magistrate Judge's substantial relatedness finding.   The Magistrate Judge' reliance on the government's bald assertion was error.  The government neglected to inform the Court that the assault case in which Mr. Otake represented former Client 2 was a Family Court matter, and it was a misdemeanor (assault in the third degree).  There is simply nothing in the record which supports the Magistrate Judge's conclusion that Mr. Otake represented former Client 2 in a matter which was substantially related to the Miske matter.

20

F.  <u>Magistrate Judge's Erroneous Refusal to Consider Substantial
Hardship to Miske, Despite Already Finding That Such Substantial
Hardship Exists</u>

The Magistrate Judge originally denied Mr. Otake's motion to withdraw,

based on its finding that terminating Mr. Otake from representing Mr. Miske would

work a substantial hardship on Mr. Miske. Partial Transcript of January 18, 2023

Hearing, p.9.  At the February 8, 2023 hearing on the government's motion to

reconsider, the Magistrate Judge indicated, after argument, that he was not inclined

to change his substantial hardship finding.  This is with good reason.

Mr. Miske retained Mr. Otake to be his lead trial lawyer. Mr. Miske has

always expected Mr. Otake to play an integral role in jury selection, make the

opening statement, give the closing argument, cross-examine some of the

important and critical government witnesses, and conduct direct examination of

potential defense witnesses in response to the government's case-in-chief. Why?

Because Mr. Otake has considerable trial skills and trial successes combined with

his experience and knowledge of trials in the District of Hawai'i. For these

reasons, Mr. Otake is uniquely qualified to be lead counsel for Mr. Miske.

A further substantial hardship to Mr. Miske results from these additional

facts. First, Mr. Otake has represented Mr. Miske in the investigation which led

to these charges since August 15, 2017, which is more than 5 years. Second, Mr.

Otake represented Mr. Miske in 1:19-cr-00099-DKW-KJM from July 16, 2020 until February 9, 2023, for more than 2 ½ years. Finally, Mr. Otake has represented Mr. Miske in many of the acts and charges associated with the RICO conspiracy count one and the VICAR assault conspiracy count ten.

The Magistrate Judge erroneously concluded that HRPC 1.9 required Mr. Otake's termination, without regard to the substantial hardship finding that the Magistrate Judge had already made.  This conclusion was contrary to the clearly established law discussed above, under which the defendant's interest in having his counsel of choice continue to represent him, and the extent of the prejudice he would suffer from the termination of his counsel of choice, are highly relevant factors.

As with the defendant in *Cunningham* with respect to Attorney Tigar, the disqualification of Mr. Otake from any further role in Mr. Miske's defense in this case would not merely defeat Mr. Miske's abstract right to counsel of his choice; it would subject him to real prejudice in this criminal prosecution. *See Cunningham,* 672 F.2d at 1070-1071.  As with the defendant in *Cellini*, the prejudice that Mr. Miske will suffer if Mr. Otake's termination is affirmed is "substantial and possibly irreparable."  *See Cellini,* 596 F. Supp. 2d at 1199-1200.  The Magistrate Judge has repeatedly recognized the substantial hardship

22

that Mr. Otake's termination foists upon Mr. Miske; however, he erroneously concluded that this hardship had no place in analyzing whether termination was required under HRPC 1.9.

> G. Miske's Sixth Amendment Right to Counsel of His Choice is the Most Crucial Factor to Balance Here

The Sixth Amendment provides protection for a criminal defendant's choice of counsel. *Powell v. Alabama*, 287 U.S. 45, 53 (1932). The right to counsel of choice "has been regarded as the root meaning of the constitutional guarantee." *Gonzalez-Lopez*, 548 U.S. at 147. "Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants." *Id.* at 148. When a defendant is erroneously denied his right to counsel of choice, it constitutes structural error, because it "so affec[ts] the framework within which the trial proceeds that courts may not even ask whether the error harmed the defendant. *Luis*, 578 U.S. at 11 (quoting *id.*) (internal quotations omitted). The right to counsel of choice stems from "the necessarily close working relationship between lawyer and client, the need for confidence, and the critical importance of trust ..." *Luis*, 578 U.S. at 11.

## V.    Conclusion

The Magistrate Judge's Order erroneously failed to balance Mr. Miske's Sixth Amendment right to counsel of choice against HRPC 1.9. Having Mr.

Kennedy and/or Ms. Panagakos cross examine former Clients 1 and 2, and screening them from any relevant confidential information in Mr. Otake's possession, is a well-accepted method for addressing the issues presented by the government's motion.  The Magistrate Judge erred in refusing to consider methods short of termination.  The Magistrate Judge also erroneously ignored the general rule pursuant to which courts do not disqualify an attorney on the grounds alleged by the government unless the former client moves for disqualification.  The Magistrate Judge further erroneously ignored highly relevant information, including Mr. Otake's Declaration in support of his Supplemental Response (ECF 775), when concluding that former Client 1's interests are materially adverse to Mr. Miske's interests, and that their matters are substantially related.  The Magistrate Judge's substantial relatedness finding with respect to former Client 2 is tainted by a dearth of any record support whatsoever, and by the fact that Mr. Otake actually represented former Client 2 in a Family Court misdemeanor, which by its nature is unrelated to any alleged racketeering activity.  Finally, despite having already found that Mr. Otake's termination constitutes a substantial hardship to Mr. Miske, the Magistrate Judge erroneously concluded that such hardship was not relevant to its decision here. Not only is this substantial hardship relevant, this concern is paramount here, just

as it was in *Cunningham* and *Cellini*.

Accordingly, the Magistrate Judge's Order erroneously deprives Mr. Miske of his Sixth Amendment right to counsel of choice. Reversal is required to prevent structural error.

DATED:  Honolulu, Hawai`i, February 23, 2023.

*/s/ Lynn E. Panagakos*

LYNN E. PANAGAKOS
MICHAEL J. KENNEDY

Attorneys for Defendant
MICHAEL J. MISKE, JR. (01)

CERTIFICATE OF SERVICE

I, Lynn E. Panagakos, hereby certify that by this filing through the court's electronic filing system, all counsel of record have been served with this document.

DATED:  Honolulu, Hawai`i, February 23, 2023.

*/s/ Lynn E. Panagakos*

LYNN E. PANAGAKOS