MICHAEL J. KENNEDY
Law Offices of Michael Jerome Kennedy, PLLC
Nevada State Bar #10103; California State Bar #193901
Colorado State Bar #17868
333 Flint Street
Reno, Nevada 89501
775-221-7100 (office); 775-233-0914 (mobile)
michael@mjkennedylaw.com

LYNN E. PANAGAKOS   7696
841 Bishop Street, Suite 2201
Honolulu, Hawai`I 96813
Telephone: (808) 542-9943
lynnpanagakos@yahoo.com
**Attorneys for Defendant Michael J. Miske, Jr.**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 19-cr-00099-DKW-KJM. |
| | ) | |
| Plaintiff, | ) | **DEFENDANT MICHAEL J. MISKE** |
| | ) | **JR.'S MOTION TO MODIFY** |
| v. | ) | **CONDITIONS OF DETENTION TO** |
| | ) | **PERMIT DEFENDANTS TO** |
| MICHAEL J. MISKE, JR.,     (1) | ) | **PREPARE FOR TRIAL WITH** |
| JOHN B. STANCIL,     (2) | ) | **REASONABLE SCHEDULE OF** |
| DAE HAN MOON,     (5) | ) | **JOINT MEETINGS OF** |
| PRESTON M. KIMOTO,     (6) | ) | **DEFENDANTS AND THEIR** |
| JARRIN K. YOUNG,     (11) | ) | **COUNSEL** |
| DELIA FABRO-MISKE,     (12) | ) | |
| JASON K. YOKOYAMA     (13) | ) | |
| | | |
| Defendants. | | |

---

## MOTION

Mr. Miske moves to modify or rescind separation orders that prevent him and

all co-defendants from having joint defense meetings to prepare for trial. Mr. Miske

Page 1 of  9

requests that the Court order a reasonable schedule of joint defense meetings involving all remaining trial defendant separatees (if any) and counsel, together with pretrial released trial defendants and their counsel. This is a proper exercise under the Court's supervisory powers to ensure the underlying Sixth Amendment issues inherent in joint defense agreement or common interest agreements. Mr. Miske further requests that the Court direct the parties to engage in discussions towards reaching an agreement to permit such joint defense meetings at the Federal Detention Center and/or the United States Courthouse. If agreement cannot be reached within one week from the date of the Court's order, then undersigned counsel requests that the Court itself issue a reasonable schedule of joint defense meetings with defendants and their counsel.

I.      **Sixth Amendment Effective Assistance Of Counsel Recognizes The Need For Joint Defense Arrangements In Complex, Multi-Defendant, Multi-Conspiracy Prosecutions**.

"A common defense often gives strength against a common attack." *Glasser v. United States*, 315 U.S. 60, 92 (1942) (Franfurter, J. dissenting). The benefits of joint defense arrangements have been described in this fashion:

> Information is the sine qua non of mounting a successful defense … Joint defense groups are essential in criminal cases because of the dearth of information made available to the co-defendants. The Fifth Amendment privilege against self-incrimination precludes the type of formal discovery from co-defendants that happens in civil cases as a matter of right. Additionally, the right to discovery from the prosecution is limited. Although access to relevant information is essential for a fair defense, the only means of obtaining such information in criminal cases is to permit cooperation among the co-defendants and encourage the voluntary exchange of information. Given the absence of formal discovery, the formation of joint defense groups to

> promote the voluntary exchange of information is neither surprising nor suspicious. Without joint defense groups, defendants are deprived of information, and consequently, denied a meaningful opportunity to defend themselves by a coordinated defense.
>
> ...
>
> Our adversary system of justice ideally contemplates a contest among equals. Each side is expected to put forth its best case. ... Unless we allow co-defendants a confidential opportunity to coordinate a unified theory, co-defendants are relegated to offering inconsistent defenses. Such defense behavior helps the prosecution secure convictions. Encouraging co-defendants to communicate about trial strategy is the only way to assure a contest of equals. These communications guarantee the defense the ability to make the most effective use of information through common strategy.
>
> ...
>
> A trial becomes a lopsided contest when multiple co-defendants are discouraged from coordinating their defense and present unnecessarily inconsistent defenses. Relegating defendants to uncoordinated and inconsistent defenses bestows an unfair tactical advantage on the prosecution because inconsistent defenses impair the credibility of the defense as a whole.

Deborah Stavile Bartel, *Reconceptualizing the Joint Defense Doctrine*, 65 Fordham L. Rev. 871, 873, 880-882 (1996). See also Susan K. Rushing, Note, *Separating the Joint-Defense Doctrine from the Attorney-Client Privilege*, 68 Tex. L. Rev. 1273, 1274 (1990) ("The joint-defense privilege fulfills the social goal of encouraging interparty communications by preserving their confidentiality.").

The prosecution against Mr. Miske and his remaining co-defendants is a complex, multi-defendant, multi-conspiracy prosecution on steroids. Nine separate conspiracy counts charge some of the defendants: count 3 - VICAR murder conspiracy

(Miske); count 4 - VICAR murder for hire conspiracy (Miske); count 6 - Kidnapping conspiracy (Miske); count 7 - Murder for hire conspiracy (Miske, Stancil, & Moon); count 10 - VICAR assault conspiracy (Miske & Stancil); count 11 - Kidnapping conspiracy (Miske & Kimoto); count 12 - Chemical weapons use conspiracy (Miske & Stancil); count 15 - Drug distribute & possess to distribute conspiracy (Miske); and count 16 - Drug distribute conspiracy (Miske, Stancil, Moon, Kimoto & Young). ECF No. 673, PageID 4454-4467.

More importantly, all remaining defendants (Miske, Stancil, Fabro-Miske, Yokoyama, Moon, Kimoto & Young) are charged in count 1 with an expansive and sweeping RICO conspiracy which alleges specific racketeering activity in eighteen separate types of acts over more than twenty years. ECF No. 673, PageID 4440-4452. The vacuums in the knowledge of each defendant as to the alleged acts over twenty-plus years in count 1 damage the ability to mount an effective defense impairing the credibility of the defense as a whole. The answer to these vacuums of knowledge under the Sixth Amendment is joint defense groups conducting joint defense meetings to fill knowledge gaps. *See Bartel*, *supra*, at 881.

The Ninth Circuit has implicitly recognized that joint defense arrangements or joint defense agreements or common interest agreements have Sixth Amendment effective representation underpinnings. *Continental Oil Co. V. United States*, 330 F.2d 347 (9th Cir. 1964) (quashing a grand jury subpoena for statements of witnesses whose communications with counsel were privileged even though the lawyers of two

defendant corporations had shared that information with each other); *Hunydee v. United States*, 335 F.2d 183, 185 (9th Cir. 1965) (quashing a grand jury subpoena for material which was covered by a joint defense agreement). As the Seventh Circuit has observed:

> Uninhibited communication among joint parties and their counsel about matters of common concern is often important to the protection of their interests. In criminal cases it can be necessary to a fair opportunity to defend.

*United States v. McPartlin*, 595 F.2d 1321, 1336 (7th Cir. 1997).

One limitation on uninhibited communication has been recognized: "the legitimate value of joint defense agreements will not be significantly diminished by including a limited waiver of confidentiality by testifying defendants for purposes of cross-examination only." *United States v. Stepney*, 246 F.Supp.2d 1069, 1086 (N.D.Ca. 2003).

The thirty defendants in *Stepney* were charged in a criminal enterprise prosecution with seventy substantive counts. *Stepney*, at 1072. Common interest or joint defense agreements cannot create a duty of loyalty as opposed to a duty of confidentiality which is subject to waiver because such agreements "cannot extend greater protections than the legal privileges on which they rest." *Stepney*, at 1079-1080 ("Joint defense agreements are not contracts which create whatever rights the signatories chose, but are written notice of defendants' invocation of privileges set forth in the common law."). See also *United States v Almeida*, 341 F.3d 1318, 1326-1327 (holding that cooperating defendant who testifies for the government in exchange for

a reduced sentence waives confidentiality and privilege to any statements made to co-defendants or co-defendants' attorneys).

Common interest or joint defense agreements may be express or implied, need not be in writing, and can be in separate actions. *United States v. Gonzalez*, 669 F.3d 974, 979-982 (9th Cir. 2012); *Almeida*, 341 F.3d at 1319 (11th Cir. 2003) (oral joint defense agreement).

II.     **The Sixth Amendment Underpinnings Which Recognize The Need For Joint Defense Arrangements In Complex, Multi-Defendant, Multi-Conspiracy Prosecutions Requires  A Remedy. Specifically, A Reasonable Schedule of Joint Defense Meetings Involving All Separatees And Counsel Together With Defendants On Pretrial Release And Their Counsel**

It is axiomatic that a right without a remedy to enforce that right is not much of a right at all. Given the Sixth Amendment underpinnings implicit in the right to joint defense agreements or common interest agreements in complex, multi-defendant, multi-conspiracy prosecutions, the order in *United States v. Wegers* is instructive here:

> ... it does not appear that permitting Defendants and their counsel to engage in joint defense meetings together would jeopardize the goals served by the overall separatee designation. ... The parties are DIRECTED to engage in discussion towards an agreement to permit pretrial meetings involving all separatees and counsel together.

*United States v. Wegers*, 2006 WL 753242 * 2 (W.D. Wa. 2006).

While feasibility and logistics are legitimate concerns, neither concern over-rides the Sixth Amendment right to the effective assistance of counsel which the *Wegers* order recognizes. "Under their supervisory power, courts have substantial authority to oversee their own affairs to ensure that justice is done." *United States v Simpson*,

927 F.2d 1088, 1089 (9th Cir. 1991). The order in *Wegers* is an example of a court exercising its supervisory power to ensure a remedy to enforce a right (effective assistance of counsel in complex multi-defendant prosecutions).

As Chief Judge Patel reasoned in *Stepney*:

> Joint defense agreements, however, serve a different purpose. Each defendant entering into a joint defense agreement has a representative, fully and confidentially informed of the client's situation. The joint defense privilege allows defendants to share information so as to avoid unnecessary inconsistent defenses that undermine the credibility of the defense as a whole. *Bartel*, *supra*, at 873, 881. In criminal cases where discovery is limited, such collaboration is necessary to assure a fair trial in the face of the prosecution's informational advantage gained through the power to gather evidence through searches and seizures. Codefendants may eliminate inconsistent defenses without the same degree of disclosure that would be required for an attorney to adequately represent her client. The legitimate value of joint defense agreements will not be significantly diminished by including a limited waiver of confidentiality by testifying defendants for purposes of cross-examination only.

*Stepney*, 246 F.Supp.2d at1086.

Lifting the separatee order between Miske and Stancil is an important first step; there is simply no safety reason to separate the two brothers. The order should remain lifted. Because the government has not done so on a permanent basis, the issue is not moot as the government contends. ECF No. 899, PageID.7445-7446.The same reasoning applies to trial defendants Moon and Young. Stancil had been housed with Moon and Young for years without any need for a separatee order among the three. Placing trial defendants together separate from cooperating witnesses and cooperating

defendants removes the point of separation relied upon in the government's opposition to Defendant Stancil's moiton. ECF No. 899, PageID.7446-7447.

Finally, undersigned counsel have been counsel in similar out-of-district RICO/VICAR prosecutions and have neither encountered such wholesale separatee orders nor opposition to joint defense meetings from government counsel regarding joint defense meetings with defendants and counsel. Experience has taught this lesson: effective representation under the Sixth Amendment in those cases necessitated joint defense agreements and common interest agreements with defendants' participation in meetings as it is the defendants themselves who often fill knowledge gaps. The same holds true here.

## CONCLUSION

For the reasons set forth above, Mr. Miske requests that the Court grant his motion to modify or rescind separation orders that prevent him and all co-defendants from having joint defense meetings to prepare for trial. Mr. Miske further request that the Court order that a reasonable schedule of joint defense meetings involving all remaining trial defendant separatees (if any) and counsel, together with pretrial released trial defendants and their counsel. This is a proper exercise under the Court's supervisory powers to ensure the underlying Sixth Amendment issues inherent in joint defense agreement or common interest agreements. Mr. Miske further requests that the Court direct the parties to engage in discussions towards reaching an agreement to permit such joint defense meetings at the Federal Detention Center and/or the United States Courthouse. If agreement cannot be reached within one week from the

date of the Court's order, then undersigned counsel requests that the Court itself issue

a reasonable schedule of joint defense meetings with defendants and their counsel.

DATED: July 19, 2023      *Michael J. Kennedy*
                               MICHAEL J. KENNEDY
                               *Lynn E. Panagakos*
                               LYNN E. PANAGAKOS
                               Counsel for defendant
                               MICHAEL J. MISKE, JR (01)

## CERTIFICATE OF SERVICE

I, Lynn E. Panagakos, hereby certify that this filing, through the court's electronic filing system, all counsel of record have been served with this document.

DATED: Honolulu, Hawai`I, July 19, 2023

                               /s/ Lynn E. Panagakos
                               LYNN E. PANAGAKOS