MICHAEL J. KENNEDY
Law Offices of Michael Jerome Kennedy, PLLC
Nevada State Bar #10103; California State Bar #193901
333 Flint Street
Reno, NV 89501
775-221-7100 (office); 775-233-0914 (mobile)
Email: michael@mjkennedylaw.com

LYNN E. PANAGAKOS 7696
841 Bishop Street, Suite 2201
Honolulu, Hawai`i 96813
Telephone: (808) 542-9943
E-mail: lynnpanagakos@yahoo.com

*Attorneys for Michael J. Miske, Jr. (01)*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL J. MISKE, JR. (01),<br>JOHN B. STANCIL (02),<br>DELIA FABRO MISKE (12),<br>JASON K. YOKOYAMA (13),<br><br>Defendants. | CR. NO. 19-00099-DKW-KJM<br><br>**JOINT DEFENDANTS' MOTION IN LIMINE NO. 14: TO EXCLUDE EVIDENCE RELATED TO OBTAINING A PRIVATE ROOM AT A KARAOKE BAR; CERTIFICATE OF SERVICE** |

JOINT DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATED TO OBTAINING A PRIVATE ROOM AT A KARAOKE BAR

Defendants move in limine under Fed.R.Evid. 401-403, 404(b) to exclude evidence pertaining to Miske allegedly demanding a private room in a karaoke bar at a personal friend's party (Heather Freeman), while Jacob Smith allegedly brandished a baton allegedly provided by Miske. The government has informed counsel that it may seek to prove that this incident occurred, on the ground that it constitutes a "racketeering act" of "extortion." As explained below, even if proved, this conduct does not constitute extortion. It is not a "racketeering act" or an affair of the fiction known as the alleged "Miske Enterprise."

## I. The Evidence at Issue in this Motion

The FBI report of its July 24, 2019 interview of Smith states (bates 00186225):

> Miske and Smith went to KTV Lounge because Miske wanted to use Smith to intimidate the manager into providing a private room for Heather Freeman's birthday celebration. Miske went into KTV Lounge with Smith and Miske started yelling at the manager. Eventually Miske got his way and the manager agreed to provide him the room.

Miske assumes that Smith's story has evolved to where he now claims that during this encounter, he brandished a baton that Miske had provided to him.

The FBI report of its interview of Freeman states (bates 00364283):

> Smith showed up with Miske to Freeman's sister's bachelorette party at a karaoke bar in approximately 2016. Miske and Smith stayed for a few minutes only, and they did not have any issues with the staff at the bar or the karaoke room. Miske and Smith did no threaten anyone that night. Freeman was intoxicated that evening. It was possible that she told Miske she was having trouble getting a room, but she had booked it in advance. There were ten girls present at the bachelorette party.

## II. The Evidence is Inadmissible Under Fed.R.Evid. 402

Count One charges a conspiracy to "conduct and participate, directly and

indirectly, in the conduct of the affairs of the Miske Enterprise through a pattern of racketeering activity" (Dkt. 673, PageID.4447), including "acts indictable under" 18 U.S.C. § 1951 (Hobbs Act extortion) (*id*., PageID.4449). § 1951(b)(2) defines extortion as "the obtaining of property from another, with his consent, induced by the wrongful use of actual or threatened force, violence or fear. . . ." As a matter of law, the alleged obtaining of a preferred location in a karaoke bar does not constitute the "obtaining of property" under the Hobbs Act. Therefore, evidence of this allegation is irrelevant, because it does not amount to a "racketeering act" of "extortion."

In *Scheidler v. NOW, Inc.,* 537 U.S. 393, 404-405 (2003), the Court held that anti-abortion groups' use of force to shut down abortion clinics did not constitute extortion. There, the government argued: "where the property at issue is a business's *intangible* right to exercise exclusive control over the use of its assets, [a] defendant obtains that property by obtaining control over the use of those assets." *Id.,* at 400. The Court rejected the government's argument, reasoning that (*id.,* at 405):

> even when their acts of interference and disruption achieved their ultimate goal of "shutting down" a clinic that performed abortions, such acts did not constitute extortion, because petitioners did not "obtain" respondents' property. Petitioners may have deprived our sought to deprive respondents of their alleged property right of exclusive control of their business assets, but they did not acquire any such property. They neither pursued nor received something of value from respondents that they could exercise, transfer, or sell.

In *Sekhar v. United States*, 570 U.S. 729, 736 (2013), the Court construed *Scheidler* as holding that the defendants' conduct did not constitute "obtaining" property, even though it could have been said "that physical occupation of property amounted to obtaining that property." In explaining why "physical occupation of property" does

not amount to "obtaining that property," *Sekhar* reaffirmed the principle announced in *Scheidler*: "that a defendant must pursue something of value from the victim that can be exercised transferred or sold. . . ." 570 U.S. at 736.

Thus, *Sekhar* and *Scheidler* make clear that Miske and Smith's alleged obtaining of a preferred location within a karaoke bar one evening, for Miske's friends' use as paying customers, does not constitute "obtaining of property" under 18 U.S.C. § 1951(b)(2). *Sekhar,* 570 U.S. at 736 (quoting and explaining its reasoning in *Scheidler,* 537 U.S. at 405: they "did not pursue or receive 'something of value from' the [karaoke bar] that they could then 'exercise, transfer or sell' themselves.").

This conclusion is further bolstered by *Kelly v. United States,* 140 S. Ct. 1565, 1569 (2020), where the Court reversed wire fraud and federal program fraud convictions [1] against state government officials arising from their conduct in retaliating against a mayor by reducing traffic lanes reserved at a bridge's toll plaza for his community's morning commuters. The Court rejected the government's argument that the defendants obtained property by commandeering part of the Bridge itself and taking control of its physical lanes. The *Kelly* Court analogized to *Cleveland v. United States,* 531 U.S. 12, 20, 23 (2000), where the Court rejected the government's argument that a scheme aimed at altering a state's licensing decisions constituted a scheme to obtain property, reasoning that "prerogatives over who should get a benefit and who should not—do not create a property interest." *Kelly,* 140 St. Ct. at 1572

[1] Cases construing "obtaining money or property" in mail & wire fraud statutes apply to construing "obtaining of property" in the Hobbs Act. *Sekhar,* 570 U.S. at 737.

(internal quotations omitted). The *Kelly* Court further reasoned, *id.,* at 1573:

> Contrary to the Government's view, the two defendants did not "commandeer" the Bridge's access lanes (supposing that word bears its normal meaning). They (of course) did not walk away with the lanes; nor did they take the lanes from the Government by converting them to a non-public use.

Similarly, here, Miske is not alleged to have walked away with the karaoke bar's room, or to have converted it to a non-karaoke bar use. As alleged, Miske's friends used the karaoke bar for its intended use: as paying customers. The *Kelly* Court further explained that what the defendants did was "allocate[] lanes as between different groups of drivers[,]" altering "a regulatory decision about . . . which drivers had a 'license' to use which lanes." *Id.* Likewise, here, according to the government's allegation, what Miske did was "allocate [rooms] between different [customers]," altering the manager's decision "about which [customers] had a 'license' to use which [rooms]." This does not constitute "obtaining of property." Therefore, it does not constitute a "racketeering act" of extortion indictable under § 1951.

Further, obtaining the use of a preferred location within a karaoke bar for a bachelorette or birthday party for a personal friend and her friends was purely a personal matter. There was no enterprise-related purpose. It was not an "affair of" the so-called "Miske Enterprise." *See Reves v. Ernst & Young,* 507 U.S. 170, 185 (1994) ("liability depends on showing that the defendants [conspired to] conduct[] or participate[] in the conduct of the '*enterprise's* affairs,' not just their *own* affairs") (quoting § 1962(c), emphasis in *Reeves*).[2]

---

[2] In an analogous context (18 U.S.C. § 1959), the Ninth Circuit "limit[ed] the statute's

In sum, since the karaoke bar incident is not a racketeering act or an affair of the alleged Miske Enterprise, it is irrelevant and inadmissible. Fed.R.Evid. 401, 402.

### III. The Evidence Is Inadmissible Under Fed.R.Evid. 404(b)(1) and 403

Since the alleged obtaining of the use of a preferred location in the karaoke bar through intimidation is outside the scope of the RICO conspiracy, not only is it inadmissible under FRE 402, it is also inadmissible under FRE 404(b)(1). This evidence is not admissible, and the government is not seeking to introduce it under, FRE 404(b)(2), as evidenced by the government's failure to include it in its FRE 404(b)(3) notice (Dkt. 1016).

This evidence is further inadmissible under FRE 403. If the evidence is admitted, a mini-trial would ensue over whether the incident even occurred. Ms. Freeman has already informed the government that the incident did not occur. There are of course numerous additional percipient witnesses. This would add undue delay to a trial that is already projected to take 5 months. Admitting this evidence would also be unfairly prejudicial and misleading, since it is not a racketeering act and it cannot be considered as part of the alleged pattern of racketeering activity.

---

scope to those cases in which the jury finds that one of the defendant's general purposes or dominant purposes was to enhance his status or that the violent act was committed 'as an integral aspect' of gang [i.e., enterprise] membership. . . ." *Banks v. United States,* 514 F.3d 959, 969-970 (9th Cir. 2008). *Banks* reversed the defendant's conviction due to instructional error which was not harmless, because the jury could have convicted if it found the defendant's conduct "was generally motivated by personal animosity and by a desire to regain the respect and affection of his girlfriend, so long as the jury also found some incidental purpose to maintain his position in the [enterprise]." *Id.,* at 969.

DATED: November 13, 2023

*/s/Michael J. Kennedy*
MICHAEL J. KENNEDY
*/s/ Lynn E. Panagakos*
LYNN E. PANAGAKOS
Counsel for Defendant
MICHAEL J. MISKE, JR (01)

*/s/ Donovan Odo*
DONOVAN ASAO ODO
*/s/ Marcia Morrissey*
MARCIA A. MORRISSEY
Counsel for Defendant
DELIA FABRO-MISKE (12)

*/s/ Walter J Rodby*
WALTER J. RODBY
*/s/ Terri L Fujioka-Lilley*
TERRI L. FUJIOKA-LILLEY
Counsel for Defendant
JOHN B. STANCIL (02)

*/s/ William A. Harrison*
WILLIAM A. HARRISON
Counsel for Defendant
JASON K. YOKOYAMA (13)

CERTIFICATE OF SERVICE

I, Lynn E. Panagakos, hereby certify that a true and correct copy of this document this filing has been duly served on all counsel of record through the court's electronic filing system.

DATED: Honolulu, Hawai`i, November 13, 2023

/s/ Lynn E. Panagakos
LYNN E. PANAGAKOS