MICHAEL J. KENNEDY
Law Offices of Michael Jerome Kennedy, PLLC
Nevada State Bar #10103; California State Bar #193901
333 Flint Street
Reno, NV 89501
775-221-7100 (office); 775-233-0914 (mobile)
Email: michael@mjkennedylaw.com

LYNN E. PANAGAKOS   7696
841 Bishop Street, Suite 2201
Honolulu, Hawai`i  96813
Telephone: (808) 542-9943
E-mail:  lynnpanagakos@yahoo.com

*Attorneys for Michael J. Miske, Jr.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL J. MISKE, JR.,<br><br>Defendant. | CR. NO. 19-00099-DKW-KJM<br><br>DEFENDANT MICHAEL J. MISKE, JR.'S MOTON FOR DISMISSAL OF JURY AND TO BEGIN JURY SELECTION ANEW; CERTIFICATE OF SERVICE |

DEFENDANT MICHAEL J. MISKE, JR.'S MOTION FOR DISMISSAL OF
JURY AND TO BEGIN JURY SELECTION ANEW

Defendant Michael J. Miske, Jr. received notice, via ECF No. 1263, that Mr.

Stancil will be entering a guilty plea to an Information in Cr. No. 24-0005.[1] Mr. Miske

---

[1] As of this writing, Cr. No. 24-0005 is not available on PACER.  Undersigned counsel has not seen a copy of the Information, or Mr. Stancil's plea agreement, and has not been informed of its terms.

moves to dismiss the jury and to begin jury selection anew, due to the unfair prejudice arising from co-defendant John Stancil's decision to plead guilty after the jury was sworn, on the heels of co-defendant Delia Fabro Miske's entry of a guilty plea and cooperation agreement following four days of jury selection. Under the unique circumstances of this case, failure to grant this motion will deprive Mr. Miske of his right to a fair trial.  Therefore, Mr. Miske respectfully requests that the Court dismiss the jury and begin jury selection anew.[2]

Mr. Miske has "a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else." *Bisaccia v. Attorney General of New Jersey,* 623 F.2d 307, 312 (3d Cir. 1980) (*quoting United States v. Toner*, 173 F.2d 140, 142 (3d Cir. 1949)).  Courts "have long recognized that admitting a co-defendant's guilty plea can jeopardize the fundamental fairness of a criminal trial because of the likelihood that the jury may impute a co-defendant's guilt to the defendant. See *Toner*, 173 F.2d at 142." *V.I. v. Mujahid,* 990 F.2d 111, 116 (3d Cir. 1993).

Mr. Miske recognizes that a curative instruction, such as the joint instruction the parties submitted following Ms. Fabro Miske's guilty plea, is generally considered sufficient to mitigate the prejudice resulting from a co-defendant's guilty plea after

---

[2] *See United States v. Potts,* 138 Fed. Appx. 439, 441 (3d Cir. 2005) ("Thus, we continue to hold that decisions on whether to release a jury or give a curative instruction when a co-defendant enters a guilty plea and then testifies as a government witness are vested in the sound discretion of the District Court.")

trial has begun.  However, now that Mr. Stancil has also agreed to enter a guilty plea, the risk of unfair prejudice has exponentially increased, to the point where it cannot be adequately mitigated with jury instructions. Indeed, unfair prejudice is such a virtual certainty that it would defy common sense to think that it could be effectively mitigated with curative instructions.

The prejudice which can flow from a co-defendant's guilty plea after trial has begun is at least threefold: (1) the jury can draw adverse or unfair inferences against the remaining co-defendants; (2) the jury could use the former co-defendant's admission of guilt as evidence of the guilt of the remaining co-defendants; and (3) the jury could give the former co-defendant's testimony undue weight. *United States v. Barret,* 848 F.3d 524, 533 (2d Cir. 2017).  Here, all three forms of prejudice exist under unique circumstances which render jury instructions inadequate to mitigate this prejudice.

Mr. Miske, Mr. Stancil and Ms. Fabro Miske have been pursuing joint defense strategies since their arrests.  They have been sharing confidential work product and defense strategy under a joint defense agreement.  Mr. Miske, Mr. Stancil, and Ms. Fabro Miske pursued a joint defense strategy during voir dire of every individual who has been selected as a juror.  Mr. Miske and Mr. Stancil also pursued a joint defense strategy during voir dire of every individual who has been selected as an alternate juror.  The court gave the defense 10 minutes, collectively, to conduct individual voir dire of each potential juror.  In furtherance of the joint defense strategy, counsel for Mr. Miske agreed to divide the questioning by potential juror, with counsel for each

3

defendant questioning approximately 1/3 of the potential jurors, rather than dividing the 10 minutes that each defense counsel could question each individual potential juror. Thus, Mr. Miske is now left with a jury comprised of a majority of jurors who were individually questioned by counsel for co-defendants who have now pled guilty, at least one of whom will be testifying against Mr. Miske.[3]

Every juror saw Mr. Stancil and heard his claim of innocence. Every juror who is not an alternate juror saw Ms. Fabro Miske and heard her claim of innocence. A majority of jurors individually heard counsel for Mr. Stancil or counsel for Ms. Fabro Miske proclaim not only their own client's innocence, but also Mr. Miske's innocence. During individual voir dire, in furtherance of the joint defense strategy then being pursued by all three defendants, counsel for Mr. Stancil and counsel for Ms. Fabro Miske each strongly suggested to individual jurors that there would be a lack of evidence sufficient to convict not only their own individual client, but all three defendants, "Mike, Johnny and Delia." Now, these same attorneys are agreeing that their clients are no longer entitled to the presumption of innocence, and that their clients are in fact guilty. This would become clear to the jurors when they hear that Ms. Fabro Miske has pled guilty and they further hear or inevitably conclude that Mr. Stancil has pled guilty.[4] Given the nature of the RICO conspiracy charge, which

---

[3] As stated, Mr. Miske has not yet been informed of the terms of Mr. Stancil's plea agreement. Accordingly, at this juncture, Mr. Miske does not know if Mr. Stancil has agreed to cooperate against Mr. Miske, although given the circumstances that are known, it appears likely.

[4] Although the Court has instructed the jury that it must not speculate as to why Ms. Fabro's case is no longer before the jurors who had seen her, and the Court could also

charges the "Miske Enterprise" led by Mr. Miske, there is no way the jury could avoid inferring guilt from the changed stances of Mr. Stancil and Ms. Fabro Miske and their attorneys who collectively questioned a majority of the currently seated jurors during individual voir dire.  The potential testimony of Stancil and the testimony of Ms. Fabro Miske will further exacerbate this problem.

In addition, at the evidentiary hearing on the admissibility of co-conspirator statements, the government expressly recognized that notwithstanding the volume of exhibits, this is primarily a cooperating witness testimony-based trial.  During questioning of individual jurors, counsel for Mr. Stancil and counsel for Ms. Fabro Miske each strongly suggested to individual jurors that the government's "snitches" and "rats" should not be believed.  Indeed, counsel for Mr. Stancil devoted considerable time to questioning individual jurors about why "snitches" are called "rats" instead of other creatures, and he used colorful, memorable metaphors to make this point.  Now, however, Mr. Stancil, Ms. Fabro Miske, and their attorneys, all agree that: (1) facts to which these "snitches" and "rats" are expected to testify are true; and (2) these "snitches" and "rats" are so believable that Mr. Stancil and Ms. Fabro Miske are now admitting they are guilty.  Thus, Mr. Stancil and Ms. Fabro Miske's guilty pleas will also impermissibly bolster the credibility of these cooperating government witnesses.

As the Court is aware, the government estimates 80 trial days for its case-in-

---

give the jury the same instruction as to Mr. Stancil, the jury will eventually hear from Ms. Fabro Miske that she has pled guilty.  The jury will also either hear this from Mr. Stancil, or they will reach this inescapable conclusion, as a result of Ms. Fabro Miske's guilty plea.

chief.  The government has identified approximately 950 trial witnesses.  The government has not yet called a single witness and has not yet used any of its 80 estimated trial days.  Given the early stage of this trial, and the manifest unfair prejudice to Mr. Miske that could be cured by beginning jury selection anew, Mr. Miske respectfully requests that his motion be granted.

DATED: January 21, 2024, at Honolulu, Hawaii.

Respectfully submitted,

*/s/ Michael J. Kennedy*
MICHAEL J. KENNEDY
*/s/ Lynn E. Panagakos*
LYNN E. PANAGAKOS
Counsel for Defendant
MICHAEL J. MISKE, JR.

CERTIFICATE OF
SERVICE

I, Lynn E. Panagakos, hereby certify that a true and correct copy of this document this filing has been duly served on all counsel of record through the court's electronic filing system.

DATED: Honolulu, Hawai`i, January 21, 2024.

/s/ Lynn E. Panagakos
LYNN E. PANAGAKOS