MICHAEL J. KENNEDY
Law Offices of Michael Jerome Kennedy, PLLC
Nevada State Bar #10103; California State Bar #193901
Colorado State Bar #17868
333 Flint Street
Reno, Nevada 89501
775-221-7100 (office); 775-233-0914 (mobile)
michael@mjkennedylaw.com

LYNN E. PANAGAKOS   7696
841 Bishop Street, Suite 2201
Honolulu, Hawai`i 96813
Telephone: (808) 542-9943
lynnpanagakos@yahoo.com
**Attorneys for Defendant Michael J. Miske, Jr.**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 19-cr-00099-DKW-KJM. |
| | ) | |
| Plaintiff, | ) | **DEFENDANT MICHAEL J.** |
| | ) | **MISKE'S, JR.'S MOTION TO** |
| v. | ) | **VACATE THE PHASE ONE AND** |
| | ) | **PHASE TWO JURY VERDICTS** |
| MICHAEL J. MISKE, JR., | ) | **AND DISMISS THE** |
| | ) | **INDICTMENTS PURSUANT TO** |
| Defendant. | ) | **THE DOCTRINE OF ABATEMENT** |
| | ) | ***AB INITIO*** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**DEFENDANT MICHAEL J. MISKE, JR.'S MOTION TO VACATE
THE PHASE ONE AND PHASE TWO JURY VERDICTS AND
DISMISS THE INDICTMENTS PURSUANT TO THE DOCTRINE
OF ABATEMENT *AB INITIO***

1

POINT ONE:   DEFENSE COUNSEL FOR MR. MISKE HAVE STANDING TO FILE THIS MOTION TO APPLY THE DOCTRINE OF ABETMENT *AB INITIO* FOLLOWING HIS DEATH

Defense Counsel for Mr. Miske have standing to move to apply the doctrine of abatement *ab initio* following his death to the phase one jury verdict (ECF No. 1711, PageId. 21823-21833, Special Verdict Form) and the phase two jury verdict (ECF No. 1739, PageId. 22120-22133, Special Verdict Form for Forfeiture). *United States v. Rich*, 603 F.3d 722, 724 (9th Cir. 2010) ("The government implies that Rich's attorneys cannot raise this argument without the substitution of the estate, but substitution is not required."); *United States v. Oberlin*, 718 F.2d 894 (9th Cir. 1984) (case remanded to district court with directions to vacate the judgment and to dismiss the indictment, including applying the doctrine of abatement *ab initio* to the forfeiture).

POINT TWO:   THE COMMON LAW DOCTRINE OF ABATEMENT *AB INITIO* HAS BEEN ADOPTED BY EVERY FEDERAL CIRCUIT.

Under the doctrine of abatement *ab initio,* when a criminal defendant dies during the pendency of a direct appeal from his conviction, his death abates not only the appeal but also all proceedings had in the prosecution of the underlying indictments from its inception such that the conviction must be vacated and the underlying charge dismissed. *United States v. Reynolds*, 98 F.4th. 62, 64 (1st Cir. 2024) (citations and quotations omitted); *Oberlin*, 718 F.2d at 895. If the sentence included a fine, this rule of abatement *ab initio* prevents recovery against the estate. *Id*. at 895 (citations omitted). If the statute under which a forfeiture is penal, it will be treated as a criminal forfeiture as so abated. *Id.*, at 896 ("It is a well-settled rule that actions upon penal statutes do not survive the death of the wrongdoer."). Similarly, an abated

1

conviction cannot be used in any related civil litigation against the estate. *Id.*, at 895.

Every federal court of appeals that hears direct criminal appeals has adopted the common law doctrine of abatement *ab initio* in a published (and therefore precedential) opinion. *Reynolds*, 98 F.4th at 64, n.1 (collecting cases, including *United States v. Bechtel*, 547 F.2d 1379, 1380 (9th Cir. 1977). In such a case, the appeal is dismissed and the case remanded to the district court with instrucitons to vacate the judgment and to dismiss the indictment. *United States v. Oberlin*, 718 F.2d 894, 895 (9th Cir. 1983).

A fundamental principle from which the abatement principle is derived is that a criminal conviction is not final until resolution of the defendant's appeal as a matter of right. *United States v. Rich* 603 F.3d 722, 729 (9th Cir. 2010). As the Ninth Circuit panel in *Rich* noted:

> The Restitution Order must be abated because "the defendant is no longer a wrongdoer" once his conviction has abated. [*United States v. Parsons, Estate of*, 367 F.3d 409, 416 (5th Cir. 2004) (en banc)]. Just as it is inappropriate to impose restitution on a living individual who was never indicted or convicted, so it is inappropriate to impose restituton on the estate of a deceased individual who, in the eyes of the law, was never indicted or convicted. Abatement *ab initio* means what it says.

*Rich*, 603 F.3d at 729.

The Supreme Court has described the direct appeal of a criminal conviction as "an intergral part" of the process through which the judicial system "**finally** adjudicat[es] the guilt or innocence of a defendant. *Reynolds*, 98 F.4th at 69, quoting *Griffin v. Illinois,* 351 U.S. 12, 18 (1956) (emphasis added).

The Ninth Circuit in *Oberlin* stated the reasoning behind the rule as follows:

> [W]hen an appeal has been taken from a criminal conviction to the court of appeals and death has deprived the accused of his right to our decision, the interests of justice ordinarily require that he not stand convicted without resolution of the merits of his appeal, which is an "integral part of [our] system for finally adjudicating [his] guilt or innocence."

*Oberlin*, 718 F.2d at 896, citation quoting Griffen, 351 U.S. at 18 omitted.

POINT THREE:   THE COMMON LAW DOCTRINE OF ABATEMENT *AB INITIO* APPLIES WHEN THE DEFENDANT DIES PRIOR TO THE ENTRY OF JUDGMENT

In *Oberlin*, Mr. Oberlin was sentenced on October 18, 1982 and died by suicide several hours after sentencing. *Oberlin*, 718 F.2d at 895. On October 20, 1982, judgment was entered and, on the following day, a purported notice of appeal was filed on behalf of Mr. Oberlin. *Id*. The *Oberlin* panel noted that Mr. Oberlin died before judgment was entered and before the purpoted notice of appeal was filed and, therefore, he did not die pending appeal. *Id*. The *Oberlin* court ruled:

> Nonetheless, at the time of his death, Oberlin possessed an appeal of right from his conviction. We conclude that, although Oblerlin did not die pending appeal, the effect of his appeal is the same—the prosecution abates *ab initio*. We see no reason to treat a criminal defendant who dies before judgment is entered any differently from one who dies after a notice of appeal has been filed. In either case, he is denied the resolution of the merits of the case on appeal.

*Oberlin*, 718 F.2d at 895.

In *United States v. Lay*, 456 F.Supp.2d 869 (S.D. Tex. 2006), on May 25, 2006, Mr. Kenneth Lay was found guilty of a number of counts following a sixteen week jury trial and a separate one week bench trial. *United States v. Lay*, 456 F.Supp.2d 869, 870

3

(S.D. Tex. 2006). On July 25, 2006, Mr. Lay suffered a heart attack and died. *Lay*, 456 F.Supp.2d at 870. Thus, Mr. Lay died before sentencing, before a final judgment could be entered, before a notice of appeal could be filed, and did not die pending appeal. *Lay*, 456 F.Supp.2d at 874. "Nevertheless, the Fifth Circuit has plainly stated that 'the rule of abatement applies equally to cases in which a defendant, such as [Lay], dies prior to the entry of judgment." *Id*. The Fifth Circuit case upon which *Lay* incorporates this point of law cites to the Ninth Circuit precedent in Oberlin in its application of the law of abatement ab initio to the facts in *Lay*. *Id*.

POINT FOUR:   BASED UPON NINTH CIRCUIT PRECEDENT IN *OBERLIN* AND ITS APPLICATION IN *LAY*, THIS COURT SHOULD GRANT COUNSEL FOR MR. MISKE'S MOTION TO VACATE THE PHASE ONE AND PHASE TWO JURY VERDICTS AND DISMISS THE INDICTMENTS PURSUANT TO THE DOCTRINE OF ABATEMENT *AB INITIO*

Based upon Ninth Circuit precedent in *Oberlin*, *Bechtel* and *Rich*, and the adoption of the *Oberlin* decision as the rule in the Fifth Circuit as recognized in *Lay*, this court should grant counsel for Mr. Miske's motion to vacate the phase one and phase two jury verdicts and dismiss the third, second, first and original indictments pursuant to the doctrine of abatement *ab initio*. Mr. Miske died prior to the entry of judgment and sentencing currently scheduled for January 30, 2025 at 9:00 a.m. His death "terminated final resolution of the merits of his case by judgment or on appeal, and abatement of the action therefore followed." *Oberlin*, 718 F.2d at 896.

For purposes of application of the doctrine of abatement *ab initio*, the fact that the cause and manner of death for Mr. Miske appears to be a medical event but remains under investigation is a matter of no moment. *Oberlin*, 718 F.2d at 896 ("We

4

also reject the government's argument that Oberlin waived his right to appeal by killing himself. The contention that suicide is the "ultimate waiver" is without merit. The doctrine of waiver has no connection to the issue of abatement."). The motion is ripe for decision.

POINT FIVE:   THE DOCTRINE OF ABATEMENT *AB INITIO* APPLIES TO PHASE TWO CRIMINAL FORFEITURE UNDER 18 U.S.C. §§ 1962 AND 1963

The doctrine of abatement ab initio applies to the phase two criminal forfeiture verdict under 18 U.S.C. ¶¶ 1963 and 1962. The Ninth Circuit in *Oberlin* stated the following with respect to the doctrine of abatement *ab initio* and criminal forfeiture:

> In its petition for rehearing, the government argues that abatement does not apply to a criminal forfeiture proceeding under 21 U.S.C. § 848. We reject this contention. It is a well-settled rule that actions upon penal statutes do not survive the death of the wrongdoer. In Oberlin's case, while some aspects of the forfeiture may have been remedial, there is no doubt that it was essentially penal. The forfeiture was a step in the criminal process: it was pleaded in the indictment, and was tried in a proceeding which included all the constitutional safeguards granted to criminal defendants. ... Oberlin's criminal conviction, including the forfeiture, was intended as a penalty and so abated.

*Oberlin*, 718 F.2d 896.

More recently, in *Reynolds*, the First Circuit considered the question whether abating a conviction requires also vacating the forfeiture order imposed pursuant to the conviction. *Reynolds*, 98 F.4th at 72. There, the First Circuit instructed that, in accord with the government's own understanding of what must follow from the abatement doctrine's application, the District Court on remand to vacate the orders of

5

restitution and criminal forfeiture that were imposed in the case, as well special assessment, citing to the Supreme Court's decision in *Nelson v. Colorado*, 581 U.S. 128, 135-136 (2017). *Reynolds*, 98 F.4th at 64 & 72. See also *United States v. Ajrawat*, 738 Fed.Appx 136 (4th Cir. 2018) (if defendant's conviction is extinguished because of death while appealing the conviction and sentence, the forfeiture and restitution orders must be abated).

The statutes under which the phase two criminal forfeiture verdict are penal. See 18 U.S.C. §§ 1962 & 1963. Section 1963 provides for criminal penalties including criminal forfeiture for committing the crimes set forth in Section 1962. 18 U.S.C. § 1963(a) ("The court, in imposing sentence on such person shall order, in addition to any other sentence imposed pursuant to this section, that the person forfeit to the United States all property described in this subsection."). *United States v. Seifuddin*, 820 F.2d 1074, 1078 (9th Cir. 1987) ("[I]f the statute under which the forfeiture alleged is penal, it will be treated as a criminal forfeiture.").

POINT SIX:   ABATEMENT OF THE FORFEITURE VERDICT REQUIRES PROPERTY TO BE RETURNED AND ENCUMBRANCES TO BE LIFTED

Pursuant to Fed.R.Crim.P. 41(g), a person aggrieved by the deprivation of property may move for its return. Miske is aggrieved by the deprivation of assets which must be returned and/or unencumbered due to the dismissal of the indictments and abatement of the phase one and phase two verdicts.[1]

---

[1] Under *Rich*, undersigned counsel for the deceased Mr. Miske may move for the return and removal of encumbrances on property belonging to Mr. Miske's estate. ("In Rich's view, abatement of the [Restitution] Order . . . will result in the return of all property titled in his name. . . [,]" 603 F.2d at 724-25; "substitution of the estate is

6

### A. Real Property (Lumahai and Paokano)

Following the unsealing of the First Superseding Indictment, the government filed a Notice of Pendency of Action in this Court (ECF No. 21) and with the State of Hawaii Bureau of Conveyances, giving notice that the government had commenced this criminal action, seeking criminal forfeiture of, *inter alia*, the real properties located at 6 Lumahai Street, Portlock, Honolulu, Hawaii and 614 Paokano Loop, Kailua Hawaii. With the dismissal of the indictments and abatement of the verdicts, this action is no longer pending. Accordingly, the government's Notice of Pendency of Action must be withdrawn, and these encumbrances must be removed from these real properties.

### B. Proceeds of Sale of Real Property (Kumukahi)

Following the unsealing of the First Superseding Indictment, the government filed a Notice of Pendency of Action in this Court (ECF No. 21) and with the State of Hawaii Bureau of Conveyances, giving notice that the government had commenced this criminal action, seeking criminal forfeiture of, *inter alia*, the real property located at 559 Kumukahi Place, Hawaii Kai, Honolulu, Hawaii. During the pendency of this criminal action, Miske sold this property, and the net proceeds ($611,123.60) were deposited into the Department of Justice Seized Asset Deposit Fund, pursuant to a Stipulated Restraining Order issued in this case (ECF No. 464), pursuant to 21 U.S.C. § 853(e)(1)(A) (criminal forfeiture statute authorizing entry of restraining order upon

---

not required. *Oberlin,* 718 F.2d at 894. Consequently, we use 'Rich' to refer to 'Rich' and 'Rich's estate.'" 603 F.2d at 724, n.4)). Here, as in *Rich,* we use "Miske" to refer to "Mr. Miske" and "Mr. Miske's estate."

filing of indictment alleging that the property covered by the restraining order is subject to forfeiture under this section), as incorporated by 28 U.S.C. § 2461(c) (authorizing government to include notice of forfeiture in criminal indictment, defining forfeiture of property upon conviction of offense giving rise to such forfeiture as part of criminal sentence, and describing procedures applicable to criminal forfeiture proceedings).

"Abatement *ab initio* means what it says." *Rich,* 603 F.3d at 729. Just as "it is inappropriate to impose restitution on the estate of a deceased individual who, in the eyes of the law, was never indicted or convicted[,]" *id.,* so, too is it inappropriate to continue a criminal restraining order premised on such indictment. Accordingly, the restraining order must be dissolved and the Kumukahi sales proceeds must be returned.

### C. Proceeds of Sale of FV Rachel

Upon the unsealing of the First Superseding Indictment, the government obtained a restraining order on the FV Rachel (ECF No. 17), a commercial fishing vessel registered to Kama'aina Holdings, LLC, which, as reflected on Miske's income tax returns and as alleged by the government, was owned by Miske. This restraining order was issued pursuant to 21 U.S.C. §853(e)(1)(A), a criminal forfeiture statute, based "upon the filing of an indictment[,]" *id.*, which, in the eyes of the law, now never existed. *Rich, supra.*

While the indictment was pending, Kama'aina Holdings and Miske sold the FV Rachel, and the net sales proceeds ($676,785.56) were deposited into the Department of Justice Seized Asset Deposit Fund, pursuant to a Consent Order Modifying

8

Restraining Order (ECF No. 197).

Since the FV Rachel restraining and modification orders were issued on the basis of an indictment which, in the eyes of the law, never existed, these orders must be dissolved and the proceeds returned.

### D. Volkswagens, Ford Bronco and Artwork

The vehicles and artwork identified in the jury's forfeiture verdict (ECF No. 1739), under 1-3 (o)-(bb), all were seized from Miske's residence on July 15, 2020 (see ECF No. 1182, PageID.10258-10259), pursuant to the execution of a search warrant. Mag. No. 20-00819-KJM. This search warrant was executed 53 months ago, in the course of the government's now-concluded investigation of Miske. A search warrant authorizes the government to seize evidence. It does not authorize the government to seize property for forfeiture. Since the forfeiture verdict must be abated, and since the government no longer has any evidentiary need for these vehicles and artwork, these items, and all non-contraband items seized from Miske and his businesses pursuant to search warrants, must be returned.

### E. Items Seized Pursuant to Asset Forfeiture Seizure Warrants

The Ferrari, the Hawaii Longline Limited Entry Permit Issued to the FV Rachel, and the funds seized from Honolulu Central Federal Credit Union and Bank of Hawaii accounts, identified in the jury's forfeiture verdict (ECF No. 1739), under 1-3 (g)-(m), were seized from Miske and businesses he owned, pursuant to warrants to seize property subject to forfeiture. Case Nos. 20-843-KJM through 20-847-KJM.

After seizing this property for forfeiture, the government chose not to pursue nonjudicial civil forfeiture or to file a civil forfeiture complaint. Instead, the

9

government chose only "to maintain custody of the property as provided in the applicable criminal forfeiture statute." 18 U.S.C. § 983(a)(1)(iii)(II). Since the indictments must be dismissed and the verdicts abated, the government can no longer retain custody of these seized items pursuant to any criminal forfeiture statute. Therefore, these seized items must be returned.

### F. Cashier's Checks

Miske provided the cashier's check identified in the jury's forfeiture verdict (ECF 1739), under 1-3(n), to the United States Attorney's Office, along with 5 additional cashier's checks issued to businesses owned by Miske, with the understanding that the parties would stipulate to an order pursuant to which the cashier's check identified in the forfeiture verdict would be re-issued to the government and restrained and deposited into the Department of Justice Seized Asset Deposit Fund pending resolution of the criminal forfeiture proceeding, and the remaining checks would be re-issued to Miske's counsel. The parties never reached a stipulation, and the government never obtained any order authorizing it to retain custody of any of these cashier's checks. Since the forfeiture verdict must be abated, and no order authorizes the government to retain possession of these cashier's checks, these checks must be returned.

DATED:  December 9, 2024, Honolulu, Hawaii.

                                                  /s/ Michael J. Kennedy
                                                  /s/ Lynn E. Panagakos
                                                  Attorneys for Defendant
                                                  Michael J. Miske, Jr.

## CERTIFICATE OF SERVICE

  I, Lynn E. Panagakos, hereby certify that by this CM/ECF filing, all counsel of record are being served with this document through the Court's electronic filing system.

  DATED: December 9, 2025.

             /s/ Lynn E. Panagakos
             Lynn E. Panagakos