MICHAEL J. KENNEDY
Law Offices of Michael Jerome Kennedy, PLLC
Nevada State Bar #10103; California State Bar #193901
Colorado State Bar #17868
333 Flint Street
Reno, Nevada 89501
775-221-7100 (office); 775-233-0914 (mobile)
michael@mjkennedylaw.com

LYNN E. PANAGAKOS   7696
841 Bishop Street, Suite 2201
Honolulu, Hawai`i 96813
Telephone: (808) 542-9943
lynnpanagakos@yahoo.com
**Attorneys for Defendant Michael J. Miske, Jr.**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 19-cr-00099-DKW-KJM. |
| Plaintiff, | **DEFENDANT MICHAEL J. MISKE'S REPLY IN SUPPORT OF MOTION TO VACATE THE PHASE ONE AND PHASE TWO JURY VERDICTS AND DISMISS THE INDICTMENTS PURSUANT TO THE DOCTRINE OF ABATEMENT *AB INITIO*** |
| v. | |
| MICHAEL J. MISKE, JR., | |
| Defendant. | |

**DEFENDANT MICHAEL J. MISKE, JR.'S REPLY IN SUPPORT OF MOTION TO VACATE THE PHASE ONE AND PHASE TWO JURY VERDICTS AND DISMISS THE INDICTMENTS PURSUANT TO THE DOCTRINE OF ABATEMENT *AB INITIO***

Mr. Miske's motion arises from his death on December 1, 2024.  A certificate of death is expected to be available by about early June 2025.

1

I.    THE GOVERNMENT AGREES THAT MR. MISKE'S DEATH ABATES
      ALL PROCEEDINGS IN THE PROSECUTION FROM ITS INCEPTION

The government agrees in its response that Mr. Miske's death abates all proceedings in the prosecution from its inception. ECF No. 1841, PageId. 25683 ("The Defendant's death pending sentencing abates these criminal proceedings *ab initio.*"); ECF No. 1841, PageId. 25684 ("The rule of abatement *ab initio* applies equally in circumstances involving the death of a defendant prior to sentencing or entry of judgment. *See*, *e.g.*, *Oberlin*, 718 F.2d at 896 (holding rule of abatement applied to defendant who died by suicide after sentencing but before judgment, and before the purported notice of appeal was filed, nothing that 'although [the defendant] did not die pending appeal, the effect of his death is the same–the prosecution abates *ab initio*"); *United States v. Lay*, 456 F.Supp.2d 869, 874-75 (S.D. Tex. 2006) (holding rule of abatement applied to defendant who died prior to sentencing and entry of judgment)."

II.   THE GOVERNMENT IS INCORRECT IN ITS ASSERTION THAT THE
      COURT IN *LAY* MERELY ORDERED THE DISMISSAL OF THE
      INDICTMENT WHEN IT CONCLUDED THAT LAY'S CONVICTION,
      NAMELY, THE JURY AND BENCH VERDICTS, MUST BE VACATED

The conclusion and order of the Court in *Lay* is as follows:

> Since the Fifth Circuit Court of Appeals has adopted the abatement rule, and since neither the United States nor Butler has raised any legal basis for denying the rule's application in this case, **the court concludes that Lay's conviction must be vacated and this action against him must be dismissed. Accordingly, the Motion of the Estate of Kenneth L. Lay to Vacate His Conviction and Dismiss the Indictment (Docket Entry 1082) is GRANTED** … .

*Lay*, 456 F.Supp.2d at 875 (emphasis added except for **GRANTED** in original).

2

The government argues that "in *Lay*, where, like here, the proceeding was abated *ab initio* by the defendant's death but a final judgment of conviction was never entered, the court procedurally dismissed only the indictment against the defendant and took no action as to the jury verdict against the defendant." ECF No. 1841, PageId. 25686, citing *Lay*, 456 F.Supp.2d at 875. Not true. In a section titled "**Conclusion and Order**," the Court in *Lay* **"concludes that Lay's conviction must be vacated and that this action must must be dismissed" <u>and</u>, in addition, "[a]ccordingly, the Motion of the Estate of Kenneth L. Lay to Vacate His Conviction and Dismiss the Indictment (Docket Entry No. 1082) is GRANTED."** *Lay*, 456 F.Supp.2d at 875.

The Court in *Lay* granted the motion to vacate his conviction, i.e., the jury and bench trial verdicts,[1] in response to the United States asserting that "the verdicts established Lay's fraud as charged in the indictment beyond a reasonable doubt," and that the guilty verdicts returned against him proved a "basis for the likely disgorgement of fraud proceeds totaling tens of millions of dollars ... ." *Lay*, 456 F.Supp.2d at 871 & 874-75. The Court in *Lay* rejected the government's concern "that the Lay estate should not be unjustly enriched with the proceeds of fraud that would

---

[1] The government notes in its response that "[a]s a general matter in criminal proceedings, 'it is the judgment, not the verdict, that is the 'conviction.'" ECF No. 1841, citing and quoting *United States v. Smith*, 623 F.2d 627, 630 (9th Cir. 1980) (identifying "general rule" but noting that a "verdict of conviction" could be used for impeachment purposes before judgment was entered)." ECF No. 1841, PageID. 25685-25686 (citing cases where "judgment" or "judgment of conviction" are vacated as well as the indictments dismissed). However, in *Lay*, the parties and the court used the term "conviction" to mean the jury and bench verdicts because there, as here, both Lay and Miske died prior to sentencing, whereas in the cases cited in the government's response, deaths happened post-sentencing.

3

otherwise be subject to forfeiture and distribution to victims of the crimes for which

Lay was found guilty" by stating the Fifth Circuit considered and rejected this concern

by explaining that abatement of the criminal proceedings:

> does not necessarily mean that an individual who suffered
> a loss cannot obtain reimbursement in *civil* court. If he can
> meet the civil court's lower burden of proof, he may receive
> a judgment from that court.  One may argue that allowing
> the estate to substitute for the dead defendant ensures the
> fair representation of the decedent's interests, but such
> substitution does not align logically with abatement of all
> prior criminal proceedings. **Essentially, the substitution
> doctrine forces the estate to argue about a conviction
> that no longer exists and requires a court to
> adjudicate the merits of a proceeding that no longer
> took place**. Although it is not without a cost, requiring
> victims to argue their case in civil court protects the
> interests of defendants whose direct appeals are not yet
> final.

*Lay*, 456 F.Supp.2d at 874-75 (bold emphasis added).

III.    BASED UPON NINTH CIRCUIT PRECEDENT IN *OBERLIN* AND ITS
        APPLICATION IN *LAY*, THIS COURT SHOULD GRANT COUNSEL FOR MR.
        MISKE'S MOTION TO VACATE THE PHASE ONE AND PHASE TWO JURY
        VERDICTS AND DISMISS THE INDICTMENTS PURSUANT TO THE
        DOCTRINE OF ABATEMENT *AB INITIO*

Based upon Ninth Circuit precedent in *United States v. Oberlin*, 718 F.2d 894

(9th Cir. 1984), *United States v. Bechtel*, 547 F.2d 1379 (9th Cir. 1977), and *United*

*States v. Rich* 603 F.3d 722 (9th Cir. 2010), and the adoption of the *Oberlin* decision as

the rule in the Fifth Circuit as recognized in *Lay*, this court should grant counsel for

Mr. Miske's motion to vacate the phase one and phase two jury verdicts and dismiss

the third, second, first and original indictments pursuant to the doctrine of abatement

*ab initio*. Mr. Miske died prior to the entry of judgment and sentencing and his

death "terminated final resolution of the merits of his case by judgment or on appeal,

and abatement of the action therefore followed." *Oberlin*, 718 F.2d at 896. As in *Lay*, vacating the "conviction", there the jury and bench trial verdicts, here, the phase one and phase two jury verdicts, recognizes that the "conviction no longer exists" and the "proceeding no longer took place" per the law of abatement *ab initio. Lay*, 874-75. As the government concedes in its response, "[c]ourts also have held that criminal forfeiture orders are vacated under the abatement doctrine" ECF No. 1841, PageID.25685 (cases collected therein).

## IV.    MR. MISKE HAS STANDING TO MOVE TO ABATE THE FORFEITURE VERDICT

In Mr. Miske's motion to vacate, he argues that since the jury's forfeiture verdict must be abated, the properties which the jury found were subject to criminal forfeiture must be returned, on the ground that without the criminal forfeiture verdict, the government has no legal authority to continue to seize these properties (ECF No. 1784, PageID.24548-24552).

The government contends that Mr. Miske lacks standing to argue that the abatement of his forfeiture verdict requires that the properties be returned, because "there is no order or judgment to abate" (ECF No. 1841, PageID.25690).  This government contention lacks merit because it is based on the premise that the doctrine of abatement *ab initio* does not apply to the jury's verdicts, which, as explained above, is incorrect.  *See Oberlin,* 718 F.2d at 894 ("We see no reason to treat a criminal defendant who dies before judgment is entered any differently from one who dies after a notice of appeal has been filed."); *Rich,* 603 F.3d at 724, *quoting Oberlin,* 718 F.2d at 895 (death abates "all proceedings in the prosecution from its

5

inception").

Notably, the government concedes that Mr. Miske has standing to argue that the criminal proceeding be abated *ab initio* (ECF No. 1841, PageID.25690, n.2). The government further concedes that if the Court had entered a forfeiture order, Mr. Miske would have standing to move to abate it (ECF No. 1841, PageID.25690).

Just as Mr. Miske would have standing to move to vacate a forfeiture order, he likewise has standing to move to vacate his forfeiture verdict, and to argue that this vacatur requires the properties to be returned. This is part and parcel of abating the criminal proceeding *ab initio,* and is therefore within the scope of the argument that the government concedes Mr. Miske has standing to raise.

## V. THE GOVERNMENT CANNOT ESCAPE OPERATION OF THE DOCTRINE OF ABATEMENT *AB INITIO* SIMPLY BY CLAIMING THAT THE PROPERTY IS CONTRABAND OR SUBJECT TO FORFEITURE

The government contends that "because all of the Defendant Properties were illegally obtained and/or used in furtherance of criminal schemes and transactions, no one has standing to assert a claim for return of property over these ill-gotten gains." (ECF No. 1841, PageID.25691).

Where, as here, the forfeiture verdict must be abated, the government cannot justify its continued retention of seized properties by relying on an allegation of taint to preclude standing. This is not a standing issue. It is an issue of the consequences which flow from the operation of the doctrine of abatement *ab initio.* Since death abates "all proceedings in the prosecution from its inception[,]" *Oberlin,* 718 F.2d at 895, the government cannot rely on these proceedings to establish that the properties are tainted (or to support its argument for the potential application of the doctrine of

6

*in pari delicto* (ECF No.1841, PageID.25692, n.3)).  It is as though the criminal

proceedings never took place.  Therefore, the government cannot rely on conclusory

allegations of taint and forfeitability to continue to seize property that is no longer

subject to criminal forfeiture.

## VI.    THE GOVERNMENT'S CIVIL FORFEITURE COMPLAINT

The government contends that it can continue to seize all property against

which it has now filed a civil forfeiture complaint.  The government has not stated

whether it has obtained and executed arrest warrants for these properties, which

would be required in order for the government to continue to seize the properties

pursuant to the civil forfeiture action.  *See Rule C(3) of the Supplemental Rules for*

*Admiralty or Maritime Claims and Asset Forfeiture Actions (hereinafter*

*"Supplemental Rules.")*  There is nothing in the civil forfeiture docket sheet (CV 25-

00028-DKW-KJM) to indicate that such warrants have been executed.  The

government also has not indicated whether it has provided the required notice of the

forfeiture to Mr. Miske's estate and heirs and other interested parties. *See*

*Supplemental Rules, Rule (C)(4).*  Again, there is nothing in the civil forfeiture docket

sheet to indicate that it has done so.

On the merits, the government's civil forfeiture action must overcome

significant hurdles.  The civil forfeiture complaint itself relies on criminal

proceedings which, under the doctrine of abatement *ab initio*, never occurred.

The complaint seeks to forfeit a home (Paokano) and the proceeds of the sale of

a boat (the Rachel), both of which were purchased with monies received from Nordic

Construction in 2010, as payment for the successful fumigation of the Keola La'i

Condominium.  The government further seeks to forfeit Kama'aina Holdings'
revenues from its lawful commercial fishing activities, and a Boston Whaler
purchased with loans which were repaid from these revenues, by claiming that these
revenues are derived from proceeds of the Keola La'i fumigation proceeds.  The
government attempts to escape the civil forfeiture statute of limitations bar by
claiming that the Keola La'i fumigation proceeds were proceeds of an RME fraud
conspiracy which began in 2000 and continued through July 2020 (ECF No. 1841-1,
PageID.25731, ¶ 77).  However, in the government's July 2020  applications for
seizure warrants and a restraining order, the government contended that this
scheme continued only through August 2015 (Cr. No. 19-00099-DKW, ECF No. 16,
*Government's Ex Parte Application for a Protective Order for an Asset Subject to
Forfeiture,* p.9, ¶18; *Affidavit in Support,* p.6, ¶17); Case No. 20-846, *Application for
a Warrant to Seize Property Subject to Forfeiture,* at *Affidavit in Support,* p.29, ¶65),
and that the statute of limitations had not then expired because the government did
not become aware of the alleged RME fraud scheme until the latter half of 2018
(Case No. 20-846, *Application for a Warrant to Seize Property Subject to Forfeiture,* at
*Affidavit in Support*, p.42, ¶103).  19 U.S.C. § 1621 (civil forfeiture action must
commence within five years of alleged offense or two years of discovery of property's
involvement in the offense).

The government's civil forfeiture action also seeks to forfeit numerous
properties as fraud proceeds when its allegations allege only that a portion of the
properties constitute proceeds, notwithstanding the caselaw establishing that an
entire asset is not subject to proceeds forfeiture when only a portion thereof is

8

derived from proceeds. *See, e.g., United States v. Garcia-Guizar,* 160 F.3d 511, 516 (9th Cir. 1988); *United States v. $8,221,877 in United States Currency,* 330 F.3d 141, 158 (3d Cir. 2003).

The government's civil forfeiture action further seeks to forfeit automobiles and artwork with no showing as to the sources of funds used to purchase these items, simply by making a bald allegation that since Mr. Miske's income was derived from proceeds, these assets constitute proceeds.

Undersigned counsel recognize that they lack standing to file claims to these properties on Mr. Miske's behalf in the civil forfeiture action. However, the government should not be permitted to obtain a civil forfeiture judgment essentially by default, by precluding Mr. Miske's estate and heirs from having access to any of these assets to litigate their claims. The Court could appoint counsel as amicus curiae, so that these issues could be litigated. *See e.g., United States v. Reynolds,* 98 F.4th 62, 65 (1st Cir. 2023). The Court could order the appointment of an attorney experienced in these matters as guardian ad litem for Mr. Miske's granddaughter, a minor heir who, if she is without experienced counsel, would be operating under a legal disability in this matter. *See e.g. United States v. Real Prop. at 130 High Rock Acres Drive,* 2007 U.S. Dist. LEXIS 59601, *3 (W.D.N.C. 2007). These are just two examples of actions the Court could take to avoid a miscarriage of justice in this matter, which would ensue if Mr. Miske's estate and heirs are precluded from asserting their rights and interests due to the government's overbroad restraints on assets based on a criminal proceeding against Mr. Miske which, under the law, never took place. *See Rich,* 603 F.3d at 729 ("in the eyes of the law," the deceased

9

individual "was never indicted or convicted.")

DATED:        February 5, 2025, Honolulu, Hawaii.

/s/ Michael J. Kennedy
/s/ Lynn E. Panagakos
Attorneys for Defendant
Michael J. Miske, Jr.


CERTIFICATE OF SERVICE

I, Lynn E. Panagakos, hereby certify that by this CM/ECF filing, all counsel of record are being served with this document through the Court's electronic filing system.

DATED:  February 5, 2025.

/s/  Lynn E. Panagakos
Lynn E. Panagakos